1  Rebecca Connolly, Esq. SBN 145482
   GRUNSKY, EBEY, FARRAR & HOWELL
2  A Professional Corporation
   240 Westgate Drive
3  Watsonville, CA 95076
   Telephone (831)722-2444
4  Facsimile  (831)722-6153

5  Attorneys for Defendant
     The Ohio Republican Party
6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9                        WESTERN DIVISION

10

11  JACKSON BROWNE, an individual,        No.  CV08-5334 RGK (Ex)

12                    Plaintiff,          **DEFENDANT OHIO REPUBLICAN
                                          PARTY'S MEMORANDUM OF
13         v.                             POINTS AND AUTHORITIES IN
                                          SUPPORT OF MOTION TO DISMISS
14  JOHN MCCAIN, an individual; THE       COMPLAINT PURSUANT TO FRCP
    REPUBLICAN NATIONAL                   12(b)(2), (3) & (6); OR TRANSFER
15  COMMITTEE, a non-profit political     PURSUANT TO §§ 28 U.S.C. 1404(a)
    organization; THE OHIO               & 1406(a)**
16  REPUBLICAN PARTY; a non-profit
    political organization,               Date:      December 8, 2008
17                                        Time:      9:00 am
                      Defendants.         Judge:     Hon. R. Gary Klausner
18                                        Place:     Courtroom 850

19

20

21

22

23

24

25

26

27

28

---

Dockets.Justia.com

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 1

      A.    The Ohio Republican Party ........................................................... 1

      B.    The Political Video ....................................................................... 3

III.  DISCUSSION ............................................................................................ 5

      A.    This Court Lacks Personal Jurisdiction over the ORP Because
            the ORP Does Not Have Sufficient Minimum Contacts with the
            State of California and the Maintenance of the Suit in
            California Offends "Traditional Notions of Fair Play and
            Substantial Justice" ...................................................................... 5

            1.    The ORP's contacts with California are not substantial,
                  continuous or systematic so as to confer general
                  jurisdiction ......................................................................... 5

            2.    The ORP does not have sufficient minimum contacts
                  with California arising from or related to its creation of
                  the Political Video to confer specific personal jurisdiction .......... 6

                  a.    Plaintiff cannot establish that the ORP expressly
                        aimed the political video at California ............................. 6

                  b.    The ORP's contacts with California are unrelated
                        to Browne's claim ......................................................... 8

                  c.    It would be unreasonable for California to exercise
                        personal jurisdiction over the ORP .................................. 9

      B.    Because the ORP Does Not Have Sufficient Minimum Contacts
            with California or the Central District of California to Establish
            Personal Jurisdiction and the Substantial Part of the Events
            Constituting the Alleged Infringing Acts Occurred in Ohio,
            Venue is Improper in the Central District ................................... 12

      C.    The Court Should Transfer This Action to the United States
            District Court for the Southern District of Ohio, Eastern
            Division, Pursuant to 28 U.S.C. § 1404(A) Based Upon the
            Convenience of the Parties, Witnesses, and in the Interest Of
            Justice ......................................................................................... 13

      D.    Browne's First and Third Claims Fail as a Matter of Law .......... 14

            1.    Browne's claim for copyright infringement fails to state a
                  claim upon which relief can be granted because it is
                  barred by the fair use doctrine ............................................ 15

2.    Browne's claim for trademark infringement fails to state
a claim upon which relief can be granted because the
Political Video is non-commercial speech protected by
the First Amendment ................................................................... 17

E.    Browne's Fourth Cause of Action Fails as a Matter of Law ................. 18

1.    Browne's common law right of publicity claim is based
on the ORP's speech in connection with a public issue,
the presidential elections, and therefore, is subject to the
protections set forth in the Statute ................................................. 19

2.    Browne cannot establish a probability of prevailing on
the merits because the Political Video is non-commercial
speech concerning matters of public interest and the use
of Browne's voice is transformative ............................................. 19

IV.    CONCLUSION ............................................................................. 20

# TABLE OF AUTHORITIES

Page

## CASES

*Abilene Music, Inc. v. Sony Music Entertainment, Inc.,* 320 F. Supp. 2d 84 (S.D.N.Y. 2003) ................................................................................. ...

*AEC One Stop Group, Inc. v. CD Listening Bar, Inc.,* 326 F. Supp. 2d 525 (S.D.N.Y. 2004).....................................................................................13

*Airola v. King*, 505 F. Supp. 30 (D. Ariz. 1980) .....................................................12

*American Family Life Insurance Co. v. Hagan ("AFLAC"),* 266 F. Supp. 2d 682 (N.D. Ohio 2002)......................................................................................18, 20

*Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082 (9th Cir. 2000) ...........6

*Briggs v. Eden Council for Hope and Opportunity,* 19 Cal. 4th 1106 (1999) ..............19

*Buckley v. Valeo*, 424 U.S. 1 (1976)..........................................................................14

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) .................................................6

*Burnett v. Twentieth Century Fox Film Corp.,* 491 F. Supp. 2d 962 (C.D. Cal. 2007) 14

*Calder v. Jones*, 465 U.S. 783 (1984) .........................................................................6

*Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569 (1994) ..........................................15

*Comedy III Productions, Inc. v. Gary Saderup, Inc.,* 25 Cal. 4th 387 (2001) ........19, 20

*Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993)...................9, 11

*Cottman Transmission Sys. v. Martino*, 36 F.3d 291(3d Cir. 1994) .............................12

*Cybersell, Inc.v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir. 1997) ....................................8

*Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008)............................................9, 10

*Dole Food Co., Inc., v. Watts,* 303 F.3d 1104 (9th Cir. 2002)......................................6

*E.S.S. Entertainment 2000 v. Rock Star Videos*, No. 06-56237, slip op. 15143 (9th Cir. November 5, 2008)....................................................................................18

*Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086 (N.D. Cal. 2002).....14

*Griffith v. Fenrick*, 486 F. Supp. 2d 848 (W.D. Wisc. 2007).......................................18

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122 (9th Cir. 2003) ........................................................................................................9

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450 (9th Cir. 2007) ............7

*Hoover Group, Inc. v. Custom Metalcraft, Inc.,* 84 F.3d 1408 (Fed. Cir. 1996) ..........12

*Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir. 1986)..........15

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ....................................14

*Keep Thompson Governor Committee v. Citizens for Gallen Committee*, 457 F. Supp. 957 (D.N.H. 1978)....................................................................................................15

*Lennon v. Premise Media Corp., L.P.*, 556 F. Supp. 2d 310 (S.D.N.Y. 2008)............16

*LeRoy v. Great W. United Corp.*, 443 U.S. 173 (1979)...............................................13

*Mastercard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 70 U.S.P.Q.2d (BNA) 1046 (S.D.N.Y. 2004) ..................................................................................................16

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002)................................18

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. Cal. 2003) .............16

*Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441 (7th Cir. 1993)12

*National Rifle Ass'n of Am. v. Handgun Control Fed'n*, 15 F.3d 559 (6th Cir. Ohio 1994)................................................................................................................7, 15

*New Kids on the Block v. News America Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) ..20

*Panavision International, L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ...................7

*Pebble Beach Co. v. Caddy*, 453 F.3d 1151 (9th Cir. 2006)...........................................6

*Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701 (9th Cir. Cal. 2007) ....................15

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) ................................................17

*Rosenaur v. Scherer*, 88 Cal. App. 4th 260 (2001) ......................................................19

*Roth v. Garcia Marquez*, 942 F.2d 617 (9th Cir. 1991)...............................................11

*Rusheen v. Cohen*, 37 Cal. 4th 1048 (2006) ................................................................19

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004)...................6

*U.S. ex rel Newsham v. Lockheed Missiles & Space Co., Inc.*, 190 F.2d 963 (9th Cir. 1999)...................................................................................................................19

*Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811 (2002) ...................................19

*Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199 (9th Cir. 2006) .............5, 8

## STATUTES

17 U.S.C. § 107...............................................................................................................15

28 U.S.C. § 1391(b)(2) ...................................................................................................12

28 U.S.C. § 1400(a) ........................................................................................................12

28 U.S.C. § 1404(a) ........................................................................................................13

28 U.S.C. § 1406(a) .................................................................................13

C.C.P. § 425.16 .......................................................................................20

Ohio Rev. Code § 3517.01(A)(1) ..............................................................1

Ohio Rev. Code § 3517.02 .....................................................................1, 2

Ohio Rev. Code § 3517.03 ........................................................................2

Ohio Rev. Code § 3517.10 .........................................................................1

ORP's Memorandum of P&As in Support of Motion to Dismiss or Transfer

# I.    INTRODUCTION

Jackson Browne ("Browne") seeks to silence constitutionally protected political speech in filing this federal action. This motion raises significant constitutional issues concerning personal jurisdiction and the rights of political parties to employ transformative uses of another's copyright and trademark protected work to communicate a political message. Browne's attempt to confer personal jurisdiction over the Ohio Republican Party ("ORP") in California based upon a YouTube posting of a political message aimed at Ohio voters does not comport with due process. Moreover, the ORP's transformative use of "Running on Empty" to convey a political message that criticized President-Elect Obama's ("Obama") energy policy is protected under the First Amendment and the fair use doctrine. Browne's Complaint is subject to dismissal at the pleading stage because the affirmative defenses are established by the allegations in the Complaint and separately filed Request for Judicial Notice.

# II.    STATEMENT OF FACTS

## A.    The Ohio Republican Party

The ORP is a non-profit entity with its principal place of business in Columbus, Ohio. The ORP is organized as a "political party" as defined Ohio Rev. Code § 3517.01(A)(1). As a political party, the ORP is an entity established by and regulated by Ohio law, particularly those provisions set forth in Ohio Rev. Code Title 35, as well as by its own constitution and bylaws. The ORP is required by Ohio Rev. Code § 3517.02 to file with the Ohio Secretary of State a copy of its constitution and bylaws, also known as its Permanent Rules. *See* Mauk Decl. ("Mauk") ¶3 & Exh. 4.

The ORP is required to, and does, file periodic campaign finance reports with the Ohio Secretary of State regarding its financial activities, pursuant to Ohio Rev. Code § 3517.10. The Ohio Secretary of State reviews and audits the ORP's campaign finance reports. The Ohio Elections Commission also has authority to review and investigate the ORP's advertisements in the event a complaint is filed with the Ohio Elections Commission regarding the truthfulness of those advertisements. Both the

-1-

1   Ohio Secretary of State and the Ohio Elections Commission are located in Columbus,
2   Ohio. *See* Mauk ¶4.

3   The Republican State Central and Executive Committee of Ohio are elected by
4   direct vote of Ohio's registered Republican voters at Ohio primary elections, pursuant
5   to Ohio Rev. Code §§ 3517.02 and 3517.03. All of the members of the ORP's Central
6   and Executive Committee are, and are required by Ohio Rev. Code § 3517.02 to be,
7   registered Ohio voters who reside in the Ohio districts that they represent. *See* Mauk
8   ¶¶5 & 7.

9   The ORP's purpose as stated in the Permanent Rules, Article 1, Section 4, is to
10  "manage the affairs of the Republican Party in the State of Ohio; have responsibility
11  for its day-to-day operations at the State level; direct the general policy of the party
12  organization; direct and conduct campaign activities;" and create the Ohio Republican
13  Finance Committee to assist in fundraising efforts. The ORP is also charged to
14  "perform all duties prescribed by the Ohio Revised Code, federal election law," the
15  Permanent Rules and/or "by custom required of it." *See* Mauk ¶6.

16  The Ohio Republican Party maintains a web site at www.ohiogop.org designed
17  and hosted by Midnet Media, a company with offices in Columbus, Ohio, in Minster
18  Ohio, and Chicago, Illinois. This web site provides information about the ORP,
19  information about Ohio political structure, Ohio Republican Candidates, news updates,
20  county by county contact information for the ORP, and a contribution page. The
21  target audience of this web site is Ohio residents. While this is essentially a passive
22  web site, people from outside of Ohio can send in contributions to the Ohio
23  Republican Party. Nevertheless, the contributions received are for the purpose of
24  promoting the goals of the ORP in the State of Ohio. *See* Mauk ¶8.

25  All ORP employees reside in Ohio. *See* Mauk ¶9. All meetings of the ORP's
26  controlling committee or its standing committees are held in Ohio. *Id.* ¶10. The ORP
27  does not sell any goods or products, and thus, does not engage in any marketing or

28

distribution of goods or services to California. The ORP does not have any type of

licensing or registration that would qualify it to do business in California. *Id.* ¶11.

While the ORP uses services of California companies, like YouTube, this type

of file-sharing internet service is utilized without leaving the State of Ohio. *See* Mauk

¶12. The ORP has no branch office or comparable facility in California, and has no

telephone listing or mailing address in California. *Id.* ¶13. The ORP has no bank

accounts or other tangible personal or real property in California. *Id.* ¶14. The ORP

directs its promotional material to Ohio voters. The ORP does not direct any of its

fund raising activities specifically toward California residents or any other state

outside of Ohio, nor does it advertise in any publications that are directed primarily

toward California residents. *Id.* ¶15.

Three members of the ORP travelled to Simi Valley, California for the

Republican Presidential Debate on January 30, 2008. *See* Mauk ¶¶16-20; McClelland

Decl. ("McCl.") ¶¶3-4. This trip has no relation to the instant litigation.

## B. The Political Video

Throughout the 2008 election campaign, the ORP utilized web videos to

generate news coverage in Ohio. The ORP does not use the web videos as a

fundraising tool. The targeted audience of these web videos is Ohio voters. *See*

McCl. ¶5. The ORP maintains a link on its website called "Ohio GOP tv" that

contains a link to YouTube postings specifically targeted at Ohio voters. *Id.* ¶7.

During the week of August 4, 2008, Obama was scheduled visit to Ohio. To

prepare for the news coverage that would coincide with this event, the ORP started to

work on a web video to provide criticism and commentary on Obama's energy

strategy ("Political Video"). *See* McCl. ¶8 & Exh. 1. The Political Video used

specific "sound bites" regarding Obama's suggestion to inflate tires in order to

demonstrate that Obama's energy strategy was the same as no strategy at all. The

song "Running on Empty" ("Song") conveyed this message in a humorous tone

considering the rising price of gasoline described as the "Pain at the Pump" in the

1  video and the heightened concern about the United States' dependency on foreign oil.
2  *Id.* ¶9.

3      The total length of the Political Video 1:20 minutes. The Political Video begins
4  with an excerpt from a local Ohio news channel that discussed the "pain at the pump."
5  After the reporter asked how to bring down gas prices "here in northeast Ohio and
6  across the U.S.A.?", it cuts to a clip of Obama answering "making sure your tires are
7  properly inflated" and flashes to a word "What!?!" standing alone. Next, Obama's
8  energy plan is compared with that of Senator McCain and McCain is shown speaking
9  at a rally pointing out that it is low-income Americans that are being hurt because of
10  our dependence on foreign oil and rising gas prices. Next, another stand alone
11  question flashes asking "What's that Obama plan again?" Here, at approximately 50
12  seconds into the Political Video, approximately 21 seconds of music without lyrics
13  from the Song is played in the background while showing Obama saying ". . . we can
14  save all the oil they're taking about getting off drilling if everyone was just inflating
15  their tires." With only nine seconds remaining, the Song lyrics begin playing while a
16  picture of Obama is shown with "Barack Obama: No Solutions" which changes to
17  "Barack Obama: Not Ready to Lead." *See* McCl. ¶11 & Exh. 1

18      On August 4, 2008, McClelland posted the Political Video on the ORP user link
19  on YouTube. McClelland then emailed a Press Release to Ohio residents and news
20  organizations and people interested in Ohio politics that contained the link to the
21  Political Video. *See* McCl. ¶12-23. Neither McClelland nor Mauk knew that Jackson
22  Browne lived in California. *See* McCl. ¶10; Mauk ¶27. McClelland removed the
23  Political Video from the ORP user link on August 6, 2008 immediately after the ORP
24  received Browne's request for its removal. *Id.* ¶24.

25      The Political Video's use of the phrase "running on empty" to comment on the
26  energy crisis was nothing new. Ample evidence establishes that the Democratic and
27  Republican politicians were labeling the other's energy policies as "running on
28  empty." *See, e.g.,* concurrently filed Declaration of Lincoln D. Bandlow ("LBD"),

-4-

1    Exhs. 5-11. Journalists and commentators also used "running on empty" to describe

2    and comment upon the energy crisis. *See id.* Exhs. 12-20

3    Since Browne filed the Complaint, he has capitalized on the heightened

4    publicity surrounding the presidential elections to promote his new album "Time the

5    Conqueror." Television hosts and interviewers have placed the controversy regarding

6    the Political Video side-by-side with Browne's new album. *See* LBD Exhs. 21 & 22.

7    **III.   DISCUSSION**

8    **A.   This Court Lacks Personal Jurisdiction over the ORP Because the ORP Does Not Have Sufficient Minimum Contacts with the State of California**

9    **and the Maintenance of the Suit in California Offends "Traditional Notions of**

10   **Fair Play and Substantial Justice."**

11   The ORP contends that the assertion of personal jurisdiction over it by

12   California violates the Due Process Clause. The ORP does not engage in any business

13   in California to confer general jurisdiction. Nor can Browne establish specific

14   jurisdiction based upon the relationship between the ORP's forum contacts and his

15   legal claims. The ORP did not purposefully direct its activities to California. The

16   ORP's contacts with California are unrelated to this litigation. Moreover, it is

17   unreasonable for California to assert jurisdiction over the ORP under these

18   circumstances.

19   *1.   The ORP's contacts with California are not substantial,*

20   *continuous or systematic so as to confer general jurisdiction.*

21   To confer general jurisdiction, a defendant's forum contacts must be so

22   "substantial, continuous, and systematic that the defendant can be deemed to be

23   'present' in that forum for all purposes." *Yahoo! Inc. v. La Ligue Contre Le Racisme,*

24   433 F.3d 1199, 1205 (9th Cir. 2006). As set forth in the supporting declarations, the

25   ORP has no offices or employees in California, it does not conduct business in

26   California, and ORP officers and employees are residents of Ohio. Thus, the ORP's

27   contacts with California are insufficient to confer general jurisdiction.

28

-5-

## 2. The ORP does not have sufficient minimum contacts with California arising from or related to its creation of the Political Video to confer specific personal jurisdiction

The Ninth Circuit utilizes a three-prong test to analyze specific jurisdiction:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claims must be one which arises out of or relates to the defendant's forum-related activities; and
(3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (internal citations omitted). To confer jurisdiction, all three prongs must be met. Browne bears the burden of establishing that the first two prongs are satisfied. *Id.* If Browne carries this burden, then the burden shifts to the ORP to establish that the Court's assertion of jurisdiction is not reasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985).

### a. Plaintiff cannot establish that the ORP expressly aimed the political video at California.

The first prong, also known as the "purposeful availment" prong, includes both purposeful availment and purposeful direction. *Schwarzenegger* 374 F.3d at 802. Evidence of availment is usually satisfied when the alleged wrongful conduct occurs in the forum. *Id.* at 803. Here, like in *Schwarzenegger*, the alleged wrongful conduct took place in Ohio, not California, so Browne cannot establish purposeful availment. *See also Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006).

As there is no availment, the Court must determine whether ORP's foreign acts satisfy the *Calder* effects test. *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (citing *Calder v. Jones*, 465 U.S. 783 (1984)). Under the *Calder* test, the defendant must have "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Food Co., Inc., v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002).

-6-

1    In cases involving the use of the internet as creating the nexus between the
2    foreign defendant and the forum state, the Ninth Circuit requires "'something more'
3    than mere foreseeability in order to justify the assertion of personal jurisdiction."
4    *Schwarzenegger*, 347 F.3d at 805 (citing *Bancroft*, 223 F.3d at 1087); *see also Pebble*
5    *Beach*, 453 F.3d at 1156 (holding that a narrow focus on the "effects" test can be
6    misleading and that "something more" beyond foreseeability is required).  In *Bancroft*,
7    the "something more" was Augusta National's act in sending a letter to the official
8    domain name registrar in Virginia that was expressly aimed at challenging  the
9    California company's domain name registration and thereby targeting California.  223
10   F.3d at 1088.  Similarly, in *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316,
11   1318 (9th Cir. 1998), the "something more" supporting personal jurisdiction was the
12   defendant's scheme to extort money from a California company.

13       Unlike *Bancroft* and *Panavision*, this case lacks "something more".  The
14   Political Video was targeted to and expressly aimed at Ohio, not California.  The fact
15   that California residents could access YouTube to the same extent as a resident of any
16   other state does not establish the requisite focus on or targeting of California.  Instead,
17   the YouTube posting more closely resembles the type of passive website that the Ninth
18   Circuit has consistently held insufficient to confer specific jurisdiction.  *See, e.g.,*
19   *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.,* 485 F.3d 450, 460 (9th Cir. 2007)
20   (holding that foreign defendant's passive website and advertisements in various
21   marine publications in Washington was insufficient to establish specific jurisdiction in
22   Washington); *Pebble Beach Co.*, 453 F.3d at 1158 (holding that foreign defendant's
23   use of passive web site does not constitute conduct expressly aimed at California).
24   Because Browne cannot establish "something more" than forseeablity, the
25   jurisdictional inquiry ends and the Court need not evaluate the second and third
26   prongs.

27

28

1
2

           *b.    The ORP's contacts with California are loosely related to Browne's claim.*

3      If Browne can satisfy the first prong (which he cannot), then the Court considers

4  "the extent of the defendant's contacts with the forum and the degree to which the

5  plaintiff's suit is related to those contacts." *Yahoo!,* 433 F.3d at 1210. In cases

6  involving internet contacts, "the common thread . . . is that 'the likelihood that

7  personal jurisdiction can be constitutionally exercised is directly proportionate to the

8  nature and quality of commercial activity that an entity conducts over the Internet.'"

9  *Cybersell, Inc.v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). Here, the posting

10  of the Political Video on YouTube from Ohio is too attenuated to satisfy personal

11  jurisdiction in California.

12      The Political Video was created without leaving the State of Ohio. The acts

13  constituting the alleged infringement all occurred in Columbus, Ohio. None of the

14  causes of action in the Complaint are dependent upon an individual viewing the

15  Political Video in California. Instead, the issues concerning whether or not the

16  Political Video is protected by the First Amendment and constitutes permissible fair

17  use or infringes upon Browne's copyright, trademark, or right to publicity are based

18  upon the acts that occurred in Ohio. Browne's action is viable even if the Political

19  Video was never seen in California. Thus, Browne cannot establish the necessary "but

20  for" causation linking his claims against the ORP to the Political Video being viewed

21  in California.

22      Moreover, this type of political speech, as opposed to commercial activity over

23  the internet, is so fleeting and insubstantial that it fails to meet the proportionality

24  requirement for the imposition of specific personal jurisdiction. Thus, when

25  evaluating the extent of the ORP's slight contacts with California and the degree to

26  which the plaintiff's lawsuit is based upon those contacts, the showing is too weak at

27  both ends of the spectrum to support specific jurisdiction.

28

1    c.    *It would be unreasonable for California to exercise personal
      jurisdiction over the ORP*

2    Even if Browne can meet his burden with respect to the first and second prong,

3    specific jurisdiction will not be upheld if the ORP presents a compelling case that

4    jurisdiction does not comport with fair play and substantial justice. *See*

5    *Schwarzenegger*, 374 F.3d at 802. The Ninth Circuit reviews the following seven

6    factors in determining whether it is reasonable to exercise personal jurisdiction in a

7    particular case:

8         (1) the extent of the defendants' purposeful interjection into the
          forum state's affairs; (2) the burden on the defendant of defending in
9         the forum; (3) the extent of conflict with the sovereignty of the
          defendants' state; (4) the forum state's interest in adjudicating the
10        dispute; (5) the most efficient judicial resolution of the controversy;
          (6) the importance of the forum to the plaintiff's interest in
11        convenient and effective relief; and (7) the existence of an alternative
          forum.

12

13   *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1132 (9th Cir.

14   2003).

15   In *Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008), the district court held

16   that a takedown notice sent to YouTube standing alone was insufficient to confer

17   jurisdiction. The *Geller* Court found that the English defendants had made a

18   compelling case under the Ninth Circuit's seven factor test that jurisdiction in

19   California was unreasonable. *Id.* at 1007-1011.

20   A similar conclusion should be reached here. Like *Geller*, the ORP's degree of

21   interjection into California is insubstantial and attenuated. *Id.* at 1007; *see also Core-*

22   *Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1488 (9th Cir. 1993) (holding that

23   defendant's libelous article circulated in California was too attenuated with California,

24   even though the defendants allegedly intended their actions to cause harm in

25   California). The Political Video was targeted at Ohio voters and reached California

26   only as a result of the world-wide scope of the internet. Neither McClelland nor Mauk

27   knew that Browne was from California. This factor weighs in favor of the ORP.

28

1    The second factor, the burden on defendants, also weighs in favor of the ORP.

2    While modern technology has reduced the burden of litigating in another state, it is

3    nonetheless a burden for the ORP to defend this action in California. The vast

4    majority of witnesses and documentary evidence concerning the creation of the

5    Political Video are all in Ohio.

6         While the Court should not "dwell" on sovereignty concerns represented by the

7    third factor, here, Ohio has a strong interest in the regulation of its own political

8    parties. The ORP is a political party created and regulated by Ohio state law.

9    Moreover, the alleged wrongful conduct occurred in Ohio and the key witnesses are

10   Ohio residents. *See Geller*, 533 F. Supp. 2d at 1008 (holding that England had a

11   sovereign interest in litigating the claims of a British corporation and resident,

12   especially where video clip at heart of dispute was filmed in England). Thus, while

13   there is no conflict between the sovereignty of Ohio and California in resolving

14   Browne's claim, the strong interest that Ohio has in its political parties weighs against

15   a finding of jurisdiction.

16        The ORP acknowledges that Browne's status as a California resident, creates an

17   interest in California in the case outcome, and thus, this fourth factor favors Browne.

18   Nevertheless, the assertion of jurisdiction based upon the use of YouTube alone may

19   lead to unreasonable consequences as described in *Geller:*

20            Plaintiff's case for jurisdiction leads to unreasonable (even if
             unintended) consequences. If plaintiff's theory of jurisdiction were
21           upheld, then the Northern District of California could assert
             jurisdiction over every single takedown notice ever sent to YouTube
22           or any other company in Silicon Valley. Citizens around the world -
             from Indonesia to Italy, Suriname to Siberia - could all be haled into
23           court in the San Francisco Bay area, California, USA, for sending off
             a fax claiming that a video clip is infringing. Federal courts sitting in
24           California could assert personal jurisdiction over foreign defendants
             in wholly foreign disputes. . . . Such broad jurisdiction, premised
25           solely on the happenstance that many internet companies that are not
             even parties to § 512(f) litigation have offices in Silicon Valley, is
26           unreasonable. The Northern District of California is not an
             international court of internet law.
27

28   533 F. Supp. 2d at 1009. While California does have an interest in resolving this

dispute because of Browne's residency, California does not have a general interest in resolving all dispute that arises out of a display of a video on YouTube.

As to the fifth factor, Ohio represents the most efficient forum for the judicial resolution of this controversy. The main witnesses and evidence are in Ohio. While California witnesses may be relevant to the issue of damages, these witnesses will only be relevant if Browne is able to overcome the defendants' affirmative defenses. While the convenience of the witnesses is no longer weighed heavily in determining personal jurisdiction, on balance, the location favors Ohio.

While the sixth factor, the importance of the forum to the plaintiff, favors Browne, it has little impact on the jurisdictional outcome as the plaintiff will always want to litigate the action in their home forum. *See Roth v. Garcia Marquez*, 942 F.2d 617, 624 (9th Cir. 1991). Nevertheless, Browne is an internationally recognized rock star who has travelled throughout the world. Litigation in Ohio would not pose the same burdens to Browne as litigation in California creates for the ORP.

The seventh and final factor, the existence of an alternate forum, weighs against the exercise of jurisdiction. The plaintiff bears the burden of proving the unavailability of another forum. *Core-Vent* 11 F.3d at 1490. Ohio provides a suitable alternate forum, and under the venue analysis set forth below, the only proper venue to resolve this action.

On balance, the above factors weigh against jurisdiction. It is unreasonable and unfair for California to assert jurisdiction over the ORP for producing the Political Video targeted at Ohio voters. The Political Video's connection to California is remote at best. Ohio has a strong interest in regulating its political parties. Litigating in California would place an unfair burden on the ORP. Thus, the ORP has presented a compelling case that jurisdiction in California is unreasonable. As the ORP does not have sufficient minimum contacts to support personal jurisdiction, the Complaint as to the ORP should be dismissed pursuant to Rule 12(b)(2).

**B. Because the ORP Does Not Have Sufficient Minimum Contacts with California or the Central District of California to Establish Personal Jurisdiction and the Substantial Part of the Events Constituting the Alleged Infringing Acts Occurred in Ohio, Venue is Improper in the Central District.**

The Complaint at paragraph 12 asserts that venue is proper under 28 U.S.C. § 1391(b)(2) alleging that the "property" at issue is located in California. Plaintiff's reliance on the general venue statute alone is misplaced where a specific venue statute, like that regarding copyright, is also applicable. Where separate claims are joined, venue must be proper as to each claim. *See Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996).

Civil actions arising under federal copyright law may be brought "in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). The "may be found" language has been interpreted similarly to personal jurisdiction. *See, e.g., Milwaukee Concrete Studios, Ltd. v. Fjeld Mfg. Co., Inc.*, 8 F.3d 441, 445-447 (7th Cir. 1993); *Airola v. King*, 505 F. Supp. 30, 31 (D. Ariz. 1980). The plaintiff bears the burden of establishing that venue is proper in the Central District of California, not just California in general. *See Airola*, 505 F. Supp. 2d at 31.

As established above, the ORP does not have sufficient minimum contacts with California or the Central District of California to establish personal jurisdiction, and thus, venue is improper for the copyright cause of action.

Nor can the plaintiff establish proper venue in the Central District for trademark infringement under 28 U.S.C. § 1391(b). Venue is proper in the Southern District of Ohio because that is where a substantial part of the alleged infringing acts occurred.

"Substantiality is intended to preserve the element of fairness so that a defendant is not haled into a remote district having no real relationship to the dispute." *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994). In *Cottman*, the Third Circuit addressed the proper venue for a trademark infringement action after the 1990 amendments to 28 U.S.C. § 1391. In finding that the "current statutory language still favors the defendant in a venue dispute", the Court relied upon the

-12-

Supreme Court's decision in *LeRoy v. Great W. United Corp.,* 443 U.S. 173, 183-84 (1979) (holding that "[i]n most instances, the purpose of statutorily specified venue is to protect the defendant against the risk that a plaintiff will select an unfair or inconvenient place of trial"). The Court concluded that venue for trademark infringement was proper in defendants' home state because that was where the substantial part of the acts constituting infringement occurred. *See Cottman,* 36 F.3d at 295-96.

The most critical witnesses in a trademark infringement action are "those officers and employees who were involved in the design, production, and sale of the [allegedly infringing] products." *AEC One Stop Group, Inc. v. CD Listening Bar, Inc.,* 326 F. Supp. 2d 525, 529 (S.D.N.Y. 2004). Here, the Political Video was created in Ohio and the ORP employees involved in the creation of the Political Video all reside in Ohio. Any happenstance viewing of the Political Video in California generally, as opposed to the Central District, does not meet the substantiality test for venue.

Because venue is not proper in the Central District, transfer or dismissal is mandatory. *See* 28 U.S.C. § 1406(a). Personal jurisdiction and venue in the Southern District of Ohio are proper as to all defendants. If the Court is not inclined to dismiss the action against the ORP, the ORP requests that the Court transfer the action to the Southern District of Ohio, Eastern Division where the action could have originally been brought.

**C.     The Court Should Transfer This Action to the United States District Court for the Southern District of Ohio, Eastern Division, Pursuant to 28 U.S.C. § 1404(A) Based Upon the Convenience of the Parties, Witnesses, and in The Interest Of Justice.**

In the alternative, if the Court finds that venue is proper, the Court has the discretion to transfer the action to the Southern District of Ohio based upon the convenience of the parties, witnesses and in the interests of justice. 28 U.S.C. § 1404(a). The ORP recognizes that ordinarily, if jurisdiction and venue are proper, a plaintiff's choice of forum is given significant weight and it will not be disturbed

-13-

1  unless the factors of convenience and justice tip strongly in favor of transfer. *See*
2  *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1088 (N.D. Cal.
3  2002). It is within the discretion of the district court to determine on a case-by-case
4  basis whether convenience and justice favor transfer. *See Jones v. GNC Franchising,*
5  *Inc.*, 211 F.3d 495, 498-499 (9th Cir. 2000) (listing seven factors to be weighed in
6  deciding whether to transfer venue).

7      As set forth above, the ORP's contacts with California are slight and attenuated.
8  The Southern District of Ohio provides the proper forum to resolve the plaintiff's
9  claims. Moreover, the access to proof with respect to the witnesses and documents
10  favors Ohio. All of the documentary evidence relating to the development and
11  distribution of the Political Video are located in Ohio. Should any non-party witness
12  testimony regarding those who received the email Press Release be necessary,
13  compulsory process would be available in Ohio and not in California. On balance,
14  convenience and justice strongly favor resolving this action in Ohio despite plaintiff's
15  choice of a California forum.

16      **D.    Browne's First and Third Claims Fail as a Matter Of Law**
17      The face of the Complaint establishes that the Political Video is political
18  expression entitled to the highest protection under law. *See, e.g., Buckley v. Valeo*,
19  424 U.S. 1, 14-15 (1976). "In a republic where the people are sovereign, the ability of
    the citizenry to make informed choices among candidates for office is essential, for the
20  identities of those who are elected will inevitably shape the course that we follow as a
21  nation." *Id.* Because it is undisputed that the Political Video is fully protected
22  political speech, it is proper for the Court to determine whether the affirmative
23  defenses of fair use and the First Amendment bar Browne's copyright and trademark
24  claims at the pleading stage. *See, e.g., Burnett v. Twentieth Century Fox Film Corp.*,
25  491 F. Supp. 2d 962, 969 (C.D. Cal. 2007) (resolving copyright and trademark claims
26  on Rule 12(b)(6) motion to dismiss based upon affirmative defenses).
27  / / /
28  / / /

-14-

### 1. Browne's claim for copyright infringement fails to state a claim upon which relief can be granted because it is barred by the fair use doctrine.

Fair use is defined as the use of a copyrighted work "for purposes such as criticism, comment, news reporting, teaching . . ., scholarship, or research." 17 U.S.C. § 107. "The defense encourages and allows the development of new ideas that build on earlier ones, thus providing a necessary counterbalance to the copyright law's goal of protecting creators' work product." *Perfect 10, Inc. v. Amazon.com, Inc.,* 487 F.3d 1146, 1163 (9th Cir. Cal. 2007). The application of the fair use analysis to Browne's copyright infringement claim overwhelmingly supports the conclusion that it is barred by the fair use doctrine. *See, e.g., Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 575 (1994) (holding that fair use doctrine "permits and requires courts to avoid rigid application of the copyright statute, when, on occasion, it would stifle the very creativity which the law is designed to foster").

The first factor, the purpose and character of the use, strongly favors the ORP. The Political Video's significant contribution to public matters of national import is beyond dispute. *See* Comp. ¶2 & McCl. Exh. 1. Because the Political Video contributes to the national debate concerning the qualifications of the 2008 presidential candidates, it is entitled to more protection under the fair use analysis. *National Rifle Ass'n of Am. v. Handgun Control Fed'n,* 15 F.3d 559, 562 (6th Cir. Ohio 1994) ("The scope of the fair use doctrine is wider when the use relates to issues of public concern.").

Courts applying the first factor in the context of political speech have overwhelmingly found that the fair use doctrine applies. *See, e.g., Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1152-53 (9th Cir. 1986) (holding Moral Majority's copying of Hustler's entire work was protected by fair use because of its anti-pornography political message); *Keep Thompson Governor Committee v. Citizens for Gallen Committee,* 457 F. Supp. 957, 961 (D.N.H. 1978) (holding 15 second use of plaintiff's song in political ad entitled to fair use protection noting strong First

Amendment protections attaching to political speech); *Mastercard Int'l Inc. v. Nader 2000 Primary Comm., Inc.,* 70 U.S.P.Q.2d (BNA) 1046 (S.D.N.Y. 2004) (holding that fair use provided a complete defense to Nadar's use of MasterCard's Priceless Advertisements in political ad).

The Political Video's use of the Song was also transformative. A district court in New York recently held that a movie's use of 15 seconds of the song "Imagine" was protected under the fair use doctrine because it was transformative. *Lennon v. Premise Media Corp., L.P.,* 556 F. Supp. 2d 310, 322-23 (S.D.N.Y. 2008) (holding that the use was transformative "because the movie incorporates an excerpt of 'Imagine' for purposes of criticism and commentary"). The nine second use of the Song lyrics in the Political Video was to provide criticism and commentary on Obama's energy policy, and thus, transformative.

Further, the Political Video "mocks" or makes a parody of Obama's energy policy. *See, e.g., Mattel, Inc. v. Walking Mountain Prods.,* 353 F.3d 792, 801 (9th Cir. Cal. 2003) ("The original work need not be the sole subject of the parody; the parody "may loosely target an original" as long as the parody "reasonably could be perceived as commenting on the original or criticizing it, to some degree"); *Mastercard,* 70 U.S.P.Q.2d (BNA) 1046 (finding Nadar's ad a parody even though it was directed at criticizing his non-inclusion in the presidential debates and not Mastercard alone). "[O]nce a work is determined to be a parody, the second third, and fourth factors are unlikely to militate against a finding of fair use." *Abilene Music, Inc. v. Sony Music Entertainment, Inc.,* 320 F. Supp. 2d 84, 89 (S.D.N.Y. 2003). The first factor overwhelmingly favors the ORP.

The second factor, or nature of the copyrighted work, is not "terribly" significant. *See, e.g., Walking Mountain,* 353 F.3d at 803 (holding that the second factor is usually not "terribly" significant in the overall fair use inquiry). Here, while the Song as a whole is creative, other factors weigh against a finding that the copied portion of the work is creative. First, the Song was published in 1977. Second, only a

-16-

1   small portion used of the lyrics was used. Third, "running on empty" is a phrase
2   commonly used by politicians and others to critique a competing policy. Thus, the
3   second factor favors the ORP.

4       The third factor evaluates the qualitative and quantitative use of the Song. The
5   Political Video engaged in a limited use of the Song lyrics to describe Obama's energy
6   policy as literally "running on empty." In *Lennon*, the district court found that both
7   the quantitative and qualitative factors favored the defendant because only 15 seconds
8   of the song were used and that it was necessary to use that amount to convey its
9   message. 566 F. Supp. 2d at 325-326. Here, the ORP's use of the Song was
10  reasonable in light of its purpose in "mocking" Obama's energy policy. The third
11  factor strongly supports a finding of fair use.

12      The fourth factor weighs the effect of the use on the potential market for
13  plaintiff's work. Here, the Political Video has not displaced the market for Browne's
14  Song. In *Lennon*, the court rejected the plaintiffs' argument that a 15 second use of
15  the song "Imagine" in a transformative work "will usurp the market for licensing the
16  song for traditional uses." *Lennon*, 566 F. Supp. 2d at 327. A similar conclusion is
17  warranted here; the Political Video has not usurped the Song's market.

18      In sum, all four fair use factors support the conclusion that Browne's copyright
19  claim is barred by the fair use doctrine, and therefore, dismissal of the copyright claim,
20  with prejudice, is proper under Rule 12(b)(6).

21           *2.    **Browne's claim for trademark infringement fails to state a claim
         upon which relief can be granted because the Political Video is non-
22       commercial speech protected by the First Amendment.***

23      Browne's Lanham Act claim also fails as a matter of law because the Political
24  Video is non-commercial speech protected by the First Amendment. To state a claim
25  under the Lanham Act, the speech must be commercial. *Rice v. Fox Broad. Co.,* 330
26  F.3d 1170, 1181 (9th Cir. 2003) (describing "commercial speech" as the first element
27  of a Lanham Act claim). The Political Video, as a matter of law, is non-commercial
28  speech. *See American Family Life Insurance Co. v. Hagan ("AFLAC"),* 266 F. Supp.

-17-

2d 682, 697 (N.D. Ohio 2002) (holding that a political solicitation "is properly classified not as a commercial transaction at all, but completely noncommercial, political speech"); *Griffith v. Fenrick*, 486 F. Supp. 2d 848, 853 (W.D. Wisc. 2007) (holding that the use of Andy Griffith's name in political solicitation was entirely "non-commercial").

Browne's trademark claim is also defeated by the First Amendment "artistic relevance" defense. When the First Amendment is implicated in a trademark claim, the Ninth Circuit applies a two factor "artistic relevance" test to determine its viability. *See E.S.S. Entertainment 2000 v. Rock Star Videos*, No. 06-56237, slip op. 15143 (9th Cir. November 5, 2008). The First Amendment defeats a trademark claim if the mark's use is relevant to the free expression embodied in the underlying work and there is no attempt to explicitly mislead the public about the source of the work. *See E.S.S.,* slip op. at 15151. Here, Browne admits that the Political Video's use of the Song is relevant to the criticism of Obama's energy policy. *See* Compl. ¶2; *see also E.S.S.*, slip op. at 15153 (holding that "the level of relevance merely must be above zero"). Additionally, the song is not misleading as to the sponsorship or endorsement since the Political Video references its sponsorship by the ORP. *See* McCl. ¶11 & Exh. 1. The Ninth Circuit has cautioned that "the mere use of a trademark alone cannot suffice to make such use explicitly misleading." E.S.S., slip op. at 15153; *see also Walking Mountain* (holding that the defendant did not "explicitly mislead as to Mattel's sponsorship of the works"); *Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 901-02 (9th Cir. 2002) ("*MCA*") (holding that the Barbi song did not "explicitly or otherwise, suggest that it was produced by Mattel"). As the Political Video falls under both prongs of the "artistic relevance" test, the First Amendment bars Browne's trademark claim and it should be dismissed with prejudice.

### E.    Browne's Fourth Cause of Action Fails as a Matter of Law

Browne's Fourth Cause of Action ("Publicity Claim") should be stricken under the Statute and dismissed under Rule 12(b)(6). The Statute is applicable to pendent

-18-

state law claims brought in federal court. *See, e.g., U.S. ex rel Newsham v. Lockheed Missiles & Space Co., Inc.,* 190 F.2d 963, 970-73 (9th Cir. 1999). The Statute provides a remedy to dispose of lawsuits that seek to chill the valid exercise of constitutional rights. *See, e.g., Briggs v. Eden Council for Hope and Opportunity,* 19 Cal. 4th 1106, 1109, n. 1 (1999).

The evaluation of a motion to strike under the Statute requires a two-step process. First, the court must decide if the defendant has made a threshold showing that the challenged cause of action is one arising from a protected activity as defined in the Statute. *Rusheen v. Cohen,* 37 Cal. 4th 1048, 1056 (2006). Second, if the Court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. *Id.* The plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment." *Wilson v. Parker, Covert & Chidester,* 28 Cal. 4th 811, 821 (2002).

### 1. Browne's common law right of publicity claim is based on the ORP's speech in connection with a public issue, the presidential elections, and therefore, is subject to the protections set forth in the Statute.

The ORP easily satisfies its threshold burden of establishing that Browne's Publicity Claim is based upon political speech that is clearly protected under the Statute. *See, e.g., Rosenaur v. Scherer,* 88 Cal. App. 4th 260, 274-75 (2001) (holding that the Statute "applies to actions arising from statements made in political campaigns by politicians and their supporters"). The use of Browne's voice is for the purpose of criticizing and commenting upon Obama's energy policy in connection with the 2008 presidential elections, and thus, is protected political expression.

### 2. Browne cannot establish a probability of prevailing on the merits because the Political Video is non-commercial speech concerning matters of public interest and the use of Browne's voice is transformative

Browne will not be able to prevail upon his Publicity Claim. Under California law, a common law publicity claim must have a "commercial purpose". *See, e.g., Comedy III Productions, Inc. v. Gary Saderup, Inc.,* 25 Cal. 4th 387, 396 (2001). Here, the Political Video was solely used to generate news coverage about the differences in McCain's and Obama's energy policy. But even if it had been used for

-19-

fundraising that would not convert this political expression into commercial speech. *See, e.g., AFLAC,* 266 F. Supp. 2d at 697 (holding that a political solicitation is "completely noncommercial, political speech"); *Griffith,* 486 F. Supp. 2d 848, 853 (holding that political solicitation was entirely "non-commercial"). The fact that the Political Video is speech made in connection with a highly public and newsworthy issue provides a complete defense to Browne's Publicity Claim. *See New Kids on the Block v. News America Publ'g, Inc.,* 971 F.2d 302, 309-10 (9th Cir. 1992).

The transformative use of Browne's voice also provides a complete defense to Browne's Publicity Claim. The California Supreme Court has recognized that a celebrity's work, like that of Browne's, becomes part of our culture and can play an important role in the discourse regarding public issues. *See Comedy III* 25 Cal. 4th at 396. A transformative use of that celebrity's work or identity is fully protected under the First Amendment and bars a claim for common law publicity. *Id.* at 408-409. The Political Video transforms the Song into a critique of Obama's energy policy. This type of free expression is a centerpiece of our democracy.

Browne's Publicity Claim fails as a matter of law and should be stricken under the Statute. Should the ORP prevail, it will file a separate motion to recover its attorney's fees and costs. C.C.P. § 425.16(c).

## IV. CONCLUSION

The ORP respectfully requests that the Court dismiss the ORP based upon the absence of personal jurisdiction and improper venue, dismiss Browne's Complaint with prejudice, or transfer this action to the Southern District of Ohio, Eastern Division.

DATED: November 17, 2008     GRUNSKY, EBEY, FARRAR & HOWELL

By _Rebecca Connolly_
Rebecca Connolly, Attorneys for Defendant
The Ohio Republican Party