1  HOWARD J. KLEIN (NO. 77029)
   hjklein@koslaw.com
2  THEODORE P. LOPEZ (NO. 191328)
   tlopez@koslaw.com
3  SANG N. DANG (NO. 214558)
   sdang@koslaw.com
4  **KLEIN, O'NEILL & SINGH, LLP**
   43 Corporate Park
5  Suite 204
   Irvine, CA 92606
6  Telephone: 949-955-1920
   Facsimile: 949-955-1921
7
   Attorneys for Defendant,
8  THE REPUBLICAN NATIONAL COMMITTEE

9

10

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13

14  JACKSON BROWNE., an individual          CASE # CV08-05334 RGK (Ex)

15                Plaintiff,                **MEMORANDUM OF POINTS
                                            AND AUTHORITIES IN
16          vs.                             SUPPORT OF DEFENDANT
                                            THE REPUBLICAN NATIONAL
17  JOHN MCCAIN, an individual; THE         COMMITTEE'S MOTION TO
    REPUBLICAN NATIONAL                     DISMISS UNDER FRCP 12(b)(6)**
18  COMMITTEE, a non-profit political
    organization; THE OHIO REPUBLICAN
19  PARTY, a non-profit political
    organization,
20                                          Hearing:
                  Defendants.               Date: December 8, 2008
21                                          Time: 9:00 a.m.
                                            Place: Courtroom 850
22                                          Judge: Hon. R. Gary Klausner

23

24

25

26

27

28

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ....................................1

II.  RELEVANT FACTS ...........................................................................................2

III. STANDARD FOR MOTION TO DISMISS .........................................................3

IV.  BROWNE'S CLAIMS ALL FAIL AS A MATTER OF LAW ............................4

   A.  BROWNE'S COPYRIGHT INFRINGEMENT CLAIMS ARE BARRED BY THE FAIR USE
       DOCTRINE. ...................................................................................................4

      1.  *The First Factor, The Purpose And Character Of The Use, Favors The RNC
          Because The Use Was Made In A Non-Commercial Political Message About
          Matters Of Public Concern And Was Transformative*.............................6

      2.  *The Second Factor, The Nature Of The Copyrighted Work, Favors The RNC.*
          ...........................................................................................................11

      3.  *The Third Factor, The Amount and Substantiality Of The Use, Favors the
          RNC*....................................................................................................12

      4.  *The Fourth Factor, The Effect Of The Use On The Potential Market For Or
          Value Of Plaintiff's Work, Favors The RNC* .....................................13

   B.  BROWNE'S LANHAM ACT CLAIM FAILS AS A MATTER OF LAW .......................15

      1.  *The Lanham Act Does Not Apply To Political Speech* .................................15

      2.  *Browne's Lanham Act Claim Is Barred By The "Artistic Relevance" Test
          Imposed By The First Amendment* ........................................................16

      3.  *As A Matter Of Law, There Can Be No Likelihood Of Confusion Stemming
          From The Political Video* .....................................................................19

   C.  BROWNE'S FOURTH CLAIM FOR COMMON LAW VIOLATION OF RIGHT OF
       PUBLICITY FAILS AS A MATTER OF LAW .................................................................20

V.   CONCLUSION....................................................................................................20

CASES

*Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682 (N.D. Ohio 2002) ----------- 10

*AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979)----------------------------- 16

*Baraban v. Time Warner, Inc.*, 54 U.S.P.Q.2d 1759, 2000 U.S. Dist. LEXIS 4447 (S.D.N.Y. 2000) -------------------------------------------------------------------------------8, 9

*Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2nd Cir. 2006) 10, 12, -------------------------------------------------------------------------------------- 14, 15

*Blanch v. Koons,* 467 F.3d 244 (2d Cir. 2006) --------------------------------------------- 12

*Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962 (C.D. Cal. 2007) ------------------------------------------------------------------------------------------4, 6

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994)------------- 5, 6, 10, 12, 13, 15

*Cinevision Corp. v. City of Burbank*, 745 F. 2d 560, (9th Cir. 1984) ------------------ 19

*Consumer Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044 (2nd Cir. 1983)-------------------------------------------------------------------------------------- 13

*Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118 (N.D. Cal. 2002) -----------------------------4

*E.S.S. Entertainment 2000 v. Rock Star Videos*, 2008 U.S. App. LEXIS 23294 (9th Cir. Nov. 5, 2008) -------------------------------------------------------------------------------17, 18

*Eldred v. Ashcroft*, 537 U.S. 186 (2003) --------------------------------------------------5

*ETW Corp. v. Jireh Pub., Inc.,* 332 F.3d 915 (6th Cir. 2003) --------------------------- 17

*Fisher v. Dees*, 794 F.2d 432 (9th Cir. 1986)------------------------------------------ 6, 15

*Halkin v. VeriFone, Inc.*, 11 F.3d 865 (9th Cir. 1993) -------------------------------------4

*Hofheinz v. AMC Prods., Inc*, 147 F. Supp. 2d 127 (E.D.N.Y. 2001) ------------------ 14

*Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148 (9th Cir. 1986)-- 6, 7, 9, 14

*Keep Thompson Governor Committee v. Citizens for Gallen Committee*, 457 F. Supp. 957 (D.N.H. 1978) ------------------------------------------------------------------- 7, 8, 14

*Kelly v. Arriba Soft Corp.*, 336 F.3d 811 (9th Cir. 2003) -------------------------------- 5

*Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310 (S.D.N.Y. 2008) --- 9, 11, 12, 13

*Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*, 780 F. Supp. 1283 (N.D. Cal. 1991) ------------------------------------------------- 14

*Mastercard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 70 U.S.P.Q.2d 1046, 2004 U.S. Dist. LEXIS 3644 (S.D.N.Y. 2004)------------------------------------------ 10

*Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002)-------------------- 16, 17

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)------------- 6, 18

*Nat' Rifle Ass'n of Am. v. Handgun Control Fed. of Ohio*, 15 F.3d 559 (6th Cir. 1994) --------------------------------------------------------------------------5, 7

*New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090 (C.D.Cal. 2004)----------------------- 15

*Oxycal Labs., Inc. v. Jeffers*, 909 F. Supp. 719 (S.D.Cal. 1995) ------------------------ 16

*Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F. Supp. 2d 1158 (C.D. Cal. 1998) --------------------------------------------------------------------3, 4

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146 (9th Cir. 2007) ---------5, 9, 10, 11

*Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001) ---------------- 16

*Rice v. Fox Broad. Co.*, 330 F.3d 1170 (9th Cir. 2003) ----------------------------------- 16

*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ------------------------------------------ 17

*Savage v. Council On American-Islamic Relations, Inc.*, 2008 U.S. Dist. LEXIS 60545 (N.D. Cal. 2008)-------------------------------------------------------------------7, 8, 9

*Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, (S.D.N.Y. 1990) --------- 15

<u>TREATISES</u>

4 *Nimmer on Copyright* (2005)-------------------------------------------------------------- 5, 11

## STATUTES

15 U.S.C. § 1124 ------------------------------------------------------------------- 15

17 U.S.C. § 107 ------------------------------------------------------------------- 6


## OTHER AUTHORITIES

S. 1883, *101st Cong.*, 1st Sess., 135 Cong. Rec. 1207, 1217 (April 13, 1989) --------- 15

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

## I.  <u>INTRODUCTION AND SUMMARY OF ARGUMENT</u>

This action relates to the use of a brief, fragmentary snippet from the song *Running on Empty* (the "Song"), which was released over thirty years ago by singer/celebrity/political activist Jackson Browne ("Browne"), in a political video (the "Political Video") created in August, 2008, during the presidential election campaign between Barack Obama ("Obama") and John McCain ("McCain"). The right to comment on political candidates and their policies is at the core of American democracy and First Amendment protection. The Political Video offers important political commentary on Obama and McCain's respective energy policies by asserting that Obama's policy – that significant energy savings can be attained through proper tire inflation – is "running on empty."

Browne brings this action because he does not agree with the content of this political message.  He asserts that the message "directly conflicts with the political and social values that Browne has espoused and supported throughout his career" and his "long standing position in favor of liberal causes and Democratic candidates." Complaint ("Compl."), ¶¶ 1 & 15. As a matter of law, however, Browne's effort to punish this political speech through this litigation must fail.

***First***, Browne's copyright infringement and vicarious copyright infringement claims fail as a matter of law. Given the non-commercial, transformative nature of the use of this long-ago published Song, the miniscule amount used, and the lack of any effect on the market for the Song (other than to perhaps *increase* sales of the Song), these claims are barred by the fair use doctrine.

***Second***, Browne's Lanham Act claim is barred as a matter of law because (a) the Lanham Act does not apply to political speech such as the Political Video; (b) the use of the Song is protected by the First Amendment "artistic relevance" test that has just recently been reaffirmed the Ninth Circuit; and (c) there can be no possible

1 likelihood that viewers of the Political Video could be confused about the source of the

2 Political Video or believe that it is somehow sponsored by or affiliated with Browne.

3     ***Finally***, as set forth in greater detail in Defendant RNC's concurrently-filed

4 Special Motion To Strike Under California Code of Civil Procedure Section 425.16

5 ("Anti-SLAPP Motion") (which is incorporated herein by reference), Browne's

6 California common law right of publicity claim fails as a matter of law because (a) the

7 Political Video is non-commercial political speech that relates to a matter of public

8 interest; (b) the Political Video is subject to full and stringent protection under the First

9 Amendment; (c) the use of Browne's voice in the Political Video was transformative;

10 and (d) the public interest in the content of the Political Video far outweighs any

11 interest Browne may have in the economic value of a brief and fleeting (about nine

12 seconds) use of his voice singing the cliché "running on empty." Accordingly, the

13 Complaint should be dismissed with prejudice.

14 **II. <u>RELEVANT FACTS</u>**

15     This action stems from a Political Video released by the Ohio Republican Party

16 ("ORP") that "mocks the suggestion of the presumptive Democratic candidate for

17 President, Senator Barack Obama [now President-Elect Obama], that the country can

18 conserve gasoline by keeping their automobile tires inflated to the proper pressure."

19 Compl., ¶ 2. In so doing, the Political Video used a portion of "Browne performing

20 one of his most famous musical compositions" to make that point. That composition,

21 the Song, was released in 1977 and has sold over seven million copies. Compl., ¶ 13.

22     The "facts" necessary to resolve this Motion and dispose of this case are

23 undisputed and incorporated by reference at Paragraphs 2 of the Complaint: the

24 Political Video. *See* concurrently-filed Joint Request For Judicial Notice ("RFJN"), ¶

25 1, Ex. 1. The Political Video is one minute and twenty seconds long. It starts with clips

26 from local Ohio television news broadcasts in which reporters discuss the "pain at the

27 pump," *i.e.*, high gasoline prices. One reporter asks "How do you bring down the price

28 of gas here in northeast Ohio and across the U.S.A.?" The Political Video then cuts to

a clip of Obama saying at a rally "making sure your tires are properly inflated." The sound of a needle being dragged across a record is then heard as the screen flashes the word "What!?!" The Political Video then shows information about McCain's energy plans and clips of McCain speaking at a political rally in which he states that low-income Americans are bearing the brunt of a failed energy policy. The Political Video then shows a screen that poses the question: "What's that Obama plan again?" At this point, approximately 50 seconds into the Political Video, music (but no lyrics) from the Song is first heard in the background. The Political Video then shows Obama stating that "we can save all the oil they're talking about getting off drilling if everyone was just inflating their tires." Senator Hillary Clinton is then shown saying (at a press conference during a time when she was also a candidate for the President of the United States), "Shame on you, Barack Obama." A picture of Obama then appears next to the caption "Barack Obama: No Solutions" and the words "No Solutions" change to the words "Not Ready to Lead." This screen with the picture and words appears at 1:11 into the Political Video, and at this point the sound of Browne singing the lyrics "running on empty" along with a few other words that bracket that phrase in the Song can be heard. The Political Video ends with a screen stating as follows: "Paid for by the Ohio Republican Party. www.ohiogop.org. Not authorized by any candidate or candidate committee." Thus, Browne's voice (*i.e.*, Browne singing the Song) is heard for **nine** seconds at the end of the Political Video. RFJN, ¶ 1, Ex. 1.

Based on the undisputed contents of the Political Video, all of Browne's claims fail as a matter of law. Accordingly, the Complaint must be dismissed with prejudice.

### III.   STANDARD FOR MOTION TO DISMISS

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Pegasus Holdings v. Veterinary Centers of America, Inc.*, 38 F. Supp. 2d 1158, 1159-60 (C.D. Cal. 1998). The scope of review on a motion under Rule 12(b)(6) is generally limited to the content of the complaint. *Id.* The Court may, however, consider exhibits submitted or referenced in the complaint and matters that

may be judicially noticed pursuant to Federal Rule of Evidence 201. *Id.* at 1160. Further, "documents specifically referred to in a complaint, though not physically attached to the pleading, may be considered where authenticity is unquestioned." *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118, 1121-22 (N.D. Cal. 2002) (court considered television program referenced in, but not attached to, complaint); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 966 (C.D. Cal. 2007) (reviewing two works referenced in the complaint and holding, on Motion to Dismiss, that copyright and Lanham Act claims were barred as a matter of law). Here, the Song and the Political Video are referenced in paragraph 2 of the Complaint. Pursuant to Defendants' concurrently filed Request for Judicial Notice, those works can be considered on this Motion.

"Dismissal under Rule 12(b)(6) is appropriate when it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations set forth in the complaint." *Burnett*, 491 F. Supp. 2d at 966. Although allegations of material fact must be accepted as true, "[c]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Halkin v. VeriFone, Inc. (In re VeriFone Sec. Litig,)*, 11 F.3d 865, 868 (9th Cir. 1993). Further, leave to amend should not be granted where additional facts will not cure the defects in the complaint. *Burnett,* 491 F. Supp. 2d at 971-972.

## IV.  BROWNE'S CLAIMS ALL FAIL AS A MATTER OF LAW

### A.  Browne's Copyright Infringement Claims Are Barred By The Fair Use Doctrine.

Assuming for purposes of this Motion that Browne is the owner of the copyright in the Song,[1] it is well-established that not all uses of copyrighted material require the permission of the copyright owner. In particular, the fair use doctrine "permits the use of copyrighted works without the copyright owner's consent under certain situations."

---

[1] Browne attached only the renewal certificate to the Complaint. Compl. Ex. A.

*Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1163 (9th Cir. 2007); 4 *Nimmer on Copyright*, § 13.05 at 13-155 (2005) ("*Nimmer*"). ("[T]he courts have long recognized that certain acts of copying are defensible as 'fair use'.") The fair use doctrine "encourages and allows the development of new ideas that build on earlier ones" and is designed to "avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Perfect 10, supra* (citing *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577, 114 S. Ct. 1164 (1994)); *see also Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 820 (9th Cir. 2003) ("To preserve the potential future use of artistic works for purposes of teaching, research, criticism, and news reporting, Congress created the fair use exception").[2]

The fair use doctrine is an integral part of the policy of the Copyright Act to foster and support the creation of new works and unfettered discussion of controversial social and political issues. Indeed, the concept of protecting and allowing proper fair use is not just a statutory protection – it is a Constitutional requirement for the Copyright Act's validity under the First Amendment. *Eldred v. Ashcroft*, 537 U.S. 186, 219-220, 123 S. Ct. 769, 788-789, 154 L.Ed. 2d 683, 711-712 (2003). ("[C]opyright law contains built-in First Amendment accommodations" such as the fair use defense). When speakers set about to convey important messages, such as the information contained in the Political Video, they are shaped by their perception of our culture and its well-known iconic works, phrases and references.

The Copyright Act of 1976 provides the framework for determining when the fair use doctrine shields a defendant from liability: "[T]he fair use of a copyrighted work … for purposes such as criticism [or] comment… is not an infringement of copyright." 17 U.S.C. § 107. In determining whether a use in any particular case is a

---

[2] *See also Nat' Rifle Ass'n of Am. v. Handgun Control Fed. of Ohio*, 15 F.3d 559, 561 (6th Cir. 1994), *cert. denied* 513 U.S. 815, 115 S. Ct. 71 (2004). ("[B]ecause some uses of copyrighted works are desirable for policy reasons, the courts have long held that many uses of copyrighted work do not infringe upon the copyright").

fair use, courts must consider four factors: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. *Id*. This entails a "case-by-case analysis" of the four factors, which are not to be treated in isolation, but to be explored and weighed together in light of the copyright law's purpose "to promote the progress of science and art by protecting artistic and scientific works while encouraging the development and evolution of new works." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 799-800 (9th Cir. 2003) (*citing Campbell,* 510 U.S. at 577). These factors are balanced to determine whether "the public interest in the free flow of information" outweighs the interest in the copyright. *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 796 F.2d 1148, 1151-52 (9th Cir. 1986).

The Court can conduct this analysis on a motion to dismiss. *Burnett,* 491 F.Supp.2d at 967, 972 (motion to dismiss granted without leave to amend because plaintiff's claims were barred by fair use doctrine). Ultimate conclusions to be drawn from facts pertaining to fair use are legal in nature and may be made by the court. *Fisher v. Dees*, 794 F.2d 432, 436 (9th Cir. 1986); *Burnett*, 491 F.Supp.2d at 967. Here, analysis of the fair use factors demonstrates that Browne's copyright infringement claims are barred by the fair use doctrine.

    1.    *The First Factor, The Purpose And Character Of The Use, Favors The RNC Because The Use Was Made In A Non-Commercial Political Message About Matters Of Public Concern And Was Transformative.*

Browne concedes that the purpose of the use was to make a political statement in a work of political speech and that the Political Video was the subject of substantial national media attention. Compl., ¶ 2 (Political Video used Song to "mock[] the suggestion of the presumptive Democratic candidate for President, Senator Barack

Obama, that the country can conserve gasoline by keeping their automobile tires inflated to the proper pressure"); *Id.* at ¶ 2 (16 (Political Video "discussed by the national news media"). It is well-established that fair use protection extends to uses made in political works relating to matters of public interest. *Savage v. Council On American-Islamic Relations, Inc.*, 2008 U.S. Dist. LEXIS 60545 (N.D. Cal. 2008) ("Protection under the doctrine of fair use extends to those [uses] with a political purpose"); *Hustler*, 796 F.2d at 1153 (Reverend Jerry Falwell sending to his followers an entire copy of plaintiff's parody of him deemed a fair use because, in part, it was done to "make a political comment about pornography"); *Keep Thompson Governor Committee v. Citizens for Gallen Committee*, 457 F. Supp. 957, 961 (D.N.H. 1978) (use that was "clearly part of a political campaign message" protected by fair use doctrine); *Nat' Rifle Ass'n*, 15 F.3d at 562 (use of work by political organization to exercise "First Amendment speech rights to comment on public issues" protected because the "scope of the fair use doctrine is wider when the use relates to issues of public concern").

In *Keep Thompson Governor, supra*, plaintiff was a political committee seeking the reelection of the governor of New Hampshire. Defendant was a political committee seeking to elect his challenger. A third party had produced and marketed a song titled *Live Free or Die*. Plaintiff had acquired the copyright to that song and was using it in its political advertisements. Defendant ran an opposing political television spot that copied portions of plaintiff's advertisement, including the song. Plaintiff sued for copyright infringement, which the court held was barred by the fair use doctrine.

The court first noted the important First Amendment context in which plaintiff's copyright infringement claim was being asserted:

> In the context of this case, the Court must be aware that it operates in an area of the most fundamental First Amendment activities. Discussion of public issues and debate on the qualifications of candidates are integral to the operation of the system of government established by the Constitution. The First Amendment affords the broadest

protection to such political expression in order to assure the unfettered interchange of ideas for the bringing about of political and social change desired by the people. Although First Amendment protection is not confined to the exposition of ideas, there is practically universal agreement that the major purpose of that Amendment was to protect the free discussion of governmental affairs, including discussion of candidates. This is a reflection on our profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open. In a republic where the people are sovereign, the ability of the citizenry to make informed choices among candidates for office is essential, because the identities of those who are elected will invariably shape the course we follow as a nation.

*Id.*, 457 F.Supp. at 959-60.

The court then evaluated plaintiff's copyright claim, which related to the use of 15 seconds of plaintiff's song in a political spot, under the fair use factors, noting that "the exclusive right of a copyright holder must be weighed against the public's interest in the dissemination of information affecting areas of universal concern." *Id.* at 960. Regarding the first factor, the court found that the use was "clearly part of a political campaign message, noncommercial in nature, and First Amendment issues of freedom of expression in a political campaign are clearly implicated." *Id.* at 961. Thus, this factor supported defendant. *Baraban v. Time Warner, Inc.*, 54 U.S.P.Q.2d 1759, 2000 U.S. Dist. LEXIS 4447 (S.D.N.Y. 2000) (use of photo was fair use because it was "part of a newsworthy advertisement that comments on an issue of public importance").

In *Savage v. Council on American-Islamic Relations, supra*, plaintiff Savage, host of the radio program *The Savage Nation*, filed a copyright infringement lawsuit against various entities associated with the Council on American-Islamic Relations ("CAIR") after CAIR posted to its website a four-minute audio clip of plaintiff's show. CAIR moved for judgment on the pleadings on the grounds that the complaint was barred by the fair use doctrine, and its motion was granted. Regarding the first factor, the court held that the purpose was to comment and criticize, and thus this factor

weighed "heavily in favor of defendants." *Savage*, 2008 U.S. Dist. LEXIS 60545 at 15. The court also rejected plaintiff's contention that the use was "commercial" because CAIR sought to raise funds, holding that "[p]rotection under the doctrine of fair use extends to those with a political purpose, even those engaged in fundraising activities." *Id.*, 2008 U.S. Dist. LEXIS 60545 at 14.

In *Hustler*, defendants Jerry Falwell and a religious organization, in response to a parody that appeared in *Hustler Magazine* that depicted Falwell having drunken incestuous sexual relations with his mother in an outhouse, sent copies of the parody to over 775,000 people. Falwell also displayed the *Hustler* parody on his television program. *Hustler* sued for copyright infringement, and the court dismissed the case on the grounds that the uses were protected by the fair use doctrine.

The *Hustler* court found that the purpose and character of the use factor favored defendants, even though the use was "in part to raise money," because the use was made also to "make a political comment about pornography," and defendants were using the work "to make a statement about pornography." *Hustler*, 796 F.2d at 1152. Thus, because the use served a "public interest," the first factor favored defendants. *Id.* at 1153; *see also Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 322 (S.D.N.Y. 2008) (first factor favored defendant because use "contribute[d] to the broader public interest by stimulating debate on an issue of current political concern"); *Baraban*, 54 U.S.P.Q.2d 1759, 2000 U.S. Dist. LEXIS 4447 (use of photograph as part of a "commentary on a political or social issue paid for as advertising by an advocacy group" ruled a fair use because it "criticize[d] efforts by the power industry to promote a sunny view of nuclear energy").

In addition to noting whether a use is made for political, critical or public interest purposes, courts evaluate whether the use was "transformative." *Perfect 10*, 508 F.3d at 1164 ("The central purpose of [the first fair use factor] inquiry is to determine whether and to what extent the new work is 'transformative'"). A work is transformative when the use not "merely supersede the objects of the original creation"

but rather "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell*, 510 U.S. at 579. A use is considered transformative where the defendant "changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Perfect 10*, 508 F.3d at 1165 (citation omitted); *see also Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 609 (2nd Cir. 2006) (use of concert posters as historical artifacts in a biography about the musical group Grateful Dead was transformative). Even the making of an exact copy of a work "may be transformative so long as the copy serves a different function than the original work." *Perfect 10*, 508 F.3d at 1165.

Here, all of these considerations noted above demonstrate that the first factor overwhelmingly favors the RNC. Browne concedes that the use was for a political and critical purpose, *i.e.*, to "mock" Obama. Compl., ¶ 2. Moreover, Browne concedes that the use related to a matter of utmost public interest, *i.e.*, the policies and qualifications of those seeking to be elected President of the United States. Nor was the use "commercial." The Political Video contains no request or call for political contributions to *anyone*. Nevertheless, the law is clear that, even if the Political Video *had* sought contributions (which it clearly did not), that would not render the use "commercial." *Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682 (N.D. Ohio 2002) (use of mark in a political campaign ad that included "solicitation of contributions" was "properly classified not as a commercial transaction at all, but completely noncommercial, political speech"); *Mastercard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*, 70 U.S.P.Q.2d 1046, 2004 U.S. Dist. LEXIS 3644 at 23-34 (S.D.N.Y. 2004). (Even if a candidate's ad resulted in increased contributions, the ad would still not be "commercial"; "If so … all political campaign speech would also be 'commercial speech' since all political campaigns collect contributions".)

Finally, the use of a brief snippet of the Song (used only because it contained the words "running on empty") was transformative. The Song, which deals with the rigors

of a musician's day-to-day life touring on the road and the effect of that lifestyle on the musician's life, was transformed into a political commentary on the energy plan of a candidate running for President. Thus, the Political Video transforms the Song from a mood-evoking composition about the lifestyle of a musician into a sarcastic commentary on aspects of a Presidential candidate's proposed energy plan. *Lennon*, 556 F. Supp. 2d at 324 (use of portion of song in movie transformative because defendant "put the song to a different purpose" than its original purpose and "placed the excerpt in the context of a debate regarding the role of religion in public life"). Thus, the purpose and character of the use factor unquestionably favors the RNC.

    2.    *The Second Factor, The Nature Of The Copyrighted Work, Favors The RNC*

The second factor concerns the nature of the work that was copied, *i.e.*, whether the work was creative or factual/historical and whether it was previously published. *Perfect 10*, 508 F.3d at 1167. Overall, however, the "second factor more typically recedes into insignificance in the greater fair use calculus." *Nimmer* § 13.05[A][2][a]; *Mattel*, 353 F.3d at 803 (second factor "typically has not been terribly significant in the overall fair use balancing"). Here, the factor favors the RNC.

First, the Song was published over thirty years ago. Compl., ¶ 13. Thus, the Political Video certainly did not usurp the "first publication" right in the Song – at least seven *million* copies of the Song have been sold to date. *Id.* Second, while the entire Song itself might be creative, the limited portion of it used in the Political Video was not particularly creative. Rather, the use consisted primarily of the words "running on empty" which is not only a basic metaphor for remaining active despite being low on energy (which is how the phrase is used in the Song – *see* Request for Judicial Notice Ex. B) but which is a phrase that has become part of the common political vernacular in discussing energy policy. *See* Request for Judicial Notice Ex. C. Indeed, politicians from both parties regularly used the phrase to describe the opposition's energy policies before the Political Video was created. *Id.*

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE RNC'S MOTION TO DISMISS

Finally, even assuming that the handful of words used from Song in the Political Video are creative, the second factor is "of limited usefulness where the creative work of art is being used for a transformative purpose." *Bill Graham*, 448 F.3d at 612 (reproductions of posters reduced in size and displayed with others throughout a book was fair use); *Lennon*, 556 F. Supp. 2d at 325 (same). Thus, limited weight is given to the second fair use factor when the defendant uses the original work in a transformative manner to make a social commentary rather than to exploit the work's creative virtues. *Blanch v. Koons,* 467 F.3d 244, 257 (2d Cir. 2006).

Here, because the Song was long ago published, the few words used from the Song were not particularly creative, the use was transformative, and the use was made in the context of a political message about an interest of great public concern, the second factor also favors the RNC.

### 3. The Third Factor, The Amount and Substantiality Of The Use, Favors the RNC

The third factor is whether the amount and substantiality of the portion used in relation to the work as a whole was "reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. "[T]he enquiry will harken back to the first of the statutory factors, for … the extent of permissible copying varies with the purpose and character of the use." *Id*. This involves a quantitative and qualitative analysis. *Id.*

The quantitative analysis clearly favors the RNC. The Political Video used only a small portion of the Song; less than thirty seconds, and only nine seconds of lyrics, from a song almost five minute long. Request for Judicial Notice Ex. B. Indeed, the only discernible portion used was Browne singing the words "running on empty" which, of course, was used in the Political Video to criticize Obama's campaign and energy policy. Request for Judicial Notice Ex. A. This focus only on the politically relevant portion of the Song weighs strongly in the RNC's favor. *Lennon*, 556 F. Supp. 2d at 325-26 (factor favored defendants because defendants used portion of song that

expresses idea they specifically wished to critique "without copying other portions of the song that do not express that idea").

The qualitative analysis turns on whether the material used furthers the purpose of the expressive work. *Campbell*, 510 U.S. at 588; *see also Lennon*, 556 F. Supp. 2d at 326 (applying the Supreme Court's analysis in *Campbell* to non-parodic uses; "this Court is aware of no reason not to apply it equally to copying for purposes of criticism and commentary"). In particular, in *Lennon*, defendants used a portion of the Beatles song "Imagine" containing the lyrics "nothing to kill or die for, and no religion too" in their documentary film to comment on the issue of whether "intelligent design" should be taught in schools. Given this context, the court found that the third factor weighed in favor of the defendants. "Using an easily recognizable portion of 'Imagine' was relevant to defendants' commentary because they wished to demonstrate that the negative views of religion expressed by their interview subjects were not new." *Lennon*, 556 F. Supp. 2d at 326. This is directly analogous to the instant case: the use of the Song is relevant to comment on Obama's campaign and energy policy. Thus, both the quantitative and qualitative factors, and therefore the third factor, weigh heavily in favor of the RNC.

    4.    *The Fourth Factor, The Effect Of The Use On The Potential Market For Or Value Of Plaintiff's Work, Favors The RNC*

The fourth factor focuses on the effect of the use on the market for the plaintiff's work. This factor reflects the copyright law's condemnation of the "copier who attempts to *usurp the demand* for the original work." *Consumer Union of United States, Inc. v. General Signal Corp.*, 724 F.2d 1044, 1050 (2nd Cir. 1983), *cert. denied* 469 U.S. 823 (1984) (emphasis added). "The theory behind the copyright laws is that creation will be discouraged if demand can be undercut by copiers. Where the copy does not compete with the original, this concern is absent." *Id*. at 1051. Moreover, when analyzing the fourth factor, courts examine "the impact on potential licensing revenues for traditional, reasonable, or likely to be developed markets." *Bill Graham*

*Archives,* 448 F.3d at 614. "The economic effect of [the use] … is not its potential to destroy or diminish the market of the original – any bad review can have that effect – but rather whether it fulfills the demand for the original." *Lewis Galoob Toys, Inc. v. Nintendo of America, Inc.*, 780 F. Supp. 1283, 1294-95 (N.D. Cal. 1991), *aff'd* 964 F.2d 965 (9th Cir. 1992).

Here, this fourth factor overwhelmingly favors the RNC. The Political Video does not usurp the demand for the Song. No one who would have an interest in listening to the Song, or in paying for a copy of the Song, would watch the Political Video instead of paying for the Song. Browne's fans and those wanting to listen to the Song could not have been satiated by hearing a few words from it in a political video about energy policy that includes out-of-order cuts from the Song totaling less than thirty seconds, with politicians talking over the music for much of the time the Song played. *Hustler*, 796 F.2d at 1156 (use of portion of *Hustler* magazine did not effect market because work was long since published, so use "did not diminish the initial sales," and those interested in purchasing work would not lose such interest, because the use was "only one page of a publication which would be purchased for 'its other attractions'"); *Keep Thomson Governor*, 457 F. Supp. at 961 (use of "15 seconds from a total recording of three minutes" was a fair use; the recordings "have sold and are continuing to sell without substantial commercial loss to the plaintiff").

In fact, if the use of the Song in the Political Video will have any effect, it will likely *increase* the popularity of this thirty year-old Song when those watching the Political Video will be reminded of it and go out and purchase it. *Hofheinz v. AMC Prods., Inc*, 147 F. Supp. 2d 127, 140 (E.D.N.Y. 2001) (holding that use of clips and stills in a show about monster films was a fair use, and that "the Documentary may increase market demand for plaintiff's copyrighted works . . . defendants' brief display of the photographs, poster, and model monsters at issue should only increase consumer demand as well as value of those items").

Even if Browne should argue that he was deprived of a licensing fee for the use, or that he would *never* license the Song to a conservative Republican like McCain, such assertions would not negate a finding of fair use: "A copyright holder cannot prevent others from entering fair use markets merely by developing or licensing a market for parody, news reporting, educational or other transformative uses of its own creative work … Copyright owners may not preempt exploitation of transformative markets." *Bill Graham Archives*, 448 F.3d at 614-615. And a *refusal* by Browne to license to the RNC does not work against a finding of fair use. As the Supreme Court has made clear: "If the use is otherwise fair, then no permission need by sought or granted. Thus, being denied permission to use a work does not weigh against a finding of fair use." *Campbell*, 510 U.S. at 585, n.18 (citing *Fisher*, 794 F.2d at 437). Indeed, a contention by Browne that he would never license his work because the use would purportedly offend him *strengthens* the fair use argument. Thus, the fourth factor strongly favors the RNC.

## B.  Browne's Lanham Act Claim Fails As A Matter Of Law

Browne asserts a claim for "false association or endorsement" under the Lanham Act, 15 U.S.C. § 1124(a). Compl., ¶¶ 32-38. That claims fails for a variety of reasons.

### 1.  The Lanham Act Does Not Apply To Political Speech

The Lanham Act applies only to "commercial speech" and does not apply to political speech. *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1117 (C.D.Cal. 2004); *Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130, 141 (S.D.N.Y. 1990) ("Notwithstanding that the [Lanham] Act encompasses a broad range of misrepresentations, it is clearly directed only against false representations in connection with the sale of goods or services in interstate commerce"); S. 1883, *101st Cong.*, 1st Sess., 135 Cong. Rec. 1207, 1217 (April 13, 1989) (Lanham Act "should not be read in any way to limit political speech, consumer or editorial comment, parodies, satires, or other constitutionally protected material"); *Oxycal Labs., Inc. v.*

*Jeffers*, 909 F. Supp. 719, 723 (S.D.Cal. 1995) ("the Lanham Act is applicable only to 'commercial advertising and promotion.'…The communication must first be found to be commercial speech."); *Proctor & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 552 (5th Cir. 2001) (if the speech is not commercial, "there can be no Lanham Act claim").

As the Ninth Circuit has made clear, "representations constitute commercial advertising or promotion under the Lanham Act if they are: 1) commercial speech; 2) by a defendant who is in commercial competition with plaintiff; 3) for the purpose of influencing consumers to buy defendant's goods or services." *Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003). In *Rice*, the court rejected Lanham Act claims stemming from statements in a television program that revealed the secrets of magicians, holding that the statements were not "commercial speech" for purposes of the Lanham Act. *Id.* None of the requirements for a valid Lanham Act claim set forth by the court in *Rice* are met here; (1) the Political Video is not "commercial speech"; (2) the RNC is clearly not "in commercial competition" with Browne; and (3) the Political Video was not aimed at influencing consumers to buy any goods or services. Rather, the Political Video discussed important political issues and matters of great public concern. Accordingly, there can be no Lanham Act claim.

    2.    *Browne's Lanham Act Claim Is Barred By The "Artistic Relevance" Test Imposed By The First Amendment*

Even assuming that the Lanham Act applies to the Political Video, the claim is barred as a matter of law under the "artistic relevance" test. In a standard trademark infringement action, the court looks to whether there is a "likelihood of consumer confusion" as demonstrated by a multi-factor test. *See, e.g.*, *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341 (9th Cir. 1979). This "likelihood of confusion" test, however, is not applied in the context of expressive works, because that test "fails to account for the full weight of the public's interest in free expression." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002), *cert denied* 537 U.S. 1171 (2003) ("trademark rights do not entitle the owner to quash an unauthorized use of the mark

by another who is communicating ideas or expressing a point of view"); *E.S.S.*
*Entertainment 2000 v. Rock Star Videos*, No. 06-56237, slip op. 15143, 2008 U.S.
App. LEXIS 23294 (9th Cir. Nov. 5, 2008) ("intersection of trademark law and the
First Amendment" requires different test).[3] Rather, courts have adopted a different test
for a situation involving the expressive use of a celebrity's identity – the "artistic
relevance" test.

In *MCA*, defendants produced a song named "Barbie Girl" in which a band
member impersonates the Mattel doll Barbie and which contains numerous uses of the
name "Barbie." Mattel claimed that the song would likely confuse consumers into
thinking Mattel was affiliated with it. *MCA*, 296 F.3d at 899. The Ninth Circuit
concluded, however, using a two-part test established by *Rogers v.Grimaldi*, 875 F.2d
994 (2d Cir. 1989), that the use of the mark by defendants was protected by the First
Amendment because (1) it was artistically relevant to the work (*i.e.*, a song that "pokes
fun at Barbie and the values that [defendant] contends she represents") and (2) it was
not specifically misleading as to sponsorship or endorsement (*i.e.*, the song did not
"explicitly or otherwise, suggest that it was produced by Mattel"). *Mattel, Inc. v. MCA*,
296 F.3d at 901-902. Similarly, in *Walking Mountain*, a photographer sold various
photographs of Mattel's Barbie doll in precarious situations. Mattel sued, claiming
trademark infringement. The Ninth Circuit applied the same two-part test and held that
the trademark claims were barred: the use of the Barbie mark was protected because
(1) it was artistically relevant to help defendant "depict Barbie and target the doll with
[defendant's] parodic message" and (2) defendant did not do anything to "explicitly

---

[3] *See also ETW Corp. v. Jireh Pub., Inc.,* 332 F.3d 915, 926-28 (6th Cir. 2003)
(likelihood of confusion test is not appropriate "where the defendant has articulated a
colorable claim that the use of a celebrity's identity is protected by the First
Amendment" because the test "fails to adequately consider the interests protected by
the First Amendment"); *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) (rejecting
likelihood of confusion test in case involving use of celebrity's name in title of movie).

mislead as to Mattel's sponsorship of the works." *Mattel, Inc. v. Walking Mountain*, 353 F.3d at 807.

Finally, in *E.S.S. Entertainment*, *supra,* defendant created the popular GRAND THEFT AUTO series of games in which players engage in various criminal exploits that take place in one or more cities modeled after actual cities. The GRAND THEFT AUTO: SAN ANDREAS edition (the "Game") took place in virtual cities based on California cities. The "Los Santos" city (based on Los Angeles) featured in it, among other things, a strip club called the "Pig Pen." Plaintiff, who operated a strip club in Los Angeles called the "Play Pen," alleged that the "Pig Pen" infringed plaintiff's trademarks. The Ninth Circuit affirmed the District Court's holding that plaintiff's trademark claims were barred by the First Amendment and the artistic relevance test. In particular, the Court in *E.S.S.* held that this "artistic relevance" test applies not only to the use of a celebrity's identity in the title of a work, but also the use in the contents of the work: "Although this [artistic relevance] test traditionally applies to uses of a trademark in the title of an artistic work, there is no principled reason why it ought not also apply to the use of a trademark in the body of the work." *E.S.S.*, slip op. at 15151.[4] Furthermore, "the level of relevance merely must be above zero" to warrant First Amendment protection. *Id*. Thus, the two-prong test used in *Walking Mountain*, *MCA* and *E.S.S.* is directly applicable here and fatal to Browne's claim: Browne *concedes* that the use was artistically relevant to "mock[]" Obama and his energy policy as "running on empty." Compl., ¶ 2. Moreover, the Political Video did not explicitly suggest endorsement. Thus, the Lanham Act claim fails.

---

[4] *See also Romantics v. Activision Publishing*, 532 F.Supp.2d 884, 889 (E.D.Mich. 2008) (use of plaintiffs' identities in expressive work is "protected under the First Amendment where it is related to the content of the work").

### 3. As A Matter Of Law, There Can Be No Likelihood Of Confusion Stemming From The Political Video

Even assuming that the "likelihood of confusion" test applied (which it clearly does not), because the Political Video clearly identifies its source as the ORP, there is no likelihood that it would cause any confusion as to its origin.

Moreover, there is no possible likelihood that people could have been confused into believing that Browne supported McCain. Browne concedes as much; in his Complaint, he goes to great lengths to highlight his well-known liberal and Democratic political beliefs. To wit: Browne has written "politically and socially charged songs [that] have reached audiences since the 1960s" (Compl., ¶ 1); he has an "influential and enduring …legacy as an advocate for social and environmental justice" (*Id.*); he has "closely associated himself with liberal causes and Democratic political candidates" and "spent significant time throughout his career raising public awareness of such causes" (*Id.*); he and John Mellencamp are "well-known supporter[s] of Democratic ideals" (*Id.*, ¶ 3); he has "maintain[ed] a long-standing position in favor of liberal causes and Democratic candidates" and "often performed at political rallies for Democratic Party candidates" (*Id.*, ¶ 15); his "public support for the Democratic Party" and Obama "is well-known" (*Id.*); and he is "internationally renowned" and "equally respected nationally for his political and social activism, including his longstanding association with liberal causes and Democratic candidates." *Id.*, ¶ 33. Indeed, the Ninth Circuit, in recognizing that "the musical expression of some performers reflects a particular political view and that some performers may, apart from their music, represent a particular ideology or way of life," specifically cited ***Jackson Browne*** as an artist who was well-known for his songs' "political or social messages." *Cinevision Corp. v. City of Burbank*, 745 F. 2d 560, 568-69 (9th Cir. 1984). Given the explicit statement of the source of the Political Video in the video itself, and Browne's pervasive association with liberal causes and Democratic candidates, there was no possibility of confusion, and thus Browne's claim fails.

### C. Browne's Fourth Claim For Common Law Violation Of Right Of Publicity Fails As A Matter Of Law

As set forth in greater detail in the RNC's concurrently-filed Anti-SLAPP Motion"), which is incorporated by reference, Browne's California common law right of publicity claim fails as a matter of law because (a) the Political Video is non-commercial political speech that relates to a matter of public interest; (b) the Political Video is subject to full and stringent protection under the First Amendment; and (c) the use of Browne's voice in the Political Video was transformative.

## V. <u>CONCLUSION</u>

Accordingly, for the reasons set forth above, the RNC respectfully requests that the Court grant the Motion and dismiss Browne's Complaint with prejudice.

DATED: November 17, 2008        KLEIN, O'NEILL & SINGH, LLP


By   /s/ Howard J. Klein
        Howard J. Klein

        Attorneys for Defendant,
        THE REPUBLICAN NATIONAL
        COMMITTEE

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of the filing to all counsel of record.

                                    /s/ Sang N. Dang
                                    Sang N. Dang