KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
LAWRENCE Y. ISER (SBN 094611)
  liser@kwikalaw.com
PATRICIA A . MILLETT (SBN 150756)
  pmillett@kwikalaw.com
JONATHAN STEINSAPIR (SBN 226281)
  jsteinsapir@kwikalaw.com
GREGORY S. GABRIEL (SBN 239902)
  ggabriel@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California  90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Jackson Browne

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

| | |
|---|---|
| JACKSON BROWNE, an individual<br><br>    Plaintiff,<br><br>    vs.<br><br>JOHN MCCAIN, an individual; THE REPUBLICAN NATIONAL COMMITTEE, a non-profit political organization; THE OHIO REPUBLICAN PARTY; a non-profit political organization<br><br>    Defendants. | CASE NO. CV 08-05334 RGK (Ex)<br><br>**CONSOLIDATED OPPOSITION OF PLAINTIFF JACKSON BROWNE TO SPECIAL MOTIONS TO STRIKE UNDER C.C.P. § 425.16 FILED BY DEFENDANTS JOHN MCCAIN, THE REPUBLICAN NATIONAL COMMITTEE AND THE OHIO REPUBLICAN PARTY**<br><br>[Consolidated Opposition of Plaintiff To Motions to Dismiss Pursuant to FRCP 12(b)(6) Filed by Defendants; Opposition of Plaintiff To Motion to Dismiss Filed by Ohio Republican Party; Declarations of Donald Miller and Jonathon Noyes; Evidentiary Objections; and Notice of Lodging submitted concurrently herewith]<br><br>Hon. R. Gary Klausner<br>Date Filed: August 14, 2008 |

11166-/42071.5

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ..................................................................................... 1

II.     STATEMENT OF FACTS ........................................................................ 2

III.    ARGUMENT ............................................................................................ 3

      A.     Defendants' Theft Of Plaintiff's Identity To Convey And
            Endorse Their Message Is Not A Protected Activity Under
            Section 425.16 ................................................................................. 3

      B.     Plaintiff Will Prevail On His Right of Publicity Claim .......................... 6

            1.     California Common Law Does Not Restrict The
                    Application Of Right Of Publicity Claims To Commercial
                    Speech ................................................................................. 6

            2.     Defendants' Use of Plaintiff's Voice In The Commercial
                    Constitutes A Misappropriation of Plaintiff's Identity ................ 7

            3.     The Public Interest Defense Does Not Immunize
                    Defendants' Misappropriation Of Plaintiff's Identity ............... 10

            4.     The First Amendment Does Not Immunize Defendants'
                    Misappropriation of Plaintiff's Identity Because
                    Defendants' Use Was Not Transformative ............................... 16

            5.     Even If McCain Was Not Directly Involved In The
                    Creation Of The Commercial, He Is Vicariously Liable
                    For The Acts Of His Agents ....................................................... 18

IV.     CONCLUSION ..................................................................................... 20

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# TABLE OF AUTHORITIES

**Page**

## CASES

*Briscoe v. Reader's Digest Association, Inc.*,
4 Cal.3d 529, 541 (1971) .......................................................................................... 16

*Chee v. Amanda Goldt Property Management*,
143 Cal.App.4th 1360, 1375 (2006) ......................................................................... 18

*Comedy III Productions Inc., v. Gary Saderup, Inc.*,
25 Cal.4th 387, 396 (2001) ................................................................................. passim

*Cox v. Hatch*,
761 P.2d 556 (Utah 1988) .......................................................................................... 13

*Daly v. Viacom, Inc.*,
238 F.Supp.2d 1118, 1122 (2002) ...................................................................... 10, 11

*Davis v Duryea*,
99 Misc. 3d 933 (N.Y.S.C. 1979) .............................................................................. 12

*Dora v. Frontline Video, Inc.*,
15 Cal.App.4th 536 (1993) ......................................................................................... 11

*Dyer v. Childress*,
147 Cal.App.4th 1273, 1278 (2007) .................................................................... 3, 4, 5

*Eastwood v. Superior Court*,
149 Cal.App.3d 409, 421 (1983) ........................................................... 7, 10, 16, 19

*Elvis Presley Enterprises, Inc. v. Passport Video*,
349 F.3d 622, 630 (9th Cir. 2003) ............................................................................. 10

*Friends of Phil Gramm v. Americans for Phil Gramm In '84*,
587 F.Supp. 769 (E.D.Va. 1984) ............................................................................... 13

*Gallimore v. State Farm Fire & Casualty Ins. Co.*,
102 Cal.App.4th 1388, 1398 (2002) ........................................................................... 4

*Garrison v. Louisiana*,
379 U.S. 64, 74-75 (1964) .......................................................................................... 11

*Gionfriddo v. Major League Baseball*,
94 Cal.App.4th 400, 409 (2001) .................................................................................. 7

*Hurley v. Irish-American Gay, Lesbian and Bisexual Group of Boston*,
515 U.S. 557, 574 (1995) ............................................................................................ 16

*International Olympic Committee v. San Francisco Arts & Athletics*,
781 F.2d 733, 737 (9th Cir. 1986) ............................................................................. 15

*Maheu v. CBS, Inc.*,
201, Cal.App.3d 662 (1988) ....................................................................................... 12

*Midler v. Ford Motor Co.*,
    849 F.2d 460 (9th Cir. 1988)..........................................................................8, 9

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal.App.4th 790, 793 (1995)........................................................7, 10, 11

*Navellier v. Sletten*,
    29 Cal.4th 82, 89 (2002)...................................................................................6

*New Kids On The Block v. News America Publishing, Inc.*,
    971 F.2d 302 (9th Cir. 1992)............................................................................12

*New York Times Co. v. Sullivan*,
    376 U.S. 254, 270 (1964)................................................................................16

*Newcombe v. Adolf Coors Co.*,
    157 F.3d 686, 694 (9th Cir. 1998)....................................................................19

*Overstock.com, Inc. v. Gradient Analytics, Inc.*,
    151 Cal.App.4th 688, 699 (2007)..................................................................6, 18

*Paulsen v. Personality Posters, Inc.*,
    59 Misc.2d 444 (N.Y.S.C. 1968)..................................................................12, 14

*Waits v. Frito-Lay, Inc.*,
    978 F.2d 1093 (9th Cir. 1992)........................................................................8, 9

*Wilcox v. Superior Court*,
    27 Cal.App.4th 809, 819 (1994)........................................................................4

*Winter v. D.C. Comics*,
    30 Cal.4th 881, 885 (2003)..................................................................16, 17, 18


## STATUTES

California Code of Civil Procedure § 425.16 ...................................................passim

California Code of Civil Procedure Section 425.16(e)(4).........................................4

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

**I.     INTRODUCTION**

This case involves the theft of a famous musician's identity and intellectual property to convey and endorse a message in an advertisement; it does not involve an attempt to stifle fundamental free speech rights as defendants urge.  During the recent Presidential election, working on behalf of the Republican National Committee (the "RNC") and Republican candidate Senator John McCain ("McCain"), the Ohio Republican Party ("ORP") created and distributed a commercial (the "Commercial") touting McCain's candidacy and attacking the energy policy of  Senator Barack Obama ("Obama").[1]  In the Commercial, plaintiff Jackson Browne ("Plaintiff") is plainly heard singing the chorus from one of his most famous and instantly recognizable songs, *Running on Empty.*  However, Defendants did not seek or receive permission to use Plaintiff's famous voice in the Commercial.  While the law does not prohibit Defendants' use of the words "running on empty" in the Commercial, it does prohibit Defendants' unauthorized use of Plaintiff's famous voice, and thereby his identity, to convey Defendants' message and to endorse McCain's candidacy.  Defendants' free speech rights do not alter this inescapable conclusion.

Defendants attack Plaintiff's right of publicity claim by filing special motions to strike under California Code of Civil Procedure § 425.16 ("Section 425.16").[2]  In an attempt to justify their theft, Defendants' motions rely heavily on general principles of free speech.  Defendants, however, ignore the initial dispositive issue under Section 425.16: whether Defendants' misappropriation of Plaintiff's identity <u>itself</u> relates to a matter of public concern.  Because the message of the Commercial does not remotely concern Plaintiff or his social activism, and because Plaintiff, in

---

[1] The ORP, RNC and McCain are collectively referred to herein as "Defendants."

[2] Plaintiff files this consolidated Opposition in response to all three special motions to strike filed by Defendants.  All citations to a "Motion" herein refer to the Special Motion to Strike filed by Senator John McCain.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

his lawsuit, does not seek redress based on the content or substance of Defendants' message, the answer to this preliminary question is no. Therefore, Plaintiff's right of publicity claim does not fall within the ambit of Section 425.16.

Even if the Court determines that Plaintiff's publicity claim is susceptible to a motion to strike under Section 425.16, the Court should deny Defendants' motions because Plaintiff will ultimately succeed on his claim. First, it is well-settled that the unauthorized use of a distinctive and well-known voice such as Plaintiff's amounts to an usurpation of his identity. Second, because the ultimate goal of the Commercial was to promote McCain's candidacy for President, Defendants unquestionably benefited from their misappropriation of Plaintiff's identity. Third, Plaintiff has not only been damaged by Defendants' failure to compensate him for the use of his identity, but also by the use of his identity to convey a message he would not have otherwise endorsed. Thus, Plaintiff easily satisfies each of the elements of a right of publicity claim under California common law. Finally, it is of no legal significance that Defendants stole Plaintiff's identity to endorse McCain's candidacy, as opposed to the sale of goods or merchandise, because California right of publicity law is not restricted to unauthorized commercial use of an identity.

A decision by the Court striking Plaintiff's right of publicity claim under Section 425.16 would be tantamount to issuing a license to future political candidates to use the pretext of free speech to conscript anyone they see fit to serve as an unwitting endorser of their political message. This is not and should not be the law. Accordingly, the Court should deny Defendants' motions to strike.

## II. STATEMENT OF FACTS

Plaintiff is a world-renowned singer and songwriter whose songs have continually reached widespread audiences over the past five decades. In 1977, Plaintiff released his most commercially successful album entitled *Running on Empty*, which included a song sharing the same name. Declaration of Donald Miller ("Miller Decl."), ¶ 2. *Running on Empty* is one of Plaintiff's most famous and

enduring songs, having reached number 11 on Billboard's top 100 list in 1978, and Rolling Stone's list of the top 500 greatest songs of all time in 2004. *Id.* While Plaintiff has licensed *Running on Empty* for use in motion pictures such as *Forrest Gump*, he has <u>never</u> licensed *Running on Empty,* for use in a commercial. *Id.*

On or about July 29, 2008, the ORP began creating the Commercial in order "to provide criticism and commentary on Obama's energy strategy." Declaration of John McClelland in Support of John McCain's Motion to Strike ("McClelland Decl."), ¶ 8. Defendants chose to use a sound recording of Plaintiff performing *Running on Empty* as the soundtrack for the Commercial. *Id.*, Exh. 1. During the Commercial, Plaintiff's distinctive and well-known voice can be heard singing the song's famous chorus, which includes the phrase "running on empty." *Id.* Inexplicably, Defendants did not seek or receive authorization from Plaintiff to use Plaintiff's voice in the Commercial. Miller Decl., ¶ 6. On August 4, 2008, the ORP posted the Commercial on Youtube.com where it could be viewed by an international audience. McClelland Decl., ¶ 12.

## III.   ARGUMENT

### A.   Defendants' Theft Of Plaintiff's Identity To Convey And Endorse Their Message Is Not A Protected Activity Under Section 425.16

Section 425.16 requires the Court to engage in a two-step process to determine whether a cause of action is subject to a special motion to strike. In the first step, the "defendant must make a threshold showing that the challenged cause of action arises from protected activity." *Dyer v. Childress*, 147 Cal.App.4th 1273, 1278 (2007). In order to make this determination, the Court should "analyze whether the defendant's act underlying the plaintiff's cause of action <u>itself</u> was an act in furtherance of the right of petition or free speech [concerning a matter of public interest]." *Id.* at 1279 (emphasis in original).[3] In conducting this analysis, the Court

---

[3] In asserting that Plaintiff's publicity claim falls within the ambit of Section 425.16, (footnote continued)

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

1   must focus "on the specific nature of the challenged protected conduct, rather than

2   generalities that might be abstracted from it." *Id.*  "Moreover, that a cause of action

3   arguably may have been 'triggered' by a protected activity does not entail it is one

4   arising from such."  *Gallimore v. State Farm Fire & Casualty Ins. Co.*, 102

5   Cal.App.4th 1388, 1398 (2002).  Finally, Section 425.16 "<u>does not apply in every

6   case where the defendant may be able to raise a First Amendment defense to a cause

7   of action.</u>"  *Wilcox v. Superior Court*, 27 Cal.App.4th 809, 819 (1994) (emphasis

8   added) (overruled on other grounds).

9        In *Dyer v. Childress*, the court focused on the specific nature of the

10  challenged conduct, rather than generalities of free speech, to conclude that the

11  unauthorized use of plaintiff's identity in a movie did not fall within the ambit of

12  Section 425.16.  *Dyer*, 147 Cal.App.4th 1273.  The defendants in *Dyer* wrote and

13  produced a movie that included a character which was loosely based on, and shared

14  the same name as the plaintiff.  Plaintiff sued defendants for defamation and

15  invasion of privacy, among other things.  Defendants filed a Section 425.16 motion

16  contending that "because they are media defendants and movies are entitled to free

17  speech protection, [the movie] should be protected under the anti-SLAPP statute."

18  *Id.* at 1281.  Defendants argued that the movie broadly involved a matter of public

19  interest because it commented upon "the issues facing Generation X at the start of

20  the 1990's."  *Id.* at 1279.

21       The appellate court affirmed the trial court's ruling that Section 425.16 did

22  not apply to defendants' misuse of plaintiff's persona because defendants' misuse

23  <u>itself</u> was not a matter of public interest:

24       "[a]lthough [the movie] may address topics of widespread public
         interest, the <u>defendants are unable to draw any connection between
25       those topics and [plaintiff's] defamation and false light claims.</u>"  *Id.* at

26  _____

27  Defendants rely on Section 425.16(e)(4), which provides that one type of protected
    activity is "conduct in furtherance of the exercise of the constitutional right of
    petition or the constitutional right of free speech in connection with a public issue or
28  an issue of public interest."  Cal. Code. Civ. Proc. 425.16(e)(4).

1280 (emphasis added).

The court held that Defendants' reliance on a string of cases in which public figures interjected themselves into a matter of public concern was misplaced because unlike those cases, plaintiff had not interjected himself into a matter of public concern, nor was the movie a commentary on plaintiff's role in such matters. *Id*. at 1281.[4]

Here, Defendants contend that because they are engaged in politics, and political speech is entitled to First Amendment protection, their unauthorized use of Plaintiff's voice in the Commercial falls within the ambit of Section 425.16. Just as in *Dyer*, Defendants are attempting to focus the Court's attention on broad generalities of free speech instead of the pertinent issue: whether Defendants' usurpation of Plaintiff's identity <u>itself</u> relates to a matter of public concern. The Court should reject Defendants' argument for the same reasons the virtually identical argument was rejected in *Dyer*. While a message about McCain's candidacy or Obama's energy policy relates to an issue of public concern, this message has nothing to do with Plaintiff. For this reason, Defendants' theft of Plaintiff's identity was not an "act in furtherance of the right of petition or free speech." Instead, it was a gratuitous theft of a musician's identity to endorse a political message. Applying Section 425.16 to strike such a claim would have a chilling effect on an individual's right to petition the courts for redress. Accordingly, the Court should deny Defendants' motions because the <u>specific challenged conduct</u> does not fall within the ambit of Section 425.16.

---

[4] The court also noted that there was no public interest in plaintiff's persona. Defendants will undoubtedly attempt to distinguish *Dyer* on the basis that there is public interest in Plaintiff's persona. While this may be true, Defendants concede that the Commercial was not a commentary on any aspect of Plaintiff's persona, including his social activism, but instead a commentary on Obama's energy plan. (Motion, pp. 1:14-16; 2:11-12; 3:17-19; 11:5-9; 14:24-27; 16:23-25) Accordingly, while the Commercial generally concerned a matter of public interest, that matter of public interest is entirely unrelated to Plaintiff's persona.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

### B.   Plaintiff Will Prevail On His Right of Publicity Claim

In the event that the Court determines that Defendants' theft of Plaintiff's identity to convey and endorse their message is a protected activity under Section 425.16(e)(4), the second step under Section 425.16 requires Plaintiff to establish a probability of success on the merits of his publicity claim. *Id.* at 1279-80. However, Plaintiff's "burden of establishing a probability of prevailing is not high." *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal.App.4th 688, 699 (2007). "The Court should not "weigh credibility, nor . . . evaluate the weight of the evidence. Instead, [the court should] accept as true all evidence favorable to the plaintiff and assess the defendant's evidence only to determine if it defeats the plaintiff's submission as a matter of law. <u>Only a cause of action that lacks 'even minimal merit' constitutes SLAPP</u>." *Id.* at 699-700 (emphasis added), *citing Navellier v. Sletten*, 29 Cal.4th 82, 89 (2002).

Defendants fail to establish that their evidence defeats Plaintiff's right of publicity claim as a matter of law, nor have they established that Plaintiff's claim lacks "even minimal merit." Quite to the contrary, as explained below, Plaintiff's right of publicity claim has considerable merit and a high probability of success. Were the Court to hold otherwise, its decision would grant candidates for elected office the unfettered right to conscript <u>anyone</u> they see fit to become unwitting spokespersons for their campaign messages under the pretext of free speech – a particularly untenable result.

### 1.   California Common Law Does Not Restrict The Application Of Right Of Publicity Claims To Commercial Speech

In order for Plaintiff to prevail on his common law right of publicity claim, he must establish the following elements: "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, <u>commercially or otherwise</u>; (3) lack of consent; and (4) resulting injury." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 421 (1983) (emphasis added);

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  *See also, Montana v. San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 793 (1995)

2  (same); *Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400, 409 (2001)

3  (same).  Accordingly, the law unequivocally provides that Plaintiff simply must

4  show that Defendants benefited from their unauthorized use of his identity without

5  regard to whether such benefit was "commercial."

6  　　　Despite the clear mandate of California law, Defendants incorrectly posit that

7  "expressive, noncommercial speech" is not subject to a right of publicity claim and

8  instead, right of publicity law only applies to commercial speech that "does no more

9  than propose a commercial transaction . . ."  (Motion, p. 11:22-27; 12:1-10)  The

10  fallacy in Defendants' argument is evidenced not only by the elements of a publicity

11  claim at common law, as enunciated in *Eastwood* and its progeny, *supra*, which

12  provide that defendant must benefit "commercially or otherwise," but also by one of

13  the cases upon which Defendants rely in support of their argument.  In *Comedy III*

14  *Productions Inc., v. Gary Saderup, Inc.*, 25 Cal.4th 387, 396 (2001), the California

15  Supreme Court held that "the present case does not concern commercial speech" and

16  that defendant's portraits of plaintiff's likeness were "expressive works, and not an

17  advertisement for or endorsement of a product."  Nevertheless, the court found

18  defendant liable for infringing plaintiffs' publicity rights.  *Id*. at 409-10.

19  Accordingly, it is patently incorrect for Defendants to assert that their usurpation of

20  Plaintiff's identity is immunized solely because the Commercial did not propose a

21  commercial transaction and did not endorse any product.

　　　　　　　**2.**　　**Defendants' Use of Plaintiff's Voice In The Commercial**
22
　　　　　　　　　　**Constitutes A Misappropriation of Plaintiff's Identity**
23

24  　　　The Ninth Circuit has twice held that the unauthorized use of a famous

25  singer's voice in an advertisement constitutes a misappropriation of the singer's

26  identity under California common law.  *See Midler v. Ford Motor Co.*, 849 F.2d 460

27

28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   (9th Cir. 1988); *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992).[5]  In *Midler,*

2   the court held that an individual's voice embodies the core of his or her identity

3   stating that "[a] voice is as distinctive and personal as a face.  The human voice is

4   one of the most palpable ways identity is manifested."  *Midler*, 849 F.2d at 463.

5   Accordingly, the court reversed the grant of summary judgment and remanded for

6   trial, concluding that "[t]o impersonate [Midler's] voice is to pirate her identity."  *Id*.

7       In *Waits*, the court reaffirmed its ruling in *Midler* holding that so long as the

8   individual's voice is "distinctive" and "widely known," an individual has a property

9   right that protects against the unauthorized use of his or her voice.  *Waits*, 978 F.2d

10  at 1100.  "A voice is distinctive if it is distinguishable from the voices of other

11  singers . . . if it has particular qualities or characteristics that identify it with a

12  particular singer."  *Id*. at 1101.  "A professional singer's voice is widely known if it

13  is known to a large number of people throughout a relatively large geographic area."

14  *Id*. at 1102.  The court found that Waits' voice was both distinctive and well-known

15  and upheld the jury's award of compensatory and punitive damages for defendants'

16  violation of his right of publicity.  *Id*. at 1103-06.

17      There can be no doubt that Plaintiff's voice is both distinctive and well-

18  known under the standards articulated in *Waits*.  Plaintiff's vocal style is

19  distinctively earnest and endearing.  Miller Decl., ¶ 5.  Moreover, Plaintiff's voice is

20  not only well-known in this country, but it is instantly recognizable throughout the

21  world.  Plaintiff's musical career has spanned five decades, during which time he

22  has played thousands, of concerts on 6 continents and sold approximately 14 million

23  albums.  *Id*., ¶ 3.  Plaintiff's popularity remains strong to this day as he continues to

24  sell out venues throughout the world.  *Id*.  Plaintiff's indelible legacy was cemented

25  by his induction into the Rock and Roll Hall of Fame in 2004 (*Id*., ¶ 3, Exh. B), and

26  _____

27  [5] In both of these cases defendants used an imitation of plaintiff's voice, however, if
    the unauthorized use of an imitation of a voice is actionable conduct then *a fortiori*,
28  unauthorized use of a plaintiff's actual voice is as well.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

the Songwriters Hall of Fame in 2007. *Id.*, ¶ 3, Exh. C. In fact, the ORP concedes that "Plaintiff is an internationally recognized rock star who has traveled throughout the world." (Motion to Dismiss Filed By Ohio Republican Party, p. 11: 12-13)[6] Plaintiff is also well-known for his social activism, receiving the John Steinbeck Award in 2002, an award which is given to artists whose works exemplify the environmental and social values that were essential to the great California-born author. *Id.*, ¶ 3. As one of the most iconic and recognizable singer-songwriters of his generation, Plaintiff has a protectable property right in his voice.

Having established that Defendants misappropriated Plaintiff's identity by using his voice in the Commercial without authorization, Plaintiff easily satisfies the remaining elements of his right of publicity claim. First, Defendants misappropriated Plaintiff's voice for their benefit by using it in a commercial to promote McCain's candidacy. Indeed, Defendants claim to have benefited from their unauthorized use of Plaintiff's voice: "Plaintiff's voice . . . played an important role in the commentary on [Obama's energy policy]." (Motion, p. 14:25-27) Second, it is undisputed that Plaintiff did not consent to Defendants' use of his voice in the Commercial. Miller Decl., ¶ 6. Finally, Plaintiff has been damaged, *inter alia*, by Defendants failure to compensate him for their use of his voice. *Id.*; *See also*, *Waits*, 978 F.2d at 1102-03 (awarding damages for: (1) the failure of Defendants to pay Waits for the fair market value of his services; (2) injury to Waits' peace, happiness and feelings; and (3) injury to Waits' goodwill, professional standing and future publicity value).

*Midler* and *Waits* are squarely on all fours with the present case, which compels the Court to hold that Plaintiff has established a high probability of success

---

[6] McCain and the RNC do not dispute Plaintiff's status as an intentionally known musician as both defendants quote the following from Plaintiff's complaint without objection: "Plaintiff is a world-renowned singer and songwriter." (Motion, p. 2:6; RNC's Motion to Strike, p. 2:5).

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

1  on his right of publicity claim. Defendants will assuredly attempt to distinguish

2  *Midler* and *Waits* on the basis that the advertisements at issue in those cases related

3  to the sale of products. However, as set forth above, this is a distinction without

4  legal significance. While the courts in *Midler* and *Waits* referred to the

5  "commercial" nature of defendants' unauthorized use of plaintiffs' voices,

6  California common law is not so constrained – ***any*** unauthorized use of an

7  individual's identity for Defendants' benefit, "commercial <u>or otherwise</u>," is

8  actionable. *See, Eastwood*, 149 Cal.App.3d at 421 (emphasis added).

9      The fact that Plaintiff's voice is used for nine seconds in the Commercial is

10  also without legal significance as there is no California case establishing a *de*

11  *minimis* use exception to a right of publicity claim. Analogizing to the fair use test

12  under Copyright law exposes the lack of merit in Defendants' *de minimis* argument.

13  The third factor of the fair use test requires the court to consider "the amount and

14  substantiality of the portion used in relation to the copyrighted work as a whole." 17

15  U.S.C. § 107(3). Under this analysis, the court inquires to "see whether the <u>heart</u> of

16  the copyrighted work is taken . . ." *Elvis Presley Enterprises, Inc. v. Passport*

17  *Video*, 349 F.3d 622, 630 (9th Cir. 2003) (emphasis added). Indeed, unauthorized

18  copying "may not be excused merely because it is insubstantial with respect to the

19  <u>infringing work</u>." *Id*. (emphasis in original). In the present matter, Defendants

20  misappropriated the famous chorus of *Running on Empty*, which is unequivocally

21  the heart of one of Plaintiff's most recognizable, beloved and classic songs.

22  Accordingly, the fact that Defendants used Plaintiff's voice for nine seconds in the

23  Commercial does not immunize their misappropriation.

       **3.**    **The Public Interest Defense Does Not Immunize Defendants'
Misappropriation Of Plaintiff's Identity**

26      It is true that "where the publication or dissemination of matters is 'in the

27  public interest,'" a defense exists under the First Amendment to a right of publicity

28  claim. *Daly v. Viacom, Inc.*, 238 F.Supp.2d 1118, 1122 (2002), *citing Montana v.*

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*San Jose Mercury News, Inc.*, 34 Cal.App.4th 790, 793 (1995).  Nevertheless, the public interest defense is not a talisman providing its holder with absolute immunity against all violations of publicity rights.  Manifestly, while the Commercial generally related to a presidential campaign and therefore to a matter of public interest, this fact alone does not provide Defendants carte blanch to conscript Plaintiff, or anyone else, as an unwitting spokesperson for their campaign message. In fact, with one wrongly decided exception, in every case cited by Defendants in which a court applied the public interest defense to a right of publicity claim, <u>the matter of public interest directly concerned the individuals who were seeking redress for violation of their right of publicity</u>.[7]

In *Montana v. San Jose Mercury News, Inc.,* 34 Cal.App.4th 790, 793 (1995), a newspaper reprinted in poster form an article that had appeared in the newspaper about the San Francisco 49ers' Super Bowl victories that prominently featured an image of plaintiff Joe Montana.  The court held that both the article and the poster were protected by the public interest defense "because Montana was a major player in contemporaneous newsworthy sports events."  *Montana*, 34 Cal.App.4th at 641.

In *Dora v. Frontline Video, Inc.*, 15 Cal.App.4th 536 (1993), the court held that the "[p]ublic interest attaches to people who by their accomplishments or mode of living create a bona fide attention to <u>their activities</u>."  *Id*. at 542 (emphasis added).  The court found that a documentary about surfing was "a documentary

---

[7]  In *Daly v. Viacom, Inc.*, 238 F.Supp.2d 1118 (2002), the court concluded that because the work at issue was "an expressive work protected by the First Amendment, plaintiff cannot state a misappropriation claim based on the use of her likeness in the program or the advertisements for the program." *Id*. at 1123, *citing Comedy III*, 25 Cal.4th 387.  However, in so ruling, the District Court ignored the essential element of the decision in *Comedy III*. In *Comedy III*, the California Supreme Court found that defendant violated plaintiffs' right of publicity because defendant's work, although expressive in nature, was not transformative.  *Comedy III*, 25 Cal.4th at 409-10.  The court in *Daly* failed to analyze whether defendant's use was transformative. As such, Plaintiff respectfully submits that *Daly* was wrongly decided. Defendants also cite *Garrison v. Louisiana*, 379 U.S. 64, 74-75 (1964), however, *Garrison* is inapposite because it concerned a defamation claim, not a publicity claim.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

about a certain time and place in California history . . ." and that plaintiff, a famous surfer, was a significant contributor to the "development of a lifestyle that has become world-famous and celebrated in popular culture . . ."  *Id*. at 543.  Accordingly, the court held that defendant's use of plaintiff's identity in a documentary commenting on the lifestyle that plaintiff helped to inspire was protected by the public interest defense.

In *New Kids On The Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992), a newspaper and magazine printed articles and ran polls concerning the public's perception of members of the band.  Because the newspaper and magazine were commenting directly on the very band that was asserting a claim for violation of its right of publicity, the court held that the band's publicity claims were barred by the public interest defense.  *Id*. at 310.

In *Maheu v. CBS, Inc.*, 201, Cal.App.3d 662 (1988), defendant published a book about Howard Hughes who had communicated to his aide strictly through written letters upon which the book was allegedly based.  The aide asserted a right of publicity claim against defendant.  The court found that the book was a news account reporting on Hughes' life, including his relationship with his aide, and therefore the use of plaintiff's identity was protected by the public interest defense.

In *Paulsen v. Personality Posters, Inc.*, 59 Misc.2d 444 (N.Y.S.C. 1968), plaintiff, a comedian, conducted a mock campaign for the president in 1968.  Defendant printed and sold posters with an image of plaintiff containing the words "FOR PRESIDENT" across the bottom.  The court held that "[a] poster which portrays plaintiff in [his role as mock presidential candidate], and reflects the spirit in which he approaches said role, is a form of public interest presentation to which protection must be extended."  *Id*. at 449-50.

In *Davis v Duryea*, 99 Misc. 3d 933 (N.Y.S.C. 1979), defendant used a picture of plaintiff in a commercial promoting tougher stances on gubernatorial pardons.  The picture of plaintiff was from a newspaper article commenting on

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  plaintiff's pardon by the incumbent governor.  The court held the public interest

2  defense protected defendant's use stating that "[t]his plaintiff became a part of a

3  major campaign issue involving our penal system and the treatment of crime and

4  criminals.  His story and history merged into the essential relevant area of privileged

5  public discussion of the matters of public concern . . ."  *Id.* at 939 (citations

6  omitted).

7  In *Cox v. Hatch*, 761 P.2d 556 (Utah 1988), plaintiffs voluntarily posed with

8  Senator Orin Hatch during the Senator's reelection campaign.  Plaintiffs asserted a

9  right of publicity claim when Senator Hatch used the picture in promotional

10  materials for his campaign.  The court dismissed plaintiffs' claim stating that

11  "persons who are in public or semi-public places and who are unexpectedly caught

12  within the range of news cameras do not have a privacy interest that can prevail

13  against the First Amendment informational interest.  The same conclusion applies

14  with even greater force to those who willingly allow their pictures to be taken."  *Id.*

15  at 563.  This holding, which concerns a plaintiff who voluntarily posed for a picture

16  with a politician, clearly has no bearing on the present case.

17  Finally, *Friends of Phil Gramm v. Americans for Phil Gramm In '84*, 587

18  F.Supp. 769 (E.D.Va. 1984) is readily distinguishable.  In that case, Senator Phil

19  Gramm asserted a publicity claim in an effort to stop an organization from using his

20  name in their solicitations.  The court held that "Defendants were within their First

21  Amendment rights in using Gramm's name without his consent in their solicitations.

22  The right to use a candidate's name in supporting or opposing his candidacy for

23  public office extends to organizations such as AFPG as well as to individuals."  *Id.*

24  at 774 (emphasis added).  It is elementary that an organization can lobby for or

25  against a political candidate who has thrust himself into a public election by using

26  his name and image in informational materials.  However, this fundamental right

27  does not permit the use of an unrelated third parties' identity in those same materials

28  to create a false endorsement.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

1    <u>In the present matter, the public interest defense has no application because</u>

2    <u>the Commercial was not a commentary on Plaintiff or his political or social</u>

3    <u>activism</u>.  Defendants concede, as they must, that the Commercial commented on

4    Obama's energy policy.  (Motion, pp. 1:14-16; 2:11-12; 3:17-19; 11:5-9; 14:24-27;

5    16:23-25)  While Obama's energy policy is certainly a matter of public interest, it

6    has absolutely nothing to do with Plaintiff.  This dispositive fact distinguishes the

7    present matter from every case relied upon by Defendants and renders the public

8    interest defense inapplicable to the present matter.

9    Recognizing the infirmity in their argument, Defendants speciously argue that

10   "[h]aving injected himself into the public arena through his (constitutionally

11   protected) political advocacy, Plaintiff cannot now use the courts to silence those

12   who <u>reference this advocacy</u> to make competing political points."  (Motion, p.

13   10:24-27) (emphasis added).  Again, Defendants attempt to focus the Court on broad

14   generalities instead of the pertinent facts.  Defendants fail to explain how the

15   Commercial "references" any political activity by Plaintiff.  The reason for

16   Defendants' failure is clear: the Commercial is not a commentary on Plaintiff's

17   political activities, or even the political activities of entertainers in general, but a

18   direct commentary on Obama's energy policy.[8]  Manifestly, <u>Defendants admit that</u>

19   <u>they were not familiar with Plaintiff or his music</u> when they used his work without

20   authorization.  *See* McClelland Decl. at ¶ 10; Mauk Decl. at ¶ 27.  Thus, Defendants

21   obviously could not have been targeting Plaintiff or his song when they copied

22   *Running on Empty*.

23   Another red-herring interjected by Defendants is their suggestion that the

_____

25   [8] Contrast this with *Paulsen* upon which Defendants rely to support their specious
     argument.  Paulsen, 299 N.Y.S.2d at 507.  In *Paulsen*, plaintiff directly interjected
26   himself into the Presidential campaign by running a mock campaign and the posters
     at issue commented directly related to the mock campaign.  *Id*. at 449-50.  The
27   Court did not broadly hold that because plaintiff was politically active generally,
     anyone could make a poster of him emblazoned with the words "FOR
28   PRESIDENT."

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

phrase "running on empty" has "become part of the common political vernacular in discussing energy policy . . ." (Motion, p. 3:23-24). From this broad generalization Defendants assert that:

> "Plaintiff's voice (as he sings his familiar and cliché line 'running on empty') played an important role in the commentary on [Obama's energy policies]. The public's familiarity with that line was an important tool to make a complicated message accessible to the public." (Motion p., 14:25-27).

Defendants' argument is a non-sequitur. Defendants did not need to misappropriate Plaintiff's <u>voice</u>, and thereby his identity, to suggest that Obama's energy policy is "running on empty;" they simply could have used the phrase without using Plaintiff's voice. *See e.g., International Olympic Committee v. San Francisco Arts & Athletics,* 781 F.2d 733, 737 (9th Cir. 1986) (rejecting defendant's "political speech" defense to claim of trademark infringement because defendant had "satisfactory alternative means" to communicate its message without using the trademark.). Indeed, in every instance cited by Defendants where the phrase "running on empty" was used in political or social commentary, only the phrase itself was used, not Plaintiff's voice and identity. *See*, Declaration of Lincoln Bandlow in Support of John McCain's Motion to Strike, Exhs. 5-20. The fact that a phrase made famous through Plaintiff's vocal artistry has often been used by various pundits does not grant the unrestricted right to use Plaintiff's own voice to convey that phrase. If the rule were Otherwise, every politician in America would have the right to conscript the famous voice of singer Neil Diamond singing the well-known schoolchild phrase "my country tis of thee, sweet land of liberty" from Diamond's hit song, *America*.

A decision by the Court that Defendants' unauthorized use of Plaintiff's voice is immunized simply because the Commercial generally involved political speech would have far-reaching and incongruous consequences. For example, in future campaigns political candidates could use the power of public figures to their advantage by delivering their message in an advertisement while a parade of images

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1    of famous individuals scrolls across the screen thereby creating the impression that

2    those individuals endorse the candidate.  The Court should not grant politicians an

3    unrestricted license to use the identities of public figures to endorse their campaigns

4    for elected office simply because such campaigns broadly implicate free speech

5    principles.

6          **4.    The First Amendment Does Not Immunize Defendants'**
              **Misappropriation of Plaintiff's Identity Because Defendants'**
7          **Use Was Not Transformative**

8          It is indisputable that political speech is afforded broad protection under the

9    First Amendment and that such protections are meant to foster open debate without

10   fear of reprisal.  *New York Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964)

11   (recognizing a "profound national commitment to the principle that debate on public

12   issues should be uninhibited, robust, and wide open.").  However, First Amendment

13   protections afforded to political speech guard against censorship of the substance

14   and content of a speaker's message.  *See e.g.*, *Hurley v. Irish-American Gay,*

15   *Lesbian and Bisexual Group of Boston*, 515 U.S. 557, 574 (1995) ("the point of all

16   speech protection . . . is to shield just those choices of <u>content</u> that in someone's eyes

17   are misguided, or even hurtful") (emphasis added).  Such protections are not meant

18   to sanction the misappropriation of an individual's identity for use as an

19   endorsement of a protected message.  *Eastwood*, at 422 ("the rights guaranteed by

20   the First Amendment do not require total abrogation of the right to privacy and . . .

21   the right of publicity."), *citing Briscoe v. Reader's Digest Association, Inc.*, 4 Cal.3d

22   529, 541 (1971).  The California Supreme Court recognized the tension between

23   California's right of publicity laws and the First Amendment and has crafted a

24   balancing test "based on whether the work in question adds significant creative

25   elements so as to be transformed into something more than a mere celebrity likeness

26   or imitation." *Winter v. D.C. Comics*, 30 Cal.4th 881, 885 (2003); *See also*, *Comedy*

27   *III*, 25 Cal.4th at 405 ("whether a work is 'transformative' appears to us to be

28   necessarily at the heart of any judicial attempt to square the right of publicity with

the First Amendment.").[9]

In *Winter*, the Court concluded that cartoon caricatures of plaintiffs were transformative stating that "[t]o the extent the drawings of the Autumn brothers resemble plaintiffs at all, they are <u>distorted for purposes of lampoon, parody, or caricature</u>. And the Autumn brothers are but cartoon characters-half-human and half-worm-in a larger story, which is itself quite expressive." *Winter*, 30 Cal.4th at 890 (emphasis added). In contrast, in *Comedy III*, defendant drew literal depictions of the Three Stooges and sold them on t-shirts and lithographs. Even though defendant exhibited great creative skill in his rendering of the Stooges, the court concluded that it could "discern no significant transformative or creative contribution. [The artist's] undeniable skill is manifestly subordinated to the overall goal of creating literal, conventional depictions of The Three Stooges . . ." *Comedy III*, 25 Cal. 4th at 409. Accordingly, the Court found that defendant's use of plaintiffs' likenesses was not immunized by the First Amendment. *Id.* at 409-10.

The present matter is far more analogous to *Comedy III* than *Winter*. In fact here, in contrast to the defendant in *Comedy III*, Defendants added no creative expression whatsoever to transform Plaintiff's identity. Defendants mechanically copied Plaintiff's sound recording and therefore, his voice – verbatim – and placed it into the Commercial without authorization. Thus, Defendants' unauthorized use of Plaintiff's identity is far less transformative than the literal depiction of the Three Stooges that was found to violate plaintiffs' right of publicity in *Comedy III*.

Defendants suggest that their use of Plaintiff's voice is transformative because they make "unexpected use of a rock song combined with a manipulation of the message of the Song . . ." which is "neither the same traditional use of the Song, nor an acceptable substitute for the Song's conventional full-length version."

---

[9] The transformative analysis arises as a defense under both Copyright and right of publicity law, however, the application of the test varies slightly because copyright law and publicity law protect distinctly different property rights.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   (Motion, p. 18:23-26)  Defendants' argument strains credulity.  As set forth in

2   *Winter* and *Comedy III*, for purposes of the right of publicity, the transformative test

3   requires some <u>creative transformation of the individual's identity</u>.  The precise

4   copying of Plaintiff's voice into a commercial through which Defendants' conveyed

5   their political message does not transform Plaintiff's identity at all.  Moreover, the

6   fact that Defendants "manipulated the message" of the song *Running on Empty* to

7   convey a message that Plaintiff disagrees with does not make the verbatim use of

8   Plaintiff's voice transformative as Defendants suggest, instead it makes Defendants'

9   violation of Plaintiff's publicity rights particularly reprehensible.

10          Defendants also again argue that their use of Plaintiff's voice is permissible

11  because they have "used a familiar expression in a familiar song to convey an

12  important message."  (Motion, p. 18:7-8)  As explained above, nothing prevented

13  Defendants from referring to Obama's energy policy as "running on empty,"

14  however, the law prohibits Defendants from using Plaintiff's distinctive and well-

15  known voice to convey and endorse their message.

16          **5.      Even If McCain Was Not Directly Involved In The Creation**
                       **Of The Commercial, He Is Vicariously Liable For The Acts**
17                     **Of His Agents**

18          It is a well-established and fundamental maxim of law that "vicarious liability

19  for torts is imposed by operation of law . . . upon principals for the acts of their

20  agents."  *Chee v. Amanda Goldt Property Management*, 143 Cal.App.4th 1360,

21  1375 (2006).  The evidence strongly suggests that the ORP acted as an agent of

22  McCain when it created the Commercial, and at this stage of the proceedings, the

23  Court must "accept as true all evidence favorable to the plaintiff . . ."

24  *Overstock.com, Inc.*, 151 Cal.App.4th at 699.[10]  Accordingly, the court cannot

25

26  _____

27  [10] The RNC does not contend that it had no involvement in the creation of the
    Commercial.  Accordingly, while the evidence suggests that the ORP acted as an
    agent for both McCain and the RNC, Plaintiff only focuses on the relationship
28  between McCain and the ORP for purposes of this Opposition.

1  dismiss Plaintiff's right of publicity claim based on McCain's declaration that he

2  was not involved in the creation of the Commercial.

3      First, the essential purpose of the Commercial was to promote McCain's

4  candidacy. The Commercial itself is strong evidence from which a jury could infer

5  that the Commercial was prepared on behalf of McCain and his campaign.

6      Second, it is well-known that Ohio was considered by most political

7  observers to be one of, if not the most important "swing state" in the recent election.

8  It would be difficult for a jury to believe that McCain and his campaign would not

9  be consulted regarding advertisements by the ORP advocating McCain's candidacy

10  for President in such a critical state.

11      Third, McCain, the ORP and the RNC created a joint fund raising committee

12  entitled "McCain Victory for Ohio" ("MVO"). Declaration of Jonathon Noyes ,

13  Exh. G. MVO enabled Defendants "to hold joint fund-raising events and split the

14  proceeds." *Id.* This evidence shows that McCain was directly raising money for the

15  ORP so that it could create commercials like the one at issue. Given Defendants'

16  close coordination regarding fund-raising, a jury could reasonably conclude that

17  Defendants also coordinated regarding advertising.

18      Attempting to avoid the consequences of the agency relationship between

19  himself and the ORP, McCain cites *Newcombe v. Adolf Coors Co.*, 157 F.3d 686,

20  694 (9th Cir. 1998) for the proposition that he cannot be held liable for infringing

21  Plaintiff's right of publicity if he did not make "knowing use" of Plaintiff's identity.

22  However, *Newcombe* is inapposite because the court was ruling on a statutory right

23  of publicity claim which requires the plaintiff to establish that defendant made

24  "knowing use" of his identity. *Id*. at 692 ("Section 3344, unlike a common law

25  claim, thus requires a plaintiff to establish: (1) a "knowing" use . . ."). There is no

26  "knowing use" requirement under California common law. *Eastwood*, 149

27  Cal.App.3d at 421.

28      In the event that the Court determines that the aforementioned evidence is

1  insufficient to establish an agency relationship between McCain and the ORP, the

2  Court should allow Plaintiff to conduct limited discovery on this issue, as well as on

3  the issue of McCain's involvement in the creation of the Commercial.  Section

4  425.16(g) provides that "[t]he court, on noticed motion and for good cause shown,

5  may order that specified discovery be conducted notwithstanding [the general stay

6  of discovery]."  C.C.P. §425.16(g).  Good cause exists to allow such discovery

7  because the aforementioned evidence at a minimum creates a reasonable inference

8  that the ORP was acting as the agent of McCain.  The Court should not permit

9  McCain to avoid liability for the Commercial without permitting Plaintiff to conduct

10  discovery regarding the relationship between all Defendants.

11  **IV.    CONCLUSION**

12      The Court should not be misled by Defendants' motions.  Defendants are not

13  relying on Section 425.16 to protect their right to free speech, because Plaintiff's

14  claim does not seek redress based on the content or substance of Defendants'

15  message.  Instead, Defendants rely on Section 425.16 in an effort to immunize their

16  unauthorized use of Plaintiff's identity to convey and endorse their message – an

17  illegal act which is entirely unrelated to Defendants' free speech rights.  The Court

18  should deny Defendants' motions because Section 425.16 does not apply under such

19  circumstances.  Even if the Court finds that Plaintiff's right of publicity claim falls

20  within the ambit of Section 425.16, it still must deny Defendants' motions because

21  Plaintiff has established a high probability of success on his claim.  Based on the

22  foregoing, Plaintiff respectfully requests that the Court deny Defendants' motions.

23  DATED:  January 7, 2008          KINSELLA WEITZMAN ISER KUMP &
                                     ALDISERT LLP
24

25

26                                   By:  /s/ Lawrence Y. Iser
                                          Lawrence Y. Iser
27                                        Attorneys for Jackson Browne

28