KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
LAWRENCE Y. ISER (SBN 094611)
  liser@kwikalaw.com
PATRICIA A. MILLETT (SBN 150756)
  pmillett@kwikalaw.com
JONATHAN P. STEINSAPIR (SBN 226281)
  jsteinsapir@kwikalaw.com
GREGORY S. GABRIEL (SBN 239902)
  ggabriel@kwikalaw.com
808 Wilshire Boulevard, 3rd Floor
Santa Monica, California 90401
Telephone: 310.566.9800
Facsimile: 310.566.9850

Attorneys for Plaintiff Jackson Browne

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| JACKSON BROWNE, an individual<br><br>Plaintiff,<br><br>vs.<br><br>JOHN MCCAIN, an individual; THE REPUBLICAN NATIONAL COMMITTEE, a non-profit political organization; and THE OHIO REPUBLICAN PARTY; a non-profit political organization<br><br>Defendants. | CASE NO. CV 08-05334 RGK (Ex)<br><br>**PLAINTIFF JACKSON BROWNE'S CONSOLIDATED OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)[1]**<br><br>Date:       February 2, 2009<br>Time:       9:00 a.m.<br>Courtroom:  850 (Roybal Bldg.)<br><br>Judge:      Hon. R. Gary Klausner |

---

[1] This Opposition brief responds to the Motions to Dismiss of Defendants the Republican National Committee and Senator McCain (Docket Nos. 20 & 27.) This brief also responds to that portion of Defendant Ohio Republican Party's motion to dismiss (Docket No. 23) arguing that the Complaint fails to state a claim.

11166.00015/42650

PLAINTIFF'S OPPOSITION TO MOTIONS TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ..................................................................................... 1

II. STATEMENT OF FACTS ...................................................................... 2

III. STANDARDS GOVERNING RULE 12(b)(6) MOTIONS ........................... 3

IV. ARGUMENT ......................................................................................... 3

    A.    Defendants' Exact Copying Was <u>Not</u> a Fair Use; And at the Very Least, the Court Could Not So Find on the Pleadings Alone. ............... 3

        1.    The Purpose and Character of the Use. ....................................... 4

            (a)    Defendants' "Political Speech"/"Matters of Public Concern" Analysis is Inapposite. ......................... 5

            (b)    Defendants' Exact Copying is Not a Fair Use Because it Does Not Target the Original. .......................... 7

        2.    The Nature of the Copyrighted Work. ........................................ 11

        3.    The Amount and Substantiality of the Portion Used. ................. 11

        4.    The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work. ................................... 12

        5.    Conclusion re the Fair Use Factors ............................................ 12

    B.    The Complaint States a Viable Claim for Relief Under Section 43(a)(1)(A) of the Lanham Act. ............................................. 13

        1.    The Lanham Act Applies To The Conduct At Issue. ................. 14

        2.    Plaintiff's Claim Under § 43(a) of the Lanham Act is Not Barred by the Artistic Relevance Test ........................ 17

        3.    Browne Can Show a Likelihood of Confusion ........................... 19

V.  CONCLUSION ..................................................................................... 20

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

# TABLE OF AUTHORITIES

**Page**

## CASES

*American Family Life Ins. Co. v. Hagan*,
  266 F. Supp. 2d 682 (N.D. Oh. 2002) ......................................................17

*AMF, Inc. v. Sleekcraft Boats*,
  599 F.2d 341 (9th Cir. 1979) ........................................................19, 20

*Baraban v. Time Warner, Inc.*,
  2000 WL 358375, *3 (S.D.N.Y. 2000) ..............................................9

*Big Bear Lodging Ass'n v. Snow Summit, Inc.*,
  182 F.3d 1096 (9th Cir. 1999) ...........................................................3

*Bill Graham Archives v. Dorling Kindersley*,
  448 F.3d 605 (2d Cir. 2006) ............................................................10

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) (Kennedy, J., concurring) ..........................passim

*Downing v. Abercrombie & Fitch*,
  265 F.3d 994 (9th Cir. 2001) ........................................................19, 20

*Dr. Seuss Enterprises, L.P. v. Penguin Books USA, Inc.*,
  109 F.3d 1394 (9th Cir. 1997) ....................................................passim

*E.S.S. Entertainment 2000 v. Rock Star Videos*,
  547 F.3d 109 (9th Cir. 2008) ........................................................18, 19

*E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*,
  444 F. Supp. 2d 1012 (C.D. Cal.),
  *aff'd by* 547 F.3d 109 (9th Cir. 2008) ..........................................19

*Eldred v. Ashcroft*,
  537 U.S. 186 (2003) ...............................................................1, 2, 6

*Elvis Presley Enterp. v. Passport Video*,
  349 F.3d 622 (9th Cir. 2003) ............................................................11

*Four Navy Seals v. Associated Press*,
  413 F. Supp. 2d 1136 (S.D. Cal. 2005) .............................................4

*Gilligan v. Jamco Develop.*,
  108 F.3d 246 (9th Cir. 1997) ........................................................3, 4

*GoTo.com, Inc. v. Walt Disney Co.*,
  202 F.3d 1199 (9th Cir. 2000) ...........................................................16

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Harper & Row v. Nation Enterp.*,
　　471 U.S. 539 (1985) ................................................................passim

*Hustler Magazine Inc. v. Moral Majority Inc.*,
　　796 F.2d 1148 (9th Cir. 1986) .................................................. 9

*Keep Thompson Governor Committee v.
　　Citizens for Gallen Committee*,
　　457 F. Supp. 957 (D.N.H. 1978) ............................................. 9

*Lennon v. Premise Media*,
　　556 F. Supp. 2d 310 (S.D.N.Y. 2008) ................................... 9, 10

*Los Angeles News Service v. KCAL-TV*,
　　108 F.3d 1119 (9th Cir. 1997) ................................................ 11

*MasterCard Intern. Inc. v. Nader 2000*,
　　70 U.S.P.Q.2d 1046 (S.D.N.Y. 2004) ..................................... 17

*Mattel, Inc. v. MCA Records, Inc.*,
　　296 F.3d 894 (9th Cir. 2002) .................................................. 18

*Mattel, Inc. v. Walking Mountain Prods.*,
　　353 F.3d 792 (9th Cir. 2003) .................................................. 18

*MGM v. Grokster*,
　　545 U.S. 913 (2005) ................................................................ 4

*MGM-Pathe Commns. Co. v. Pink Panther Patrol*,
　　774 F. Supp. 869 (S.D.N.Y. 1991) (Leval, J.) ....................... 15

*New.Net, Inc. v. Lavasoft*,
　　356 F. Supp. 2d 1090 (C.D. Cal. 2004) .................................. 17

*Oxycal Laboratories, Inc. v. Jeffers*,
　　909 F. Supp. 719 (S.D. Cal. 1995) ......................................... 17

*Perfect 10 v. Amazon.com*,
　　508 F.3d 1146 (9th Cir. 2007) ................................................ 4

*Phoenix Hill Enterprises, Inc. v. Dickerson*,
　　1999 WL 33603127, *1 (W.D. Ky. 1999) .............................. 9

*Planned Parenthood Federation of America, Inc. v. Bucci*,
　　1997 WL 133313, *4-7 (S.D.N.Y. 1997) ................................ 16

*Procter & Gamble Co. v. Amway Corp.*,
　　242 F.3d 539 (5th Cir. 2001) .................................................. 17

*Rice v. Fox Broadcasting Co.*,
　　330 F.3d 1170 (9th Cir. 2003) ................................................ 16

*Savage v. Council On American-Islamic Relations, Inc.*,
　　2008 WL 2951281, *6 (N.D. Cal. 2008) ................................ 9

*Seven-Up Co. v. Coca-Cola Co.,*
    86 F.3d 1379 (5th Cir. 1996)...................................................................17

*United We Stand America, Inc. v.*
    *United We Stand, America New York, Inc.,*
    128 F.3d 86 (2d Cir. 1997)..................................................15, 16, 17

*Virginia State Bd. of Pharmacy v.*
    *Virginia Citizens Consumer Council, Inc.,*
    425 U.S. 748 (1976) .............................................................................5

*Waits v. Frito-Lay, Inc.,*
    978 F.2d 1093 (9th Cir. 1992)................................................13, 14, 17

*Wendt v. Host Int'l, Inc.,*
    125 F.3d 806 (9th Cir. 1997)...............................................................19

*Wojnarowicz v. American Family Ass'n,*
    745 F. Supp. 130 (S.D.N.Y. 1990)......................................................17

*Zomba Enterprises v. Panorama Records,*
    491 F.3d 574 (6th Cir. 2007)..........................................................10, 11

## STATUTES

15 U.S.C. § 1114.........................................................................................15, 16

15 U.S.C. § 1125.........................................................................................13, 16

17 U.S.C. § 107..................................................................................................4

## RULES

Federal Rule of Civil Procedure 12(b)(6)..................................3, 4, 17, 19

Kɪɴꜱᴇʟʟᴀ Wᴇɪᴛᴢᴍᴀɴ Iꜱᴇʀ Kᴜᴍᴘ & Aʟᴅɪꜱᴇʀᴛ ʟʟᴘ
808 Wɪʟꜱʜɪʀᴇ Bᴏᴜʟᴇᴠᴀʀᴅ, 3ʀᴅ Fʟᴏᴏʀ
Sᴀɴᴛᴀ Mᴏɴɪᴄᴀ, Cᴀʟɪꜰᴏʀɴɪᴀ 90401
Tᴇʟ. 310.566.9800 • Fᴀx 310.566.9850

# I.    INTRODUCTION

This case is about Defendants' unlicensed and willful copying of Plaintiff Jackson Browne's copyrighted musical composition, *Running on Empty*, in a political campaign commercial (the "Commercial").  As Defendants candidly admit, they did not seek permission from anyone when they used the song.  Rather, they simply downloaded it from iTunes and then turned around and used it in the Commercial (in blatant violation of the license from iTunes).  Rather than answer the Complaint and apologize for their unlicensed use, Defendants flood the Court with paper and essentially argue that because they are politicians and political parties, they have an unfettered right to use musical compositions in political campaign commercials, and to associate themselves with any person they want to, with or without consent.  The law does not support these extreme arguments.

Defendants first argue that their willful copyright infringement is protected by the First Amendment and the fair use doctrine.  However, "[t]he fair use doctrine is not a license for . . . theft, empowering a court to ignore a copyright whenever it determines the underlying work contains material of possible public importance." *Harper & Row v. Nation Enterp.*, 471 U.S. 539, 558 (1985).  Just as Defendants have a right to speak freely, Plaintiff  has a concomitant right not to speak against his will and have his property conscripted as part of a political message, which his speech and property have nothing to do with.  "Freedom of thought and expression 'includes both the right to speak freely and the right to refrain from speaking at all.'" *Id.* at 559. Defendants' vague and constant platitudes attempting to invoke First Amendment doctrine regarding "political speech" and "matters of public concern" are largely irrelevant to the analysis here.  The Supreme Court has consistently held that in copyright cases, federal courts should <u>not</u> look to First Amendment doctrines created in the very different context of challenges to the constitutionality of state and federal legislation. *Id.*; *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003).  Rather, the doctrines that vindicate First Amendment rights in copyright cases are organic to

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  copyright law itself: the idea/expression dichotomy and the traditional fair use

2  doctrine. *Id.* Copyright protects both Plaintiff's and Defendants' speech rights by

3  "confin[ing] fair use protection to works whose very subject is the original

4  composition and so necessitates some borrowing from it." *Campbell v. Acuff-Rose*

5  *Music, Inc*., 510 U.S. 569, 597 (1994) (Kennedy, J., concurring). Here, because

6  Defendants did not criticize or comment on *Running on Empty*, their use is not fair.

7         Defendants next argue that Plaintiff cannot complain of the false association

8  created by Defendants because "the Lanham Act . . . does not apply to political

9  speech." Motion at 15:23-24 (citations to "Motion" are to Senator McCain's Motion

10  to Dismiss (Docket No. 20)). This argument borders on frivolous. Defendants

11  themselves have obtained numerous registered federal trademarks – creations of the

12  Lanham Act – specifically for use as source identifiers in, for example, "television

13  programming . . . in the field of politics." *See, e.g.* Steinsapir Decl., Exs. A, B.

14  Apparently, Defendants believe that they have the right to invoke the protections of

15  the Lanham Act against others in "television programming in the field of politics,"

16  but no one else can invoke the Act against them in the same field. Likewise,

17  Defendants' attempt to make out a First Amendment "artistic relevance" test at this

18  stage of the litigation fails (and will fail on the merits as well).

19         Plaintiff respectfully requests that Defendants' motions be denied.

20  **II.     STATEMENT OF FACTS**

21         Plaintiff is a world renowned singer and songwriter. Defendants are Senator

22  John McCain of Arizona, the Republican National Committee (the "RNC"), and the

23  Ohio Republican Party ("ORP"). (Complaint (Docket No. 1) at ¶¶ 1-2.)

24         In order to promote Senator McCain's candidacy for President, the ORP,

25  acting for the benefit of McCain and the RNC (*id.* at ¶ 16), created the Commercial

26  to promote Senator McCain's candidacy and criticize President-elect Obama's

27  energy policy. (*Id.* at ¶ 2.) Defendants placed the Commercial on the video-site,

28  YouTube. The Commercial also aired on MSNBC and was featured prominently on

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

the website, *The Huffington Post*. (*Id.* at ¶ 16.) During the Commercial, a sound recording of Plaintiff performing one of his most famous musical compositions, *Running On Empty*, plays in the background. Defendants did not seek or obtain permission to use the song. (*Id.* at ¶ 2.) Rather, as Defendants proudly admit, they simply downloaded the song from iTunes, copied it into their Commercial (in willful violation of the license obtained from iTunes), and gave no thought whatsoever about their blatant infringement. *See* McClelland Decl. at ¶ 10.

     *Running On Empty* was released in 1977 on an album of the same name. That album became Plaintiff's best selling album ever, selling over seven-million copies. The musical composition, *Running on Empty*, is famously associated with Plaintiff, and Plaintiff owns a federally-registered copyright in it. (Complaint at ¶¶ 13-14.)

## III.   STANDARDS GOVERNING RULE 12(b)(6) MOTIONS

     "A court may dismiss a complaint [pursuant to Federal Rule of Civil Procedure 12(b)(6)] only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Big Bear Lodging Ass'n v. Snow Summit, Inc.*, 182 F.3d 1096, 1101 (9th Cir. 1999). There is "a powerful presumption against rejecting pleadings for failure to state a claim." *Gilligan v. Jamco Develop.*, 108 F.3d 246, 249 (9th Cir. 1997). "In reviewing the sufficiency of a complaint, '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Id.*

## IV.   ARGUMENT

### A.   Defendants' Exact Copying Was <u>Not</u> a Fair Use; And at the Very Least, the Court Could Not So Find on the Pleadings Alone.

     Defendants made an <u>exact copy</u> of Plaintiff's copyrighted musical composition in the Commercial. Plaintiff has therefore stated a *prima facie* case for copyright infringement. Thus, Defendants must argue that they should be relieved from answering Browne's complaint because their copying is fair as a matter of law, and no evidence could possibly show otherwise. Defendants are mistaken.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   "Fair use is a mixed question of law and fact."  *Harper & Row*, 471 U.S. at

2   560.  It is an affirmative defense upon which Defendants have the evidentiary

3   burden.  *Perfect 10 v. Amazon.com*, 508 F.3d 1146, 1158 (9th Cir. 2007).  As this is a

4   Rule 12(b)(6) motion, Defendants must also meet their heavy procedural burden of

5   showing that no evidence could possibly be presented showing that their copying is

6   not a fair use.  *See Gilligan*, 108 F.3d at 249; *Four Navy Seals v. Associated Press*,

7   413 F. Supp. 2d 1136, 1148 (S.D. Cal. 2005) (fair use "is inappropriate for

8   determination in a 12(b)(6) motion, since fair use is an affirmative defense to an

9   infringement claim.").  Defendants cannot meet these burdens.

10      Section 107 of the Copyright Act of 1976 codifies the common law fair use

11  defense to copyright infringement, and instructs courts to look to four factors: (1) the

12  purpose and character of the use, including whether such use is of a commercial

13  nature or is for nonprofit educational purposes; (2) the nature of the copyrighted

14  work; (3) the amount and substantiality of the portion used in relation to the

15  copyrighted work as a whole; and (4) the effect of the use upon the potential market

16  for or value of the copyrighted work.  17 U.S.C. § 107.  The four statutory factors are

17  non-exclusive, and are not to "be treated in isolation, one from another.  All are to be

18  explored, and the results weighed together, in light of the purposes of copyright."

19  *Campbell*, 510 U.S. at 578.[2]

20          **1.      The Purpose and Character of the Use.**

21      Although their arguments are not entirely clear, Defendants appear to contend

22  that their exact copying of *Running on Empty* is a fair use for three reasons relating to

23  "the purpose and character of the use."  <u>First</u>, Defendants argue that their copying

24  relates to "political speech" on a "matter of public concern" and such copying weighs

25  _____

26  [2] Although McCain and the RNC apparently deny direct involvement in the copying,
    they do not (and cannot) challenge the sufficiency of the Complaint's allegations

27  against them in this respect.  Furthermore, the two parties can be held secondarily
    liable for infringement.  *MGM v. Grokster*, 545 U.S. 913, 930 (2005).

28

in favor of fair use.  <u>Second</u>, Defendants appear to argue that their copying was fair use "commentary" or "parody."  <u>Third</u>, Defendants argue that their copying of *Running on Empty* was a "transformative use."  These contentions have <u>no</u> merit.

### (a) Defendants' "Political Speech"/"Matters of Public Concern" Analysis is Inapposite.

Neither Congress nor the Supreme Court has <u>ever</u> held that the fact that a copyrighted work was copied as part of "political speech" or a "matter of public concern" somehow makes a particular infringement a fair use.  Rather, the Supreme Court has specifically held to the contrary.  In *Harper & Row*, 471 U.S. 539, the Court held that *The Nation*'s copying of certain snippets of President Ford's memoirs regarding the events surrounding President Ford's succession to the Presidency was <u>not</u> a fair use.  Undoubtedly, the copying related to "a matter of public concern." Nonetheless, the Court found "no warrant" to conduct a separate First Amendment analysis "[i]n view of the First Amendment protections already embodied in the Copyright Act's distinction between copyrightable expression and uncopyrightable facts and ideas, and the latitude for scholarship and comment traditionally afforded by fair use."  *Id.* at 560.  If anything, the fact that the copying was on a matter of public concern weighed <u>against</u> fair use.  "It is fundamentally at odds with the scheme of copyright to accord lesser rights in those works that are of greatest importance to the public."  *Id.* at 559.

Similarly, Defendants' attempt to characterize their work as "noncommercial" by distinguishing between "political speech" and "commercial speech" is utterly misplaced.  The distinction between "political speech" and "commercial speech" was developed by the Supreme Court in the past few decades as a way to determine which type of scrutiny (*i.e.*, strict scrutiny or intermediate scrutiny) courts are to apply to adjudicate the validity of legislation against a First Amendment challenge. *See generally, e.g., Virginia State Bd. of Pharmacy v. Virginia Citizens Consumer Council, Inc.*, 425 U.S. 748, 758-60 (1976).  However, neither Congress nor the

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  Court have <u>ever</u> held that courts should categorize copyright infringements as either

2  "political speech" or "commercial speech," and that such categorization has <u>any</u>

3  bearing on the scope of a private right of action under the Copyright Act. Rather, as

4  the Court recently explained, "[t]he Copyright Clause and First Amendment were

5  adopted close in time. This proximity indicates that, in the Framers' view,

6  copyright's limited monopolies are compatible with free speech principles.  Indeed,

7  copyright's purpose is to promote the creation and publication of free expression."

8  *Eldred*, 537 U.S. at 219.  Thus, in *Eldred*, the Court <u>refused outright</u> to apply an

9  "intermediate scrutiny" analysis (or any other First Amendment scrutiny) to the

10  validity of Congress's extension of existing copyright terms.  *Id.*  Rather, according

11  to the Court, copyright doctrine already includes "built-in" First Amendment

12  protections, including the idea/expression dichotomy and fair use.  *Id.* at 219-20.[3]

13  Despite repeatedly trumpeting the broad reach of their own free speech rights,

14  Defendants fail to acknowledge that Plaintiff too has his own free speech rights.  As

15  the Supreme Court explained in the context of rejecting a First Amendment defense

16  to the copying of portions of President Ford's memoirs, "[f]reedom of thought and

17  expression 'includes both the right to speak freely and the right to refrain from

18  speaking at all.'"  *Harper & Row*, 471 U.S. at 559.  Just as Defendants have the right

19  to broadly express their political views, Plaintiff has a right not to be forced to speak

20  against his will and have his property conscripted as part of a political message

21  which his speech and property have nothing to do with.  Copyright law neatly

22  resolves the seeming tension between Browne's rights and Defendants' rights

---

23
24  [3] Defendants' entire argument as to why their use is not "commercial" rests on their
   inapposite argument that the Commercial is not "commercial speech" and not "for
25  profit."  But the Ninth Circuit has held that "in weighing whether the purpose was for
   profit, monetary gain is not the sole criterion particularly in a setting where profit is
26  ill-measured in dollars."  *Worldwide Church of God v. Philadelphia Church of God*,
   227 F.3d 1110, 1117 (9th Cir. 2000) (internal punctuation altered).  Thus, in a case of
27  copyright infringement used to attract church members, the Court held that such
   infringement was for "profit" because it "attract[ed] . . . new members" and
28  "enabl[ed] the ministry's growth."  *Id.* at 1118.

through one key aspect of the fair use doctrine which Defendants curiously ignore: the doctrine's limitation on fair use parody, criticism and comment to targeting of the infringed work, *i.e.,* fair use permits broad comment regarding <u>the author's own speech</u>. "This prerequisite confines fair use protection to works whose very subject is the original composition and so necessitates some borrowing from it." *Campbell*, 510 U.S. at 597 (Kennedy, J., concurring). Fair use does not, however, protect the misappropriation of an author's work to criticize or comment on a subject the author and his work have nothing to do with. Here, because Defendants did not criticize or comment on *Running on Empty*, their use is not fair.

### (b) Defendants' Exact Copying is Not a Fair Use Because it Does Not Target the Original.

The starting point for any analysis of whether the unauthorized use of a musical composition is a fair use is the Supreme Court's decision in *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 469. There, the Supreme Court explained the scope of fair use comment and parody:

> For the purposes of copyright law, the nub of the definitions, and the heart of any parodist's claim to quote from existing material, is the use of some elements of a prior author's composition to create a new one that, at least in part, <u>comments on that author's works</u>. If, on the contrary, the commentary has no critical bearing on the substance or style of the original composition, which the alleged infringer merely uses to get attention or to avoid the drudgery in working up something fresh, the claim to fairness in borrowing from another's work diminishes accordingly (if it does not vanish) . . .

*Id.* at 580. Justice Kennedy further detailed the Court's definition of parody:

> The parody <u>must target the original</u>, and not just its general style, the genre of art to which it belongs, or society as a whole (although if it targets the original, it may target those features as well). <u>This prerequisite confines fair use protection to works whose very subject is the original composition</u> and so necessitates some borrowing.

*Id.* at 597 (Kennedy, J., concurring) (emphasis added).

Thereafter, the Ninth Circuit applied the *Campbell* test in *Dr. Seuss Enterp., L.P. v. Penguin Books USA*, 109 F.3d 1394 (9th Cir. 1997). In *Dr. Seuss*, infringers copied protected expression from Dr. Seuss's famous *Cat in the Hat* series to create

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

their own book, *The Cat NOT in the Hat!* about the O.J. Simpson murder trial. "Wickedly clever author 'Dr. Juice' gives the O.J. Simpson trial a very fresh new look. From Brentwood to the Los Angeles County Courthouse to Marcia Clark and the Dream Team." *Id.* at 1397. There was no question, of course, that commentary on the O.J. Simpson case was a "matter of public concern." Nevertheless, the paramount issue on appeal was whether *The Cat NOT in the Hat!* was a fair use parody or a simple, and unprotected, "satire." The Ninth Circuit affirmed the district court's finding that the work was <u>not</u> parody and <u>not</u> fair use:

> These stanzas and the illustrations simply retell the Simpson tale. Although *The Cat NOT in the Hat!* does broadly mimic Dr. Seuss' characteristic style, it does not hold <u>his style</u> up to ridicule. The stanzas have "no critical bearing on the substance or style of" *The Cat in the Hat*. Katz and Wrinn merely use the Cat's stove-pipe hat, the narrator ("Dr. Juice"), and the title (*The Cat NOT in the Hat!*) "to get attention" or maybe even "to avoid the drudgery in working up something fresh." [*Campbell*], 510 U.S. at 580. While Simpson is depicted 13 times in the Cat's distinctively scrunched and somewhat shabby red and white stove-pipe hat, the substance and content of *The Cat in the Hat* is not conjured up by the focus on the Brown-Goldman murders or the O.J. Simpson trial.

*Id.* at 1401 (emphasis original).

Here, there can be no question that Defendants' unauthorized and exact copying of *Running on Empty* did <u>not</u> "target" *Running on Empty* or Plaintiff's style in any way whatsoever. Defendants concede this. In sworn declarations filed in support of this Motion, <u>Defendants admit that they were not familiar with Plaintiff or his music</u> when they used his work without authorization. *See* McClelland Decl. at ¶ 10; Mauk Decl. at ¶ 27. Thus, they obviously could not have been targeting him or his song when they copied *Running on Empty*. Defendants concede that they used *Running on Empty* "to avoid the drudgery in working up something fresh." *Dr. Seuss*, 109 F.3d at 1401 (quoting *Campbell*, 510 U.S. at 580). As Defendants candidly declare, they simply searched iTunes for a song to use in their Commercial, downloaded the song, and copied it with no thought. McClelland Decl. at ¶ 10.

Once the appropriate inquiry is conducted, <u>every single case Defendants cite</u> is

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

not on point because those cases <u>all</u> deal with situations where the allegedly infringing work used the original work for the purpose of <u>targeting and criticizing the original work</u>.[4]

Defendants next argue that their <u>exact</u> copying is somehow a "transformative" use. The argument cannot withstand serious scrutiny. In *Campbell*, the Supreme Court defined a use as transformative if it "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." 510 U.S. at 579. The Court specifically distinguished a transformative

_____

[4] Taking the cases in the order cited at pages 6 through 10 of Senator McCain's motion, *see Savage v. Council On Islamic-American-Relations, Inc.*, 2008 WL 2951281, *6 (N.D. Cal. 2008) ("the purpose and character of defendants' use of the limited excerpts from [plaintiff's] radio show <u>was to criticize publicly</u> the anti-Muslim <u>message of those excerpts</u>."); *Hustler Magazine Inc. v. Moral Majority Inc.*, 796 F.2d 1148, 1153 (9th Cir. 1986) (plaintiff's mock ad implying that defendant Falwell had an incestuous relationship was used by Falwell "<u>to rebut the personal attack upon Falwell</u>"; "an individual in rebutting a copyrighted work containing derogatory information about himself may copy such parts of the work as are necessary to permit understandable comment"); *Keep Thompson Governor Committee v. Citizens for Gallen Committee*, 457 F. Supp. 957, 961 (D.N.H. 1978) (defendant candidate-for-governor copied portion of song owned by plaintiff opposing-candidate-for-governor; song was "used by the plaintiff in its political advertisement . . . <u>the recording which defendant has partially copied is itself in part a political campaign message</u>" of the plaintiff/copyright owner); *Phoenix Hill Enterprises, Inc. v. Dickerson*, 1999 WL 33603127, *1 (W.D. Ky. 1999) (copying of personal ads with "the terms 'boy toy,' 'boy nudist,' and 'baby dyke' circled" from plaintiff's gay-themed newspaper was fair use where ads were used to "accus[e] 'homosexuals [of] advertising for sex with children'); *Baraban v. Time Warner, Inc.*, 2000 WL 358375, *3 (S.D.N.Y. 2000) (reprinting of ad for the U.S. Council for Energy Awareness ("USCEA") was fair use where reprinting was made "<u>to criticize efforts by the power industry</u> to promote a sunny view of nuclear energy in the public forum, <u>and the USCEA ad including Mr. Baraban's photograph provided a perfect illustration of those efforts</u>"); *Lennon v. Premise Media*, 556 F. Supp. 2d 310, 322-23 (S.D.N.Y. 2008) (in defendants' film advocating the teaching of Intelligent Design and arguing that popular culture is anti-religion, it was a fair to copy a snippet of John Lennon's *Imagine* where Lennon sings about his ideal world where there is "nothing to kill or die for / And no religion too"; snippet "appears immediately after several scenes of speakers <u>criticizing the role of religion in public life</u> . . . <u>connect[ing] these sentiments to the song by stating that they are merely 'a page out of John Lennon's songbook</u>."); *Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 967-68 (C.D. Cal. 2007) (cartoon parody of Carol Burnett and her character "Charwoman" was fair use because it clearly targeted and made fun of Burnett and her character); *MasterCard Intern. v. Nader 2000*, 70 U.S.P.Q.2d 1046, 1058 (S.D.N.Y. 2004) (Nader ad was parody of MasterCard ad because it targeted "materialistic message [of ad's] warm, sugar-coated imagery that purports to elevate intangible values over the monetary values it in fact hawks.").

11166.00015/42650

9

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

use from a "straight reproduction." *Id.* at 579 n.11. "Unlike a parody, a facsimile recording of a copyrighted [musical] composition adds nothing new to the original and accordingly <u>has virtually no transformative value</u>." *Zomba Enterprises v. Panorama Records*, 491 F.3d 574, 582 (6th Cir. 2007) (citation omitted). Thus, courts have consistently rejected arguments that an exact reproduction of a copyrighted work is "transformative" <u>unless</u> it comments on or targets the original.

Undeterred by this clear law, Defendants' assert that their copying "transforms the Song from a mood evoking soft rock composition about the lifestyle of a musician into a biting commentary on aspects of a Presidential candidate's proposed energy plan." Motion at 10:27-11:2. This argument is contrary to law, and if accepted would essentially transform <u>any</u> use into a "transformative" one. For example, the same "analysis" would have fit perfectly to the facts of *Dr. Seuss*. There, "Dr. Juice" transformed *The Cat in the Hat* "from a mood evoking [children's book] about" an adventurous and mischievous Cat "into a biting commentary on aspects of a" heavily publicized and politically-charged murder trial. But of course, the Ninth Circuit specifically rejected that *The Cat NOT in the Hat!* was a "transformative" use of *The Cat in the Hat*. *Dr. Seuss,* 109 F.3d at 1401. Rather, as Defendants' cases recognize, in order for an exact copy to be "transformative," <u>it must at least comment on or concern the original</u>. *Lennon*, 556 F. Supp. 2d at 323 (use of Lennon's composition was transformative because it "criticize[d] what the filmmakers see as the naïveté of John Lennon's views" of religion); *Bill Graham Archives v. Dorling Kindersley*, 448 F.3d 605, 609-10 (2d Cir. 2006) (use of images of concert posters in book about The Grateful Dead is transformative, where they were used "as historical artifacts graphically representing the fact of significant Grateful Dead concert events").

Because Defendants' exact copying of Plaintiff's work "has no critical bearing on the substance or style of [*Running on Empty*], which [Defendants] merely use[d] to get attention or to avoid the drudgery in working up something fresh, [Defendants'] claim to fairness in borrowing from [Plaintiff] diminishes accordingly

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  (if it does not vanish)." *Campbell*, 510 U.S. at 580.

2  ## 2.  The Nature of the Copyrighted Work.

3  The second of the fair use factors, the nature of the copyrighted work, "calls

4  for recognition that some works are closer to the core of intended copyright

5  protection than others" and are entitled to stronger protection. *Campbell*, 510 U.S. at

6  586. "Like the musical composition in *Campbell* (Roy Orbison's 'Oh, Pretty

7  Woman'), the composition[ ] of [a] pop song[ ] here at issue 'fall[s] within the core

8  of the copyright's protective purposes. Accordingly, this factor militates against a

9  finding of fair use." *Zomba*, 491 F.3d at 583. Furthermore, Defendants are not

10 correct when they assert that their use was not  a "first use." Of course, *Running on*

11 *Empty* was first published long ago for certain uses. <u>However</u>, Defendants' use was

12 the first publication of *Running on Empty* in a commercial. Thus, Defendants

13 deprived Plaintiff of his right to control the first publication of *Running on Empty* in

14 an entire medium. *Harper & Row*, 471 U.S. at 564 ("The right of first publication

15 encompasses not only the choice whether to publish at all, <u>but also the choices of</u>

16 <u>when, where, and in what form first to publish a work</u>.").

17 ## 3.  The Amount and Substantiality of the Portion Used.

18 Defendants attempt to play down this factor by repeatedly noting that they

19 only used 30 seconds of *Running on Empty*. Defendants also appear to attach

20 relevance to the fact that they only used 9 seconds of the song's lyrics. The latter

21 point, of course, is simply irrelevant – the entire musical composition (including the

22 melody and the lyrics) is entitled to the full protection of the copyright laws. What

23 defendants gloss over is that the appropriate inquiry here is "whether 'the heart' of

24 the copyrighted work is taken – in other words, whether the portion taken is the

25 'most likely to be newsworthy and important in licensing serialization.'" *Elvis*

26 *Presley Enterp. v. Passport Video,* 349 F.3d 622, 625, 630 (9th Cir. 2003) (no fair

27 use: third factor weighed in plaintiff's favor where defendants song clips "rang[ing]

28 from only a few seconds in length to portions running as long as 30 seconds"); *Los*

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

*Angeles News Service v. KCAL-TV*, 108 F.3d 1119, 1122 (9th Cir. 1997) (no fair use: "While a small amount of the entire Videotape was used, it was all that mattered."). The portion of the song that Defendants copied, the famous chorus of *Running on Empty*, was the most important, valuable and recognized section of the song. The chorus is clearly the "heart" of the song (and the evidence will so show in discovery) – it is the most "important [part of the song] in licensing serialization."

### 4. The Effect of the Use Upon the Potential Market for or Value of the Copyrighted Work.

The fourth factor, "the effect of the use upon the potential market for or value of the copyrighted work" favors Plaintiff <u>as a matter of law</u>. Specifically, as the Ninth Circuit explained in *Dr. Seuss*, "[s]ince fair use is an affirmative defense, [Defendants] <u>must</u> bring forward favorable evidence about relevant markets." *Dr. Seuss*, 109 F.3d at 1403 (emphasis added). Defendants have offered nothing other than their own unsupported speculation that their unlicensed copying of *Running on Empty* has helped the market for the song (which is utterly inaccurate and supported by nothing). Thus, as the Ninth Circuit has clearly held, "it is impossible to deal with the fourth factor except by recognizing that<u> a silent record on an important factor bearing on fair use disentitle[s] the proponent of the defense</u>." *Id.* at 1403 (quoting *Campbell*, 510 U.S. at 594). Plaintiff will present strong and compelling evidence during discovery that the value for the use of his most-famous musical compositions in advertising is, <u>at least</u>, in the high six-figures.

### 5. Conclusion re the Fair Use Factors.

The fair use factors all support Plaintiff. At the very least, however, the record is not sufficiently developed to dispose of the issue at this embryonic stage of the litigation. At bottom, the fair use doctrine is an "equitable rule of reason" not amenable to a "rigid, bright-line approach." *Harper & Row*, 471 U.S. at 588. What Defendants claim, however, is that the fair use doctrine grants politicians and political advocacy groups <u>blanket immunity from suit</u> for infringement where the

copyrighted work is used in a political campaign commercial. To be sure, Defendants couch their analysis in familiar buzzwords of the fair use factors and First Amendment doctrine. But it is impossible to conceive of a use of a musical composition in a political advertisement not being a "fair use" under Defendants' thin and superficial analysis. Thus, under Defendants' view of the law, political advocacy groups have *carte blanche* to use copyrighted songs in campaign commercials, and the federal courts are obliged to <u>immediately dismiss</u> any actions complaining of such unauthorized uses without giving the copyright holder an opportunity to conduct discovery or, frankly, to be heard at all. This is not the law. And Defendants simply ignore the most apposite doctrines – such as the parody/ satire distinction – in favor of meaningless platitudes. The Court should not endorse Defendants' unprecedented and distorted view of the law.

**B.** **The Complaint States a Viable Claim for Relief Under Section 43(a)(1)(A) of the Lanham Act.**

Browne' third claim for relief is for false association under section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), which prohibits the use,

> in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A).

In the Ninth Circuit, like all other federal courts, a "false endorsement claim based on the unauthorized use of a celebrity's identity is a type of false association claim [under § 43(a)(1)(A)], for it alleges the misuse of a trademark, *i.e.*, a symbol or device such as a visual likeness, vocal imitation, or other uniquely distinguishing characteristic, which is likely to confuse consumers as to the plaintiff's sponsorship or approval." *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992). The Ninth Circuit has further distinguished such false association claims under §

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL. 310.566.9800 • FAX 310.566.9850

43(a)(1)(A) from false adverting claims under § 43(a)(1)(B).  Contrary to Defendants' erroneous and misleading contention in their briefs that Plaintiff must prove "commercial competition" (Motion at 16:16), the Ninth Circuit unequivocally holds that a false endorsement claim does "<u>not</u> require 'actual competition' in the traditional sense; it extends to a purported endorser who has an economic interest akin to that of a trademark holder in controlling the commercial exploitation of his or her identity." *Id.*  In so holding, the *Waits* court specifically distinguished false advertising cases (cited by Defendants) that <u>do</u> require actual competition.  *Id.*

Plaintiff's claim here is <u>not a false advertising claim</u> under section 43(a)(1)(B) and Plaintiff's claim is <u>not a trademark dilution claim</u> under section 43(c).

### 1. The Lanham Act Applies To The Conduct At Issue.

Defendants' broad contention that "the Lanham Act . . . does not apply to political speech" (Motion at 15:23-24) borders on frivolous.  Indeed, Defendants themselves have prosecuted and obtained numerous registered federal trademarks – creations of the Lanham Act – specifically for use as source identifiers "<u>in the field of politics</u>."  *See, e.g.* Steinsapir Decl., Exs. A-D.  For example, Senator McCain obtained marks for use in the areas of "political campaign services, namely fundraising in the field of politics" (*id.*, Ex. C), and for use "in the field of national policy and matters of interest to the national electorate."  *Id.*, Ex. D.  Likewise, the RNC has sought over a hundred federal marks (*id.* at ¶ 2), including marks for use in "television programming . . . in the field of politics," (*id.*, Exs. A-B), and for "political booklets and posters." *Id.*, Ex. A.  Apparently, Defendants believe that they have the right to invoke the protections of the Lanham Act against others in "television programming in the field of politics," but no one else can invoke the Act against them in the same field.  Basic notions of fairness and estoppel compel the conclusion that Defendants should not be permitted to continually obtain the protections of the Lanham Act before the Patent & Trademark Office and then turn around and argue in federal court that the Lanham Act does not apply to them.

1    Regardless, the authority from the federal courts is crystal clear that the

2    provisions of the Lanham Act at issue here apply to "political speech." For example,

3    in *MGM-Pathe Commns. Co. v. Pink Panther Patrol*, 774 F. Supp. 869, 877

4    (S.D.N.Y. 1991) (Leval, J.), a gay rights group used the "Pink Panther" mark,

5    without authorization, in connection with political advocacy. *Id.* at 871. In

6    attempting to defend its infringement, the gay rights group argued "that because [it]

7    is engaged in political speech, it is less subject to the trademark laws." *Id.* at 877.

8    The district court rejected the argument out-of-hand: "There is no legal support for

9    this position. The seriousness and virtue of a cause do not confer any right to the use

10   of the trademark of another." *Id.* (emphasis added). The Court then enjoined the

11   further unauthorized use of the Pink Panther mark. *Id.*

12       The Second Circuit also addressed the issue in-depth in *United We Stand*

13   *America, Inc. v. United We Stand, America New York, Inc.*, 128 F.3d 86 (2d Cir.

14   1997). The case dealt with the phrase, "United We Stand America," which was first

15   used in commerce in connection with Ross Perot's 1992 campaign for President. *Id.*

16   at 88. After unauthorized use of the mark by defendant, plaintiff sued. Defendant

17   argued, however, that the Lanham Act did not apply to "political activities." *Id.* at

18   89. The Court first looked to the language of the statute – which Defendants here

19   simply ignore – prohibiting the unauthorized use of a mark "in commerce . . . in

20   connection with the sale, offering for sale, distribution, or advertising of any goods or

21   services [if] ... such use is likely to cause confusion." *Id.* (quoting 15 U.S.C. §

22   1114(1)(a)) (emphasis original). The Court then held that political activities are a

23   "service" within the meaning of the plain meaning of the statute:

24       If different organizations were permitted to employ the same trade name
         in endorsing candidates, voters would be unable to derive any
25       significance from an endorsement, as they would not know whether the
         endorsement came from the organization whose objectives they shared
26       or from another organization using the same name. Any group trading in
         political ideas would be free to distribute publicity statements,
27       endorsements, and position papers in the name of the "Republican
         Party," the "Democratic Party," or any other. The resulting confusion
28       would be catastrophic; voters would have no way of understanding the

significance of an endorsement or position taken by parties of recognized major names. <u>The suggestion that the performance of such functions is not within the scope of "services in commerce" seem to us to be not only wrong but extraordinarily impractical for the functioning of our political system</u>.

*Id.* at 91 (emphasis added).[5]

The Court went on to explain that the Lanham Act's use of the phrase "in commerce" did not exempt political activities from the statute. "The history and text of the Lanham Act show that 'use in commerce' reflects Congress's intent to legislate to the limits of its authority under the Commerce Clause, rather than to limit the Lanham Act to profit-seeking uses of a trademark." *Id.* at 92.

The cases and the specific language cherry-picked from those cases on which Defendants rely all deal with sections of the Lanham Act <u>that are not at issue in this case</u>. For example, Defendants rely upon and quote heavily from the Ninth Circuit's decision in *Rice v. Fox Broadcasting Co.*, 330 F.3d 1170, 1181 (9th Cir. 2003), to argue that the Infringing Advertisement does not "constitute <u>commercial advertising or promotion</u> under the Lanham Act." Motion at 16:7-18 (emphasis added). However, a cursory read of *Rice* reveals that it was addressing "a claim for <u>false advertising</u> under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B)," not a claim for false endorsement. *Rice*, 330 F.3d at 1181. And indeed, that subsection <u>specifically requires</u> "commercial advertising or promotion." 15 U.S.C. § 1125(a)(1)(B). False endorsement claims, however, arise under 15 U.S.C. § 1125(a)(1)(A) (§ 43(a)(1)(A)), and specifically do <u>not</u> contain any language referring to "commercial advertising or promotion." *See* 15 U.S.C. § 1125(a)(1)(A); *Planned Parenthood Federation of America, Inc. v. Bucci*, 1997 WL 133313, *4-7 (S.D.N.Y. 1997) (rejecting argument that political "services" are not subject to §§ 32 and 43(a)(1)(A) of the Lanham Act:

---

[5] While *United We Stand* dealt with a registered mark under § 32 of the Lanham Act, 15 U.S.C. § 1114, this case deals with an unregistered "trademark" under § 43(a), 15 U.S.C. 1125(a). However, the two sections use almost identical language, and the Ninth Circuit holds that courts should employ the same analyses to both sections. *See GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1204 n.3 (9th Cir. 2000).

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

those provisions "contain[ ] no commercial activity requirement" and specifically distinguishing dilution claims and false advertising claims on that basis). The other cases Defendants rely upon are also all false advertising or trademark dilution cases.[6]

For all these reasons, the Court should reject Defendants' argument that Plaintiff's claim is not cognizable under the Lanham Act.

### 2. Plaintiff's Claim Under § 43(a) of the Lanham Act is Not Barred by the Artistic Relevance Test

The artistic relevance test is not applicable here, and the court certainly could not so find on the complaint alone. <u>Defendants do not any case where a court was able to apply the artistic relevance test in the context of a Rule 12(b)(6) motion.</u> The two "Barbie" cases are not remotely on point and are easily disposed of. In

---

[6] *See New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1117 (C.D. Cal. 2004) (addressing <u>false advertising</u> claim, and quoting materials from Congressional debates regarding amendment to <u>false advertising</u> portion of Lanham Act); *MasterCard*, 70 U.S.P.Q.2d at 1053 (dealing with <u>trademark dilution</u> claim, and distinguishing *United We Stand*, discussed above, because *United We Stand* dealt with a portion of the Lanham Act that "does not have a commercial activity requirement, nor does it exempt from liability noncommercial use of a mark"); *American Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 696-97 (N.D. Oh. 2002) (political advertising did not create cognizable <u>trademark dilution</u> claim, because it expressly fell in the statutory exemption for "noncommercial use" found in § 43(c), but not present in § 43(a)); *Oxycal Laboratories, Inc. v. Jeffers*, 909 F. Supp. 719, 723 (S.D. Cal. 1995) (addressing whether speech at issue was "commercial advertising and promotion," *i.e.*, whether it met the requirement found for <u>false</u> <u>advertising</u> claims, but <u>not</u> false designation claims under § 43(a)).

The two possible exceptions are the decisions in *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539 (5th Cir. 2001) and *Wojnarowicz v. American Family Ass'n*, 745 F. Supp. 130 (S.D.N.Y. 1990). The Fifth Circuit's decision in *Procter & Gamble* is simply unclear as to which prong of § 43(a) it is analyzing and it <u>never</u> connects its "commercial speech" analysis to any statutory language. As justification for its "commercial speech" analysis, however, it simply cited a prior decision, *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379 (5th Cir. 1996), that expressly analyzed the language regarding "'commercial advertising or promotion' under § 43(a)(1)(B)." *Id.* at 1384 (emphasis added). As noted, false designation, under § 43(a)(1)(A), does not require "commercial advertising or promotion." The Southern District of New York in *Wojnarowicz* held that a false designation of origin claim required that the parties be in competition with each other. *Wojnarowicz*, 745 F. Supp. at 141. However, the Ninth Circuit has clearly and unequivocally rejected the theory that false designation claims require that the parties be competitors. *Waits*, 978 F.2d at 1110. To the extent that the case could be read to mean that the Lanham Act does not apply to political speech, it has now been rejected by the very Circuit in which it sits. *United We Stand*, 128 F.3d at 91.

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002), the Court relied on

2  the fact that the song at issue – *Barbie Girl* – "pokes fun at Barbie and the values that

3  [defendant] contends she represents." *Id.* at 901. The Court stressed that the "song

4  does not rely on the Barbie mark <u>to poke fun at another subject but targets Barbie</u>

5  <u>herself</u>" to specifically distinguish the Court's earlier decision in *Dr. Seuss*

6  (discussed above), where the Ninth Circuit held that the Lanham Act precluded the

7  authors of *The Cat NOT in the Hat!* from use of the Dr. Seuss marks: "The

8  defendant's use of the Dr. Seuss trademarks . . . had 'no critical bearing on the

9  substance or style of' *The Cat in the Hat!*, and therefore could not claim First

10  Amendment protection. *Id.*; *see also Mattel, Inc. v. Walking Mountain Prods.*, 353

11  F.3d 792, 807 (9th Cir. 2003) (finding use of Barbie dolls in photographs were

12  parody and not subject to Lanham Act, because the photographs "depict Barbie <u>and</u>

13  <u>target the doll</u> with Forsythe's parodic message.") (emphasis added). As noted

14  above, it is clear that Defendants did not use *Running on Empty* "to target" the song

15  or Plaintiff. Thus, *Dr. Seuss* controls. *Dr. Seuss*, 109 F.3d at 1406.

16  Likewise, the recent decision in *E.S.S. Entertainment 2000 v. Rock Star*

17  *Videos*, 547 F.3d 1095 (9th Cir. 2008), is also not on point. First, the use of *Running*

18  *on Empty* has <u>no</u> "artistic relevance" to the Commercial. In *E.S.S.*, defendant's

19  video-game included a strip club called *The Pig Pen*, which was loosely based on a

20  real strip club in East Los Angeles called *The Play Pen*. *Id.* at 1097-98. The setting

21  of the game was intended "to develop a cartoon-style parody of East Los Angeles."

22  *Id.* at 1100. Thus, using a setting reminiscent of an actual business in East Los

23  Angeles was "relevant to [plaintiff's] artistic goal." *Id.* Here, the use of Browne's

24  composition was not relevant to the "goal" of the Commercial, *i.e.* to criticize

25  President-elect Obama's energy policy. *Running on Empty* has nothing to do with

26  energy policy. And although Defendants argue that the phrase "running on empty"

27  has been invoked in the energy debate, that is a red-herring. This case is not about

28  the phrase, "running on empty." This case is about the unauthorized use of a musical

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1   composition that is famously associated with Plaintiff.  Moreover, none of these

2   issues can be resolved on the pleadings.  In *E.S.S.*, as in every other artistic relevance

3   case, there was full discovery exploring the "artistic motivations" of the parties.  *See,*

4   *e.g., E.S.S.*, 444 F. Supp. 2d 1012, 1041 (C.D. Cal. 2007) (citing voluminous

5   summary judgment record regarding artistic motivation in creation of *Pig Pen*).

6       Second, as *E.S.S.* makes clear, the use of a mark must not only be "relevant to

7   plaintiff's artistic goal," but Defendants must also show that the Commercial does

8   not "explicitly mislead[ ] as to the source or the content of the work."  *E.S.S.*, 547

9   F.3d at 1099.  Here, Defendants used an <u>exact copy</u> of Plaintiff's sound recording.  In

10  *E.S.S.* "[t]he relevant question . . . [was] whether the Game would confuse its players

11  into thinking that the *Play Pen* is somehow behind the *Pig Pen*."  *Id.* at 1100.  Here,

12  "the relevant question" is whether viewers of the Commercial would be confused

13  "into thinking that [Plaintiff] is behind [*Running on Empty*]."  Of course viewers of

14  the Commercial would be misled into thinking that the source of Defendants' use

15  was Plaintiff for the obvious reason that the source of the composition <u>was</u> Plaintiff.

16  And again, this analysis simply cannot be done on a Rule 12(b)(6) motion.  In *E.S.S.*,

17  the court relied on extensive evidence, including expert testimony, before it fully

18  analyzed the issue.  *E.S.S.*, 444 F. Supp. 2d at 1044-48.

19      The Court should reject Defendants' argument that the artistic relevance test

20  precludes Plaintiff's claims or make clear that the issue cannot be resolved now.

21      **3.**    **Browne Can Show a Likelihood of Confusion.**

22      Finally, Defendants argue in cursory fashion that Browne cannot show a

23  likelihood of confusion as a matter of law.  "The Lanham Act's likelihood of

24  confusion standard is predominantly factual."  *Wendt v. Host Int'l, Inc.*, 125 F.3d

25  806, 812 (9th Cir. 1997).  As the Court is aware, to determine whether a likelihood of

26  confusion exists in this Circuit, juries must analyze and weigh at least eight different

27  factors commonly referred to as the *Sleekcraft* factors.  *See AMF, Inc. v. Sleekcraft*

28  *Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979).  In *Downing v. Abercrombie & Fitch*,

KINSELLA WEITZMAN ISER KUMP & ALDISERT LLP
808 WILSHIRE BOULEVARD, 3RD FLOOR
SANTA MONICA, CALIFORNIA 90401
TEL 310.566.9800 • FAX 310.566.9850

1  265 F.3d 994 (9th Cir. 2001), the Ninth Circuit restated the *Sleekcraft* factors for

2  better application in their "celebrity" line of Lanham Act cases. *Id.* at 1007-08.

3        Here, Defendants have not even made a cursory attempt to analyze likelihood

4  of confusion in the context of the eight varied *Sleekcraft/Downing* factors.

5  Apparently, Defendants expect the Court to conduct this analysis *sua sponte* with no

6  guidance. On this basis, and given the high burden on this motion, the Court should

7  reject the conclusory argument that Plaintiff can show no likelihood of confusion.

8        The sole argument that Defendants do make – which is unmoored to the legal

9  standard and is thus essentially irrelevant – misses the mark. Defendants argue that

10  there is no likelihood of confusion because Plaintiff associates himself with liberal

11  causes. This proves nothing with respect to <u>any</u> of the *Sleekcraft/Downing* factors.

12  For those familiar with Plaintiff and his politics, some may conclude that he just

13  "sold out" or that he changed his politics. Plaintiff has a right under the Lanham Act

14  not to have his voice associated with Defendants or anyone else with whom he does

15  not want to be associated. The Court should reject Defendants' argument.[7]

16  **V.  CONCLUSION**

17        For the reasons stated, Plaintiff respectfully requests that the Court deny each

18  of the motions to dismiss. Should the Court sustain any of the motions, Plaintiff

19  requests leave to amend to cure any purported defects in the complaint.

20  DATED: January 7, 2008       KINSELLA WEITZMAN ISER KUMP &
                        ALDISERT LLP

21

22

23         By: /s/ Lawrence Y. Iser

24             Lawrence Y. Iser
           Attorneys for Plaintiff Jackson Browne

25

26

27  [7] Defendants challenge the viability of the Publicity claim by incorporating by
reference the various and concurrently filed anti-SLAPP motions directed solely to

28  that claim. Thus, Plaintiff simply refers to his papers opposing those motions.