| | |
|---|---|
| Lincoln D. Bandlow (SBN 170449)<br>LATHROP & GAGE LLP<br>1880 Century Park East, Suite 1004<br>Los Angeles, California 90067-2627<br>Telephone: (310) 229-9300<br>Fax: (310) 229-9380<br>lbandlow@lathropgage.com<br><br>Attorneys for Defendant<br>JOHN MCCAIN | |

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JACKSON BROWNE, an individual<br><br>Plaintiff,<br><br>vs.<br><br>JOHN MCCAIN, an individual; THE REPUBLICAN NATIONAL COMMITTEE, a non-profit political organization; THE OHIO REPUBLICAN PARTY; a non-profit political organization,<br><br>Defendants. | CASE NO. CV08-05334 RGK (Ex)<br><br>**REPLY IN SUPPORT OF DEFENDANT JOHN MCCAIN'S SPECIAL MOTION TO STRIKE UNDER C.C.P. § 425.16**<br><br>Hearing:<br><br>Date: February 2, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 850 |

---

**REPLY IN SUPPORT OF DEFENDANT JOHN McCAIN'S SPECIAL MOTION TO STRIKE UNDER CCP § 425.16**

TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................ 1

II. BROWNE CONCEDES THAT HIS CLAIM ARISES OUT OF
POLITICAL SPEECH THAT IS A MATTER OF PUBLIC
INTEREST ................................................................................................. 2

III. BROWNE FAILED TO MEET HIS BURDEN TO DEMONSTRATE
A PROBABILILTY THAT HE WILL PREVAIL ON HIS CLAIM ....... 4

    A. Browne Confuses The Elements Of A Right Of Publicity Claim
With The Protections Against Such Claims Under The First
Amendment ................................................................................... 4

    B. *Midler* and *Waits* Are Irrelevant And Unavailing ........................ 5

    C. Nothing In The Opposition Refutes The Fact That Browne's
Claim Is Barred By The "Public Interest" And "Transformative
Use" Tests ..................................................................................... 6

    D. Browne's Concession That McCain Had No Involvement In
The Political Video Defeats Browne's Right Of Publicity Claim .. 10

IV. CONCLUSION ........................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Am. Family Life Ins. Co. v. Hagan*,
   266 F. Supp. 2d 682 (2002), .................................................................................. 4

*Campbell v. Acuff Rose Music, Inc.*,
   510 U.S. 569 (1994) .................................................................................................. 9

*Comedy III Prods., Inc. v. Gary Saderup, Inc.*,
   25 Cal. 4th 387 (2001) .................................................................................... 7, 8, 9

*Cox v. Hatch*,
   761 P. 2d 556 (Utah 1988) ........................................................................................ 8

*Daly v. Viacom, Inc.*,
   238 F. Supp. 2d 1118 (N.D. Cal. 2002) .................................................................. 8

*Dora v. Frontline Video, Inc.*,
   15 Cal. App. 4th 1273 (1993) .................................................................................. 7

*Dyer v. Childress*,
   147 Cal. App. 4th 1273 (2007) ............................................................................ 1, 2

*Gallimore v. State Farm Fire & Cas. Ins. Co.*,
   102 Cal. App. 4th 1388 (2002) ................................................................................ 3

*Gionfriddo v. Major League Baseball*,
   94 Cal. App. 4th 400 (2001) .................................................................................... 5

*Hoffman v. Capital Cities/ABC, Inc.*,
   255 F.3d 1180 (9th Cir. 2001) .................................................................................. 5

*Kirby v. Sega of Am., Inc.*,
   144 Cal. App. 4th 47 (2006) .................................................................................... 8

*Lennon v. Premise Media*,
   556 F. Supp. 2d 310 (S.D.N.Y. 2008) ...................................................................... 7

*Macias v. Hartwell*,
   55 Cal. App. 4th 669 (1997) .................................................................................... 2

*Mastercard Int'l Inc. v. Nader 2000 Primary Comm., Inc.*,
   70 U.S.P.Q.2d 1046 (S.D.N.Y. 2004) .................................................................. 4, 5

*Matson v. Dvorak*,
   40 Cal. App. 4th 539 (1995) .................................................................................... 2

*Midler v. Ford Motor Co.*,
   849 F.2d 460 (9th Cir. 1988) ................................................................................ 5, 6

*Montana v. San Jose Mercury News, Inc.*,
   34 Cal. App. 4th 790 (1995) .................................................................................... 5

**McCAIN'S POINTS AND AUTHORITIES ISO SPECIAL MOTION TO STRIKE UNDER CCP § 425.16**

*Perfect 10 v. Amazon.com*,
 508 F.3d 1146 (9th Cir. 2007) .................................................................................. 9

*Polydoros v. Twentieth Century Fox Film Corp.*,
 67 Cal. App. 4th 318 (1997) ...................................................................................... 5

*Robertson v. Rodriguez,*
 36 Cal. App. 4th 347 (1995) ...................................................................................... 2

*Rosenaur v. Scherer*,
 88 Cal. App. 4th 260 (2001) ...................................................................................... 2

*Waits v. Frito-Lay, Inc.*,
 978 F.2d 1093 (9th Cir. 1992) ............................................................................... 5, 6

*Wall Data Inc. v. L.A.County Sheriff's Dep't.*,
 447 F.3d 769 (9th Cir. 2006) ..................................................................................... 9

*Wilcox v. Sup. Ct.*,
 27 Cal. App. 4th 809 (1994) ...................................................................................... 3

*Winter v. D.C. Comics*,
 30 Cal. 4th 881 (2003) ........................................................................................... 7, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

In his Consolidated Opposition ("Opp."), Browne concedes from the outset that his right of publicity claim stems from the use of his voice "to convey … a message … [d]uring the recent Presidential election" that related to "the energy policy of Senator Barack Obama." Opp. at 1. Thus, it is undisputed that the challenged claim arises from protected activity under the anti-SLAPP Statute (the "Statute"). Browne's tactic of ignoring **all** of the on-point cases, and his sole reliance on the inapposite case *Dyer v. Childress*, 147 Cal. App. 4th 1273 (2007), do not defeat the showing made in the Motion that the first prong for an anti-SLAPP motion is met here. Thus, the burden shifts to Browne to prove there is a probability he will prevail on the merits of his claim. The Motion and the Opposition demonstrate that this burden cannot be met.

As he must, Browne concedes that the political speech that is the subject of his claim "is afforded broad protection under the First Amendment" (Opp. at 16); that publication of matters in the public interest are exempt from right of publicity liability under the First Amendment (Opp. at 10); and that a right of publicity claim based on a "transformative" use is also barred by the First Amendment. Opp. at 16-17. As set forth in the Motion and below, these concessions are fatal to Browne's claim and Browne's fleeting arguments to the contrary do not stave off this conclusion.

Finally, Browne concedes that he named John McCain (the individual) as a defendant without any evidence that McCain had anything to do with the Political Video. In light of the undisputed evidence that McCain had no such involvement (or even any knowledge at all of the Political Video prior to the lawsuit), Browne falsely asserts, based on an agency theory, that McCain should be held personally responsible for any act done by any person who might somehow "promote McCain's candidacy." Opp. at 19. There is no authority for such a sweeping proposition. Accordingly, the Motion should be granted and Browne's right of publicity claim should be stricken.

1

## II. BROWNE CONCEDES THAT HIS CLAIM ARISES OUT OF POLITICAL SPEECH THAT IS A MATTER OF PUBLIC INTEREST

Browne's Opposition is rife with concessions that the speech that forms the basis of Browne's right of publicity claim falls under the first prong of the Statute, *i.e.,* that it is political speech about a matter of public interest and concern. Indeed, it is the precise political nature of the speech that so irks Browne; he sues because the words from the Song were used "[d]uring the recent Presidential election" to "attack[] the energy policy" of Obama and thus "convey a message [Browne] would not have otherwise endorsed." Opp. at 1-2. Browne concedes that his claim stems from use of his identity to convey a "political message" and that "a message about McCain's candidacy or Obama's energy policy relates to an issue of public concern." Opp. at 5. Moreover, Browne concedes that "a commentary on Obama's energy plan ... generally concerned a matter of public interest." Opp. at 5 n.4.

Thus, as set forth in the Motion, Browne's right of publicity claim arises from political speech which, as established by numerous cases cited in the Motion, is protected activity under the Statute. *See Macias v. Hartwell*, 55 Cal. App. 4th 669, 672 (1997) (Statute applies to "statements made during a political campaign"); *Beilenson v. Sup. Ct.*, 44 Cal. App. 4th 944, 950 (1996) (statements made in a political campaign mailer); *Robertson v. Rodriguez,* 36 Cal. App. 4th 347, 352 (1995) (statements made in a campaign mailer in connection with a recall election); *Matson v. Dvorak,* 40 Cal. App. 4th 539, 548 (1995) (statements made in a political flyer); *Rosenaur v. Scherer*, 88 Cal. App. 4th 260, 274-75 (2001) (it is "well settled that section 425.16 applies to actions arising from statements made in political campaigns by politicians and their supporters"). Browne's response to all of these cases was simple: he ignored them.

Rather than address these directly on-point and controlling cases, Browne relies solely in his Opposition on *Dyer v. Childress*. That case is inapposite. *Dyer* involved an action brought by a private figure against the producers of a fictional motion picture

2

about Generation-X slackers. The speech that generated the claim was simply the use of plaintiff's name as the name for one of the characters in the movie. The court agreed that the movie addressed topics of public interest, but the use of plaintiff's name as a character in the movie did not relate in any way to those topics. That holding has no relevance here where it is **conceded** that the specific speech that forms the basis for the claim directly relates to a topic of profound public interest: the qualifications of the man who is now the President of the United States and whether his policies are "running on empty." *See* Complaint ¶ 2 (Browne's voice used to "mock[] the suggestion" by Obama "that the country can conserve gasoline by keeping their automobile tires inflated to the proper pressure"); Opp. at 11 (speech "related to a presidential campaign and therefore to a matter of public interest"); Opp. at 14 ("direct commentary on Obama's energy policy" is "certainly a matter of public interest").[1]

---

[1] Browne's passing citations (Opp. at 4) to *Gallimore v. State Farm Fire & Cas. Ins. Co.*, 102 Cal. App. 4th 1388, 1398 (2002) and *Wilcox v. Sup. Ct.*, 27 Cal. App. 4th 809, 819 (1994) are unavailing and support McCain. *Gallimore* involved an action against an insurance company for mishandling claims. Defendant asserted that the action stemmed from defendant's communications with the Department of Insurance, but the court held that it stemmed from defendant's claim handling policies. The court held that the first prong is met where the claim "arose from some act of the defendant that was taken *in furtherance of* the defendant's constitutional rights of petition or free speech" and "the critical point is whether the plaintiff's cause of action itself was *based on* an act in furtherance of the defendant's right of petition or free speech." *Gallimore*, 102 Cal. App. 4th at 1397-98. Here, Browne's claim does not stem from someone busting his guitar; it stems from use of his words *in furtherance* of a political message and thus Browne's claim is *based on* defendants' use of words in that political message, which is quintessential first prong activity. *Wilcox* is inapposite because it involved petitioning activity, but it should be noted that the court held that an action based on a conspiracy to boycott shorthand reporters fell within the first prong of the Statute. *Wilcox*, 27 Cal. App. 4th at 822. If a claim based on speech about the person chosen to transcribe a deposition is a matter of public concern, a claim based on speech about the person chosen to lead the free world is as well.

3

Because Browne's right of publicity claim is based on the use of his voice to "convey a message that Plaintiff disagrees with" (Opp. at 18) and the use was made in furtherance of defendants' "protected message" (Opp. at 16) about the qualifications of the candidates for President, the claim is subject to the first prong of the Statute. Accordingly, the burden shifts to Browne to demonstrate a probability he will prevail on the claim. As set forth below, Browne's Opposition only confirms that he cannot.

## III. BROWNE FAILED TO MEET HIS BURDEN TO DEMONSTRATE A PROBABILILTY THAT HE WILL PREVAIL ON HIS CLAIM

Browne concedes that: (1) it is "indisputable that political speech is afforded broad protection under the First Amendment and that such protections are meant to foster open debate without fear of reprisal" (Opp. at 16); (2) "where the publication or dissemination of matters is in the public interest, a defense exists under the First Amendment to a right of publicity claim" (Opp. at 10); and (3) a "transformative" use that "adds significant creative elements" to create a new message is protected by the First Amendment. Opp. at 16-17. These concessions mandate dismissal of Browne's claim, notwithstanding Browne's fleeting arguments to the contrary.

### A. Browne Confuses The Elements Of A Right Of Publicity Claim With The Protections Against Such Claims Under The First Amendment

In an effort to cloud the Court's analysis, Browne confuses the elements of his claim with the defenses the First Amendment provides. Browne concedes that the use of Browne's voice in the Political Video was not a "commercial" use. Opp. at 7 (Political Video "did not propose a commercial transaction and did not endorse a product"). That concession, of course, was mandatory under even more cases that Browne ignored in his Opposition. *See Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 697 (N.D. Ohio 2002) (political campaign speech, including the "solicitation of contributions … is properly classified not as a commercial transaction at all, but completely noncommercial, political speech"); *Mastercard Int'l Inc. v.*

4

*Nader 2000 Primary Comm., Inc.*, 70 U.S.P.Q.2d 1046 (S.D.N.Y. 2004) (even if candidate's spot increased contributions, the ad would still not be "commercial").

In response, Browne asserts that defendants are contending that a "commercial" use is a required element for a right of publicity claim and then proceeds to attack this straw man. Opp. at 6-7. Defendants, however, make no such argument.[2] Rather, under basic First Amendment jurisprudence, the showing in the Motion (and the concession in the Opposition) that the speech was not "commercial" dictates that the speech be afforded full protection under the First Amendment, rather than a lesser degree of protection afforded to "commercial" speech. *See Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180, 1184 (9th Cir. 2001). When such fully-protected speech (rather than commercial speech that promotes the sale of goods or services) is at the heart of a right of publicity claim, the claim typically fails, as set forth in the Motion and below, under the "public interest" and "transformative use" tests.

**B.  *Midler* and *Waits* Are Irrelevant And Unavailing**

In yet another attempt to confuse the issues, Browne contends that defendants are asserting that the use of a person's voice cannot give rise to a common law right of publicity claim and then cites *Midler v. Ford Motor Co.*, 849 F.2d 460 (9th Cir. 1988) and *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093 (9th Cir. 1992) to knock down that straw-man. Opp. at 7-8. But Defendants are making no such contention here.

---

[2] There is authority for such an argument. *See Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 322 (1997) (plaintiff alleging a common law claim for right of publicity must "establish a direct connection between the use of [his] name or likeness and a ***commercial*** purpose"). Tellingly, in the two cases cited by Browne regarding the elements of a common law right of publicity claim (Opp. at 7), the courts held that the claims were barred by the First Amendment. *See Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790 (1995) (use of Joe Montana's likeness to promote newspaper protected by the First Amendment); *Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400 (2001) (use of baseball players' names and likenesses in work that related to history of baseball protected by the First Amendment).

5

In *certain circumstances*, of course, the use of a person's voice can give rise to a viable common law right of publicity claim that is not barred by the First Amendment. *This lawsuit, however, does not present such a circumstance*. In contrast to *Midler* and *Waits*, Browne's claim does not stem from speech that hawks Doritos or new cars.[3] Rather, this case stems from the use of particular words from a song because those words directly commented on the qualifications of a candidate for the nation's highest office. Moreover, as to those particular words that are the subject of the claim, Browne concedes that it was he who made "famous" the phrase "running on empty" and that this phrase "has often been used by various pundits" to comment on energy policy. Opp. at 15. Having made the phrase famous and injected it into the common political vernacular, Browne cannot now impose liability on political speakers who use its most well-known iteration in the Song to comment on issues of conceded national import. Accordingly, the First Amendment bars Browne's claim.

### C. Nothing In The Opposition Refutes The Fact That Browne's Claim Is Barred By The "Public Interest" And "Transformative Use" Tests

In light of the conceded fact that the Political Video is not commercial speech, but rather political speech afforded full First Amendment protection, such protection is applied through the "public interest" and "transformative use" tests. Indeed, Browne concedes as much. *See* Opp. at 10 ("a defense exists under the First Amendment to a

---

[3] Thus, *Midler* and *Waits* are not "squarely on all fours" (Opp. at 9) with this case. In *Midler*, Ford used a "sound-alike" to mimic singer Bette Midler in a commercial for Ford automobiles. The Ninth Circuit limited its holding to the purely commercial advertising context at issue in that case. *Midler*, 849 F.2d at 463 (Midler was "deliberately imitated in order to sell a product"). Indeed, the Ninth Circuit specifically noted that often times "[t]he First Amendment protects" the use of a famous person's identity and if "the purpose [of the use] is 'informative or cultural' the use is immune" from liability. *Id*. at 462. Likewise, in *Waits*, defendants used a sound-alike of Tom Waits in a "commercial for SalsaRio Doritos." *Waits*, 978 F.2d at 1096. No First Amendment challenge was raised in the case because of the pure commercial use.

---

**REPLY IN SUPPORT OF DEFENDANT JOHN McCAIN'S SPECIAL MOTION TO STRIKE UNDER CCP § 425.16**

right of publicity claim" that is based on "the publication or dissemination of matters [that are] in the public interest"); Opp. at 16-17 (claim based on a "transformative" use, *i.e.*, a use that "adds significant creative elements" to create a new message, is barred by the First Amendment). In response, Browne merely asserts that, because use of his voice was purportedly not a "parody" or a commentary on Browne, it is not so protected. That assertion is wrong on both the facts and the law.

First, it is simply incorrect to assert that the use is not a commentary on Browne. As Browne concedes, his voice is "well-known in this country" (Opp. at 8) and the Song is "one of Plaintiff's most famous and enduring songs" (Opp. at 2-3) that has made "famous" the phrase "running on empty" such that it is often used by pundits to comment on energy policy (Opp. at 15). Thus, the use of his particular voice singing the Song to convey the message that Obama's energy policy was "running on empty" comments on Browne's celebrity and his voice singing those words can instantly convey a powerful message. *See Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 25 Cal. 4th 387, 397, 406 (2001) (a celebrity's idiom can serve "important uses in uninhibited debate on public issues").[4]

Second, the contention that the use must directly comment on or "parody" the plaintiff to be protected by the "public interest" and "transformative use" test is simply incorrect; indeed, it has been specifically rejected. Browne concedes (Opp. at 11 n.7)

---

[4] Browne's contention (Opp. at 15) that the ORP did not "need to" use Browne's voice to convey that message is a red-herring; "necessity" is not a requirement under the "public affairs" and "transformative use" tests. One does not "need to" reference Mickey Dora to discuss surf culture or use the identities of rock legends to create cartoon characters, yet those uses were protected by the First Amendment. *Dora v. Frontline Video, Inc.*, 15 Cal. App. 4th 1273, 1278 (1993) (use protected by "public interest" test); *Winter v. D.C. Comics*, 30 Cal. 4th 881, 885 (2003) (use protected by the "transformative use" test); *see also Lennon v. Premise Media*, 556 F.Supp. 2d 310, 324 (S.D.N.Y. 2008) ("Determining whether a use is transformative, however, does *not* require courts to decide whether it was strictly necessary that it be used").

7

that the court in *Daly v. Viacom, Inc.*, 238 F. Supp. 2d 1118 (N.D. Cal. 2002) held that a use of a plaintiff's identity in a work that related to matters of public interest (the world of rock and roll) was barred by the First Amendment, regardless of the fact that the use made no commentary on plaintiff.[5] *See also Cox v. Hatch*, 761 P. 2d 556, 560 (Utah 1988) (claim based on use of plaintiff's likeness in campaign materials issued by Senator Hatch was barred by the "public interest" test despite fact that materials made no commentary whatsoever on plaintiff).

Moreover, the California Supreme Court's opinion in *Winter* directly refutes Browne's contention. *Winter* involved fictional comic book characters who were "less-than-subtle evocations of [famous musicians] Johnny and Edgar Winter." *Winter*, 30 Cal. 4th at 890. The court held that such a use was protected by the First Amendment under California's "transformative use" test and specifically rejected the argument that the use must be a parody or specific commentary on the plaintiff:

> The distinction between parody and other forms of literary expression is irrelevant to the *Comedy III* transformative test. It does not matter what precise literary category the work falls into. What matters is whether the work is transformative, not whether it is a parody or satire or caricature or serious social commentary or any other specific form of expression.

*Winter*, 30 Cal. 4th at 891; *see also Comedy III*, 25 Cal. 4th at 406 ("We emphasize that the transformative elements or creative contributions that require First Amendment protection are not confined to parody"); *Kirby v. Sega of Am., Inc.*, 144 Cal. App. 4th 47, 61 (2006) (the law does not require defendant's work "to 'say something – whether factual or critical or comedic' about [plaintiff] the public figure in order to receive First Amendment protection" and thus whether the use "conveys

---

[5] Browne simply contends that the *Daly* court did not *also* analyze the case under the "transformative use" test as well as the public interest test, but Browne cites no authority for the proposition that a court cannot rely on either test. Opp. at 11 n.7.

8

any expressive meaning is irrelevant to a First Amendment defense"). Indeed, in *Comedy III*, the California Supreme Court recognized that First Amendment protection (as applied through the transformative use test) applies to uses that serve as a "subtle social criticism" of "the celebrity *phenomenon*" itself, not necessarily of the celebrity that is the subject of the use. *Comedy III*, 25 Cal. 4th at 406 (emphasis added).

Moreover, the Ninth Circuit, in the analogous copyright fair use context, held that the use of entire copies of plaintiffs' works was "transformative" despite the fact that the uses made no commentary whatsoever on the plaintiffs' works. *Perfect 10 v. Amazon.com*, 508 F.3d 1146, 1165 (9th Cir. 2007) (use transformative because it used entire work "in a new context to serve a different purpose"). Thus, a use need not convey any parodic message or commentary about the plaintiff to be deemed "transformative" and entitled to First Amendment protection. Rather, a use is transformative when it does not "merely supersede" the plaintiff's identity, but "adds something new, with a further purpose or different character, altering [plaintiff's identity] with new expression, meaning, or message." *Campbell v. Acuff Rose Music, Inc.*, 510 U.S. 569, 579 (1994). Thus, a work that transforms the celebrity's identity and/or manipulates the context in which the celebrity's identity normally appears will be considered transformative, fully protected under the First Amendment and immune from right of publicity liability. *See Comedy III,* 25 Cal. 4th at 408-409 (celebrity images presented through the use of "distortion and the careful manipulation of context" that make a "social comment" are entitled to First Amendment protection). The ORP did not need to transform the actual words used from the Song for this doctrine to apply, rather, a use can be "transformative" by change of context. *See Wall Data Inc. v. L.A.County Sheriff's Dep't.*, 447 F.3d 769, 778 (9th Cir. 2006) (a use is considered transformative where defendant "uses the plaintiff's copyright work in a different context such that plaintiff's work is transformed into a new creation").

9

Here, the use in the Political Video of Browne's voice singing the words "running on empty" to comment on Obama's energy policy did not "merely supersede" the regular use of Browne's voice from the Song (to be entertained by listening to a work about "life on the road") but transformed his voice into something new with a further purpose or different character (to comment on presidential candidates). Accordingly, Browne's claim must fail.

### D. Browne's Concession That McCain Had No Involvement In The Political Video Defeats Browne's Right Of Publicity Claim

Browne concedes that he must show that McCain made a use of Browne's identity. Opp. at 6. The undisputed evidence, however, demonstrates that McCain (sued only in his personal capacity) made no use of Browne's identity because McCain played no part in the creation or dissemination of the Political Video and was not even aware of its existence until after this lawsuit was filed. In the face of this glaring defect in his claim, Browne merely contends that, despite his total lack of knowledge of even the existence of the Political Video (let alone his lack of actual *involvement*), McCain can be held responsible for the acts of anyone who might have been acting to "promote McCain's candidacy." Opp. at 19. There is no authority for such a sweeping proposition, one that would threaten to hold political candidates strictly liable for their supporters' actions, and one that would dramatically chill the entry of individuals into the political arena. Accordingly, this reason alone bars Browne's claim.

## IV. CONCLUSION

For the reasons set forth above, the Court should grant the Motion.

Dated: January 21, 2009         LATHROP & GAGE LLP

By: _____
Lincoln D. Bandlow
Attorneys for Defendant JOHN MCCAIN