Lincoln D. Bandlow (SBN 170449)
LATHROP & GAGE LLP
1880 Century Park East, Suite 1004
Los Angeles, CA 90067-2627
Telephone: (310) 229-9300
Fax: (310) 229-9380
lbandlow@lathropgage.com

Attorneys for Defendant
JOHN MCCAIN

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| JACKSON BROWNE., an individual<br><br>Plaintiff,<br><br>vs.<br><br>JOHN MCCAIN, an individual; THE REPUBLICAN NATIONAL COMMITTEE, a non-profit political organization; THE OHIO REPUBLICAN PARTY, a non-profit political organization,<br><br>Defendants. | CASE # CV08-05334 RGK (Ex)<br><br>**REPLY IN SUPPORT OF DEFENDANT JOHN MCCAIN'S MOTION TO DISMISS UNDER FRCP 12(b)(6)**<br><br>Hearing:<br><br>Date: February 2, 2009<br>Time: 9:00 a.m.<br>Place: Courtroom 850 |

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................. 1

II. THE OPPOSITION DOES NOT SAVE THE COPYRIGHT
CLAIMS FROM THE BAR OF THE FAIR USE DOCTRINE ............... 2

    A. The Purpose And Character Of The Use Factor Favors McCain ... 2

    B. The Long Ago Published And Cliché Nature Of The Portion Of
       The Work That Was Used Supports A Finding Of Fair Use .......... 6

    C. The "Amount and Substantiality" Factor Favors McCain .............. 7

    D. Browne Concedes The Use Had No Effect On Value Of The
       Song ................................................................................................ 8

III. THE OPPOSITION DOES NOT SAVE THE LANHAM ACT
CLAIM ................................................................................................... 9

IV. CONCLUSION ..................................................................................... 10

# TABLE OF AUTHORITIES

CASES

*Am. Family Life Ins. Co. v. Hagan*,
  226 F. Supp. 2d 682 (N.D. Ohio 2002) ................................................................ 9

*Bill Graham Archives v. Dorling Kindersley*,
  448 F.3d 605 (2d Cir. 2006) ................................................................................ 9

*Blanch v. Koons*,
  467 F.3d 244 (2d Cir. 2006) ................................................................................ 5

*Burnett v. Twentieth Century Fox Film Corp.*,
  491 F. Supp. 2d 962 (C.D. Cal. 2007) ................................................................. 2

*Campbell v. Acuff Rose Music, Inc.*,
  510 U.S. 569 (1994) ............................................................................................ 5

*Consumer Union of United States, Inc. v. Gen. Signal Corp.*,
  724 F.2d 1044 (2d Cir. 1983) .............................................................................. 8

*E.S.S. Ent't 2000 v. Rock Star Videos*,
  547 F.3d 109 (9th Cir. 2008) ............................................................................. 10

*Elvis Presley Enters., Inc. v. Passport Video*,
  349 F.3d 622 (9th Cir. 2003) ........................................................................... 7, 8

*Harper & Row v. Nation Enters.*,
  471 U.S. 539 (1985) ................................................................................ 1, 2, 3, 4

*Keep Thompson Governor Committee v. Citizens for Gallen Committee*,
  457 F. Supp. 957 (1978) ................................................................................. 4, 6

*Lennon v. Premise Media*,
  556 F. Supp. 2d 310 (S.D.N.Y. 2008) ................................................................. 7

*Los Angeles News Serv. v. KCAL-TV*,
  108 F.3d 1119 (9th Cir. 1997) .......................................................................... 7, 8

*MasterCard Intern., Inc. v. Nader 2000*,
  70 U.S.P.Q.2d 1046 (S.D.N.Y. 2004) ................................................................. 7

*Mattel, Inc. v. MCA Records, Inc.*,
  296 F.3d 894 (9th Cir. 2002) .......................................................................... 9, 10

*Mattel, Inc. v. Walking Mountain Prods.*,
  353 F.3d 792 (9th Cir. 2003) ............................................................................. 10

*MGM-Pathe Commns. Co. v. Pink Panther Patrol*,
  774 F. Supp. 869 (S.D.N.Y. 1991) ...................................................................... 9

*Nat' Rifle Ass'n of Am. v. Handgun Control Fed. of Ohio*,
  15 F.3d 559 (6th Cir. 1994) ................................................................................. 6

*Perfect 10 v. Amazon.com*,
  508 F.3d 1146 (9th Cir. 2007) .................................................................. 5, 6

*Rogers v. Grimaldi*,
  875 F.2d 994 (2d Cir. 1989) ..................................................................... 9, 10

*Romantics v. Activision Publ.*,
  532 F.Supp.2d 884 (E.D.Mich. 2008) ............................................................ 10

*United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*,
  128 F.3d 86 (2d Cir. 1997) .............................................................................. 9

*Wall Data Inc. v. L.A. County Sheriff's Dep't.*,
  447 F.3d 769 (9th Cir. 2006) ........................................................................... 5

*Worldwide Church of God v. Philadelphia Church of God, Inc.*,
  227 F.3d 1110 (9th Cir. 2000) ......................................................................... 6

*Zomba Enters., Inc. v. Panorama Records, Inc.*,
  491 F.3d 574 (6th Cir. 2007) ........................................................................... 6

| | |
|---|---|
| 1 | **MEMORANDUM OF POINTS AND AUTHORITIES** |
| 2 | **I.  INTRODUCTION** |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Browne's Opposition ("Opp.") concedes that the operative facts necessary to grant the Motion – the contents of the Political Video and the Song – are properly before the Court. Moreover, Browne concedes that his claims stem from the use of a snippet of the Song "as part of a political message" that "criticize[d] President-elect Obama's energy policy." Opp. at 1-2. Finally, Browne concedes that there was no lost licensing fee because Browne emphatically states that he would never have granted a license to defendants for this use. Opp. at 20. These concessions mandate the dismissal of all of Browne's claims.[1]

As to the Copyright claims, Browne concedes that the use of a brief portion of the Song furthered important political speech, but relies on *Harper & Row v. Nation Enters.*, 471 U.S. 539 (1985) for the contention that not every use in the political speech context is fair. The holding in *Harper & Row*, however, was dictated almost exclusively by the fact that defendants stole an unpublished work, thereby depriving plaintiff of first publication rights and a lucrative "first excerpts" deal. Here, Browne admits the Song was published thirty years ago and has sold over *seven million* copies. Opp. at 3. Moreover, Browne's contention that the use was not fair because it did not comment on the Song is wrong on both the facts and the law. Not only is such a commentary made, but it is not required under the fair use analysis "purpose of the use" factor. Finally, Browne's assertion that defendants must address the relevant licensing market for the work is rendered irrelevant by Browne's own concession that he would *never* have granted a license to use his work to "convey a message that [he] disagrees with" such as the message conveyed here. *See* Opposition to Motion To Strike at 18. Thus, the fair use defense bars the copyright claims.

---

[1] These concessions also mandate dismissal of Browne's right of publicity claim. *See* McCain's Reply In Support of anti-SLAPP Motion (incorporated herein by reference).

1
REPLY IN SUPPORT OF McCAIN'S MOTION TO DISMISS

1   Regarding his Lanham Act "false endorsement" claim, Browne's argument that defendants cannot challenge this claim because defendants themselves have federal trademarks can be summarily disregarded. Rather, the relevant portion from the Opposition is Browne's concession that the "mark" (*i.e.,* the sound of Browne's voice singing his Song) was "artistically relevant" to the Political Video because it served to "criticize President-elect Obama's energy policy." Opp. at 2. That concession defeats a Lanham Act claim as a matter of law. Accordingly, the Motion should be granted and the Complaint dismissed with prejudice.

## II. THE OPPOSITION DOES NOT SAVE THE COPYRIGHT CLAIMS FROM THE BAR OF THE FAIR USE DOCTRINE

Browne does not dispute that the Court can conduct a fair use analysis on a motion to dismiss. *See Burnett v. Twentieth Century Fox Film Corp.*, 491 F. Supp. 2d 962, 966 (C.D. Cal. 2007) (reviewing works and holding, on Motion to Dismiss, that claim was barred by the fair use doctrine). Nor does Browne dispute that the Court properly has before it the Political Video and the Song to conduct this analysis. Thus, the Court can easily determine that the use of brief portions of the Song is a protected fair use, and nothing in the Opposition fends off such a determination.

### A. The Purpose And Character Of The Use Factor Favors McCain

Browne concedes that the snippet from the Song was used in political speech that related to a matter of public concern. In response, Browne relies on *Harper & Row* for the contention that uses for political speech are not protected by the fair use doctrine. But *Harper & Row* is easily distinguishable.

In *Harper & Row*, President Ford had contracted with Harper & Row to publish his memoirs and to license prepublication excerpts, which Harper & Row licensed to *Time* magazine. Before the release of the memoir and excerpts by *Time*, however, an unauthorized source provided Ford's manuscript to *The Nation* magazine, whose editor "knew that his possession of the manuscript was not authorized" and had to be "returned quickly to his 'source' to avoid discovery." *Harper & Row*, 471 U.S. at 543.

*The Nation* then ran 300 to 400 words of verbatim quotes from the manuscript, including the key portions dealing with Ford's pardon of Nixon, so that *The Nation* could "scoop" *Time*, causing *Time* to cancel its piece and a payment that was due to Ford for *Time*'s serial rights. *Id*.

The Supreme Court rejected *The Nation*'s fair use defense. In so doing, however, the Supreme Court focused almost exclusively on the fact that defendants had usurped the first publication rights in the yet unpublished work. Thus, *Harper & Row* was about the "piracy of verbatim quotations for the purpose of 'scooping' the authorized first serialization" of an unpublished work – a circumstance vastly different from that here. *Id*. at 556.[2]

Like a virus, the "unpublished" nature of the work infected the Court's analysis of all of the fair use factors. Regarding the "purpose and character of the use," the Court found against defendant on this factor because defendant had "actively sought to exploit the headline value of its infringement, making a 'news event' out of its unauthorized first publication of a noted figure's copyrighted expression" and thus the Court could not "ignore *The Nation*'s stated purpose of scooping the forthcoming hardcover and *Time* abstracts." *Id*. at 561-62. Regarding the "nature of the work" factor, the Court held that "[t]he fact that a work is unpublished is a critical element of its 'nature'" and thus "the author's right to control the first public appearance of his expression weighs against" a finding of fair use on this factor. *Id*. at 564. Finally,

---

[2] Indeed, there are about a dozen references to that fact in the Court's opinion. *See,e.g., id*. at 549 ("The Nation effectively arrogated to itself the right of first publication, an important marketable subsidiary right"); 550-51 ("fair use traditionally was not recognized as a defense to charges of copying from an author's as yet unpublished works"); 557 ("Where an author and publisher have invested extensive resources in creating an original work and are poised to release it to the public, no legitimate aim is served by pre-empting the right of first publication" and thus "[u]nder ordinary circumstances, the author's right to control the first public appearance of his undisseminated expression will outweigh a claim of fair use").

3
REPLY IN SUPPORT OF McCAIN'S MOTION TO DISMISS

regarding the "effect on the market" factor, the Court held that this factor favored plaintiff because "extensive prepublication quotations from an unreleased manuscript without the copyright owner's consent poses substantial potential for damage to the marketability of first serialization rights in general" and the evidence demonstrated that "*The Nation*'s article, which contained verbatim quotes from the unpublished manuscript, [was the] reason" for *Time*'s cancellation of its projected serialization and its refusal to pay $12,500 due on its contract with Ford. *Id*. at 569, 567. Thus, in summing up its conclusion on the fair use factors, the Supreme Court held that fair use did not require the "unfettered access to the **unpublished** copyrighted expression of public figures." *Id*. at 569 (emphasis added).

The facts in *Harper & Row* are, of course, utterly different from the facts here. The Song was published to the world over thirty years ago and has sold over seven million copies. *See id*. at 551 ("Publication of an author's expression before he has authorized its dissemination seriously infringes the author's rights to decide when and whether it will be made public, **a factor not present in fair use of published works**") (emphasis added). Moreover, the ORP did not promote the Political Video as "the one with the Jackson Browne song in it" or release the Political Video to "scoop" a pending use of the Song. Rather, the Song was only one small part of a multi-image, multi-sound informational political message aimed at discussing the policies of the presidential candidates. Thus, *Harper & Row* has no bearing here.

Rather, the most analogous case to the present facts is *Keep Thompson Governor Committee v. Citizens for Gallen Committee*, 457 F. Supp. 957, 961 (D.N.H. 1978) where the court held that use of brief portions of plaintiff's song in a political campaign message was a fair use. Browne buries his passing reference to *Keep Thompson Governor* in a footnote in which he contends that the case is off-point because it involved a commentary on the song itself. Opp. at 9 n.4. That characterization of the case is false. No specific reference or commentary on the song

itself was made in the use; rather, the use (like that made of the Song here) was part of the campaign spots overall political message.

Indeed, this raises another of Browne's faulty assertions in the Opposition: that a use must parody, comment on or target the underlying work to be a protected fair use. That assertion is wrong on the facts and the law. First, as set forth in the Reply in support of McCain's anti-SLAPP Motion, the use here *does* comment on Browne by recognizing how his Song has made the phrase "running on empty" a ubiquitous cliché in our society. Second, the "purpose and character" of the use factor focuses on whether a use is "transformative." *Perfect 10 v. Amazon.com*, 508 F.3d 1146, 1164 (9th Cir. 2007) ("The central purpose of [the first fair use factor] inquiry is to determine whether and to what extent the new work is 'transformative'"). A work is transformative when the use does not "merely supersede the objects of the original creation" but rather "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." *Campbell v. Acuff Rose Music, Inc.*, 510 U.S. 569, 579 (1994). A use is considered transformative where the defendant "changes a plaintiff's copyrighted work or uses the plaintiff's copyrighted work in a different context such that the plaintiff's work is transformed into a new creation." *Perfect 10*, 508 F.3d at 1165 (citation omitted); *Blanch v. Koons*, 467 F.3d 244, 252 (2d Cir. 2006) (use was a transformative fair use because defendant used plaintiff's work "for 'sharply different' purposes than [plaintiff], in that [defendant] used it 'as fodder for his commentary on the social and aesthetic consequences of mass media'"); *Wall Data Inc. v. L.A.County Sheriff's Dep't.*, 447 F.3d 769, 778 (9th Cir. 2006) (a use is considered transformative where defendant "uses the plaintiff's copyright work in a different context such that plaintiff's work is transformed into a new creation"). It is *not* necessary that the use comment on the work and numerous cases have held uses to be fair when no such commentary is

made.³ For example, in *Keep Thompson Governor*, there was no commentary on the work. Likewise, in *Nat' Rifle Ass'n of Am. v. Handgun Control Fed. of Ohio*, 15 F.3d 559, 561 (6th Cir. 1994), which again involved the use of a work in a political message, the use was held to be a fair use even though the use did not comment in any way on the work. In *Perfect 10*, the Ninth Circuit held that making exact copies of a work "may be transformative so long as the copy serves a different function than the original work." *Perfect 10*, 508 F.3d at 1165. Accordingly, because the Political Video added something new, with a further purpose or different character, giving the Song a new meaning or message that commented on matters of the utmost public interest, the purpose and character of the use factor overwhelmingly favors McCain.

**B.  The Long Ago Published And Cliché Nature Of The Portion Of The Work That Was Used Supports A Finding Of Fair Use**

Browne concedes that the Song was published three decades ago and does not dispute that only the cliché line "running on empty" is readily discernable in the Political Video. Browne's sole contention (Opp. at 11) that the use of a portion of the Song in the Political Video was a "first use" because it was the first to use it in a

---

³ Browne's reliance on *Zomba Enters., Inc. v. Panorama Records, Inc.*, 491 F.3d 574 (6th Cir. 2007) (Opp. at 10) is unavailing: that case dealt with the use of karaoke machines, which copied **entire** musical compositions as well as the **entire** lyrics to hundreds of songs without adding any independent creative content and defendant was manufacturing and selling karaoke packages as a profit-making enterprise. Likewise, *Worldwide Church of God v. Philadelphia Church of God, Inc.*, 227 F.3d 1110, 1112, 1117 (9th Cir. 2000) (Opp. at 6 n.3) is inapplicable because defendant took plaintiff's 380-page book and "cop[ied] it in its entirety and distributed large numbers of copies to [defendant's] members and the public" and the copies of the work were used "for the same intrinsic purpose for which the copyright owner intended it to be used." Here, the ORP did not copy the entire Song, the ORP did add its own highly-protected political content, defendants did not sell the Political Video nor operate profit-making enterprises, and the Song was not used for the "same intrinsic purpose" for which Brown intended it to be used (as a snappy song about life on the road), but instead for a message about the policies of a candidate for President.

REPLY IN SUPPORT OF McCAIN'S MOTION TO DISMISS

"commercial" is factually and legally incorrect. The Political Video, as even Browne concedes, was not a "commercial." Moreover, a work is only "published" once; each appearance in a new medium is *not* a new "publication." *See MasterCard Intern., Inc. v. Nader 2000*, 70 U.S.P.Q.2d 1046 (S.D.N.Y. 2004) ("A previously published work available to the general public will receive less protection under the fair use doctrine than an unpublished work which has not yet been released to the general public by its author"). Browne of course concedes that "*Running on Empty* was first published long ago." Opp. at 11. Thus, this factor favors McCain.

### C. The "Amount and Substantiality" Factor Favors McCain

Browne concedes that the Political Video used only a small portion of the Song: less than thirty seconds (and only nine seconds of lyrics) from a song almost five minutes long. Browne incorrectly contends that defendants have "gloss[ed] over" the fact that this was the "heart of the work." Defendants have not glossed over this fact; they have embraced it. Of course the words "running on empty" were used in the Political Video because it was those precise words that were key to criticizing Obama's campaign and energy policy. The focus on the politically relevant portion of the Song weighs strongly in **McCain's favor**. *See Lennon v. Premise Media*, 556 F. Supp. 2d 310, 325-26 (S.D.N.Y. 2008) (factor favored defendants because defendants used portion of song that expresses idea they specifically wished to critique "without copying other portions of the song that do not express that idea").[4]

---

[4] Rather than address the cases set forth in the Motion regarding this factor, Browne relies on the inapposite *Elvis Presley Enters., Inc. v. Passport Video*, 349 F.3d 622 (9th Cir. 2003) and *Los Angeles News Serv. v. KCAL-TV*, 108 F.3d 1119 (9th Cir. 1997) cases. In *Elvis*, defendant used numerous excerpts from a variety of works which "comprise[d] a substantial portion of Elvis' total appearances on many of these shows" including "[t]hirty-five percent of his appearances on *The Ed Sullivan Show*" and three minutes from a comeback special. *Elvis*, 349 F.3d at 625. Moreover, defendant had sought to "profit directly from the copyrights it uses without a license" by using as "[o]ne of the most salient selling points on the box" for defendant's work that it included the infringing works. *Id.* at 628. Finally, the infringed works were used

## D. Browne Concedes The Use Had No Effect On Value Of The Song

The fourth factor focuses on the copyright law's condemnation of the "copier who attempts to usurp the demand for the original work." *Consumer Union of United States, Inc. v. Gen. Signal Corp.*, 724 F.2d 1044, 1050 (2d Cir. 1983). Browne concedes that having a blip of his Song in a political video does not "usurp the demand" or supplant the market for his Song.[5]

Rather, Browne appears to rely on a "lost licensing fee" theory of damages and contends that defendants were required to produce evidence on that issue. Browne, however, has *conceded* that there was no such lost licensing fee because Browne repeatedly states that he never would have licensed the work to defendants to make the use that was made in the Political Video. Opp. at 20.[6] Accordingly, Browne concedes there was no harm to the market for the work and thus this factor favors McCain.

---

"without much interruption" and "serve[d] the same intrinsic entertainment value that is protected by Plaintiff's copyrights." *Id.* at 629. That is nothing like the situation here, where the use was only a brief snippet of one of Browne's works, defendants did not seek to profit from (or even highlight) the fact that the Political Video included an excerpt from the Song, the Song was not played "without interruption" (Obama speaking and Hillary Clinton saying "shame on you, Barack Obama" plays over the music from the Song) and use of the Song did not serve the same entertainment value, but served to make a political commentary. In *Los Angeles News Service*, defendant simply copied plaintiff's entire tape of the Reginald Denny beating and did not add "anything new or transformative to what made [plaintiff's] work valuable – a clear, visual recording of the beating itself." *Los Angeles News Service*, 108 F.3d at 1122. Again, no such wholesale copying or failure to add anything new is present here.

[5] Indeed, the court in *Elvis* made this exact point, holding that use of portions of Elvis songs was a fair because it "seems unlikely that someone in the market" for these songs would purchase defendants' work instead of the songs. *Elvis*, 349 F.3d at 631.

[6] Moreover, even if he would have entertained a license, the bare assertion that plaintiff may have been deprived of a licensing fee does not stave off a finding of fair use: "a copyright holder cannot prevent others from entering fair use markets merely by developing or licensing a market for … transformative uses of its own creative work … Copyright owners may not preempt exploitation of transformative markets." *Bill Graham Archives v. Dorling Kindersley*, 448 F.3d 605, 614-615 (2d Cir. 2006).

1       Thus, a transformative use of a limited, non-creative and cliché portion of the
2   Song to make an important political commentary about issues of public interest and
3   which admittedly caused no harm to Browne is a fair use. Accordingly, Browne's
4   copyright claims fail as a matter of law.

5   **III.   THE OPPOSITION DOES NOT SAVE THE LANHAM ACT CLAIM**

6       Browne's attempt to salvage his "false endorsement" Lanham Act claim fails.
7   First, Browne makes the frivolous assertion that defendants cannot challenge this
8   claim because defendants themselves have sought to obtain federal trademarks and
9   thus rely on the protections afforded by the Lanham Act. That argument makes no
10  sense: it is the equivalent of arguing that the Walt Disney Company can never make a
11  fair use argument because it has itself registered copyrights and thus has sought to use
12  the protections of the Copyright Act.[7]

13      McCain recognizes that the Lanham Act may be used as a *shield* to protect
14  marks that relate to political expression. But as numerous courts have held, however,
15  the Lanham Act cannot be used as a *sword* to punish the use of purported "marks"

---

[7] In Browne's limited discussion of trademarks in the political arena, Browne relies on *MGM-Pathe Commns. Co. v. Pink Panther Patrol*, 774 F. Supp. 869 (S.D.N.Y. 1991) and *United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86 (2d Cir. 1997) (Opp. at 15-16) which have no bearing on this case. Both of these cases involved the use of marks as "source identifiers" and not as a component of an expressive work. *See Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 698 (N.D. Ohio 2002) (noting that in *United We Stand*, court was "careful to point out" that "the defendant was using the plaintiff's mark as a source identifier, and not as a means to communicate a message" and thus *United We Stand* has no bearing on a case involving the use of a mark "*as part of his communicative message*, in the context of expressing political speech"). Moroever, in *MGM*, the court dismissed First Amendment concerns in a short paragraph, stating in a cursory fashion that the First Amendment does not "confer any right to use the trademark of another." *MGM*, 774 F. Supp. at 877. That cursory conclusion, of course, has been contradicted by legions of decisions, including those from the Ninth Circuit and the Second Circuit that controls the Southern District of New York. *See Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 900 (9th Cir. 2002) and *Rogers v. Grimaldi*, 875 F.2d 994, 999 (2d Cir. 1989).

when such uses are artistically relevant to protected expression. *See Mattel, Inc. v. MCA Records, Inc.,* 296 F.3d 894, 900 (9th Cir. 2002); *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 807 (9th Cir. 2003); *E.S.S. Ent't 2000 v. Rock Star Videos*, 547 F.3d 109 (9th Cir. 2008).[8]

Here, Browne *concedes* that the "mark" (*i.e.,* the sound of Browne's voice singing his Song) was "artistically relevant" to the Political Video because it "criticize[d] President-elect Obama's energy policy." Opp. at 2. That concession defeats Browne's Lanham Act claim as a matter of law.

## IV. CONCLUSION

The use of a brief portion of a long-ago published song to comment on issues of profound national importance was a fair and artistically relevant use of the Song and Browne's voice. Accordingly, McCain's Motion should be granted and the Complaint dismissed with prejudice.

Dated: January 21, 2009     LATHROP & GAGE LLP

By: _____
Lincoln D. Bandlow

Attorneys for Defendant JOHN MCCAIN

---

[8] Browne's only response to the "artistic relevance" test is to assert that it does not apply because the use does not target Browne for criticism. Opp. at 18. That is not a requirement of the "artistic relevance" test. Indeed, the Ninth Circuit in *Mattel* adopted the holding in *Rogers*, 875 F.2d at 999 (2d Cir. 1989), which involved a use that was in no way critical or a "parody" of Ginger Rogers, yet was protected because it was artistically relevant to the expressive work. *Mattel*, 296 F.3d at 901-902; *see also Romantics v. Activision Publ.*, 532 F.Supp.2d 884, 889 (E.D.Mich. 2008) (use in expressive work protected because it "related to the content of the work" even though use did not involve any criticism or parody of plaintiff).