1 Rebecca Connolly, Esq. SBN 145482
GRUNSKY, EBEY, FARRAR & HOWELL
2 A Professional Corporation
240 Westgate Drive
3 Watsonville, CA 95076
Telephone (831)722-2444
4 Facsimile (831)722-6153

5 Attorneys for Defendant
  The Ohio Republican Party

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| JACKSON BROWNE, an individual,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>JOHN MCCAIN, an individual; THE REPUBLICAN NATIONAL COMMITTEE, a non-profit political organization; THE OHIO REPUBLICAN PARTY; a non-profit political organization,<br><br>　　　　　Defendants. | No. CV08-5334 RGK (Ex)<br><br>**REPLY IN SUPPORT OF DEFENDANT OHIO REPUBLICAN PARTY'S MOTION TO DISMISS COMPLAINT PURSUANT TO FRCP 12(b)(2), (3) & (6); OR TRANSFER PURSUANT TO §§ 28 U.S.C. 1404(a) & 1406(a); & MOTION TO STRIKE**<br><br>Date:　　February 2, 2009<br>Time:　　9:00 am<br>Judge:　　Hon. R. Klausner<br>Place:　　Courtroom 850 |

---

**ORP's Reply in Support of Motion to Dismiss or Transfer**

TABLE OF CONTENTS

Page

I. Introduction ...........................................................................................................1

II. The Existence of the Terms of Use Agreement Between YouTube and the ORP Does Not Confer Personal Jurisdiction Over the ORP in California ................................................................................................................2

III. The Ninth Circuit Analysis in *Cybersell* Establishes that this Action Lacks "Something More" to Confer Personal Jurisdiction ................................4

IV. Browne Has Not and Cannot Present Evidence that the ORP Expressly Aimed the Political Video at California as the ORP's Organizational Purpose is Focused on Ohio .......................................................5

V. Browne's Attempt to Distinguish this Case from *Schwarzenegger* is Unavailing ................................................................................................................7

VI. Browne's Argument Would Unreasonably Extend Personal Jurisdiction in California Over Every Complaint Arising Out of Infringement Based on a YouTube Posting ..................................................9

VII. The Central District of California Is Not a Proper Venue ...............................10

VIII. Conclusion ..........................................................................................................10

# TABLE OF AUTHORITIES

Page

**CASES**

*Airola v. King*, 505 F. Supp. 30 (D. Ariz. 1980) ............................................................................... 10

*Calder v. Jones*, 465 U.S. 783 (1984) ................................................................................................ 8

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414 (9th Cir. 1997) ................................................. passim

*Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008) ..................................................................... 7, 9

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) ............................. 7, 8

*Sinatra v. National Enquirer*, 854 F.2d 1191 (9th Cir. 1988) .............................................................. 8

*Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) ............................ 3

**STATUTES**

28 U.S.C. § 1406(a) ........................................................................................................................... 10

## I. Introduction

Jackson Browne ("Browne") fails to establish that the Ohio Republican Party ("ORP") has sufficient minimum contacts with California to support personal jurisdiction. The ORP's contacts with California are limited and essentially passive in nature. Thus, the assertion of personal jurisdiction is unreasonable. The ORP's out-of-state use of YouTube's file-sharing service to display the Political Video and other political videos related to Ohio politics through a link at OhioGOPtv does not qualify as purposeful activity invoking the benefits and protections of California law.

Moreover, the unique role of the ORP in Ohio makes a compelling case as to why the assertion of jurisdiction does not comport with fair play and substantial justice. The undisputed evidence establishes that ORP's primary focus and organizational purpose is to promote Republican political goals *in* Ohio. The Political Video is political speech about a matter of the utmost public importance; it does not a concern a garden variety commercial transaction. The 2008 presidential election generated interest in the Ohio electorate beyond Ohio's borders. Such national attention, however, did not somehow transform the ORP's focus from Ohio to California or the ORP into a purveyor of goods and services. These exceptional circumstances present compelling evidence that it would offend "traditional notion of fair play and substantial justice" to require the ORP to defend this action in California. Because Browne has failed to establish a prima facie case for personal jurisdiction, the ORP's motion to dismiss under Rule 12(b)(2) should be granted.

Nor has Browne established that the Central District is the proper venue for this action. Insofar as the venue analysis is subsumed by the jurisdictional analysis, the Court's determinations regarding personal jurisdiction will resolve the ORP's Rule 12(b)(3) motion as well. Contrary to Browne's assertions, the fact that neither McCain nor the RNC have objected to personal jurisdiction and venue does not prevent this Court from dismissing the ORP, or in the alternative, transferring the entire action to the Southern District of Ohio, a jurisdiction in which neither venue or personal

jurisdiction are in dispute.

In addition to opposing the ORP's Motion to Dismiss on jurisdictional and venue grounds, Browne separately filed Consolidated Oppositions to defendants' Motions to Dismiss under Rule 12(b)(6) and defendants' Motions to Strike under California's anti-SLAPP Statute. The ORP's anti-SLAPP Motion should be granted as the Motion and Consolidated Opposition demonstrate that Browne cannot establish a probability of success on the merits on his California right of publicity claim. Further, the ORP's Rule 12(b)(6) Motion should be granted as the Motion and Consolidated Opposition demonstrate that Browne's copyright and Lanham Act claims fail as a matter of law. This Reply will address only the jurisdictional and venue issues raised by the ORP's Motion. The ORP adopts and incorporates by reference the arguments raised in the separately filed reply briefs filed by McCain and the RNC in support of defendants' motions to dismiss for failure to state a claim and motion to strike under California's anti-SLAPP Statute.

## II. The Existence of the Terms of Use Agreement Between YouTube and the ORP Does Not Confer Personal Jurisdiction Over the ORP in California

Browne argues that YouTube's standard Terms of Use agreement establishes that the ORP purposefully availed itself of the benefits and protections of California law. *See, e.g.,* Opp at 1:11-15; 1:20-2:1; 8:5-8. In the same breath, however, Browne concedes in footnote that "Plaintiff does not contend that the forum selection clause in ORP's agreement with YouTube is binding in this case." *See* Opp. at 8, n.6. Browne never explains how a forum selection clause in a third-party contract establishes purposeful availment if it is not "binding" in this case.

Browne's positions are incompatible. YouTube is not a party to this lawsuit. Any Terms of Use agreement that *might* govern the relationship between YouTube and the ORP relate solely to disputes that arise between YouTube and ORP, *not*, as Browne concedes, between Browne and the ORP.

**ORP's Reply in Support of Motion to Dismiss or Transfer**

The Terms of Use also state that YouTube is a "passive website". *See* Opp. at 5:4-11. As discussed in the Motion, Browne must establish the existence of "something more" than utilization of a passive website to establish purposeful availment. *See* Motion at 6:16-7:26. The "common thread" to a finding of jurisdiction based upon purely internet contacts, like that here, "is that the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa. 1997)).

Here, the ORP's purported consent to the Terms of Use when compared to the nature and quality of the ORP's internet use fails to establish the necessary proportionality. The Political Video is political speech and not a commercial transaction. The Political Video was released in connection with media coverage relating to Barak Obama's *visit to Ohio*. *See* McClelland Decl. ¶ 8; Mauk Decl. ¶ 23. The national media was interested in how the presidential race would turn out in Ohio, *not* California. McClelland sent the Political Video to reporters from "outside Ohio that had covered politics in the Buckeye State." McClelland Decl. ¶ 16. Thus, the national media attention does not support Browne's argument that the Political Video was targeted at California. Instead, the undisputed evidence establishes that the ORP intended Ohio to be the target of the Political Video. *See* McClelland Decl. ¶¶ 5 & 13; Mauk Decl. ¶¶ 15 & 23.[1] In the face of this overwhelming evidence, the Terms of Use agreement carries little weight in the jurisdictional analysis. Under *Cybersell's* proportionality test, personal jurisdiction over the ORP is unconstitutional.

---

[1] Browne has submitted Objections to portions of paragraph 23 of the Mauk Declaration and paragraph 5 of the McClelland Declaration. The Objections should be over-ruled. The Mauk and McClelland Declarations establish the necessary foundational facts to testify as to the ORPs' intended audience and whether or not the ORP intended to target California when it created the Political Video. Mauk is the Executive Director and McClelland is the Communications Director and they have personal knowledge about the ORP's organizational purpose. *See* Mauk at ¶¶ 1-15 & McClelland at ¶¶ 1, 5, 6.

**ORP's Reply in Support of Motion to Dismiss or Transfer**

### III. The Ninth Circuit Analysis in *Cybersell* Establishes that this Action Lacks "Something More" to Confer Personal Jurisdiction

Browne, like the plaintiff in *Cybersell*, tries to bootstrap jurisdiction based upon the ORP's use of YouTube in connection with the OhioGOPtv link. Like the plaintiff's arguments in *Cybersell*, Browne's jurisdictional arguments should be rejected.

In *Cybersell*, the plaintiff, an Arizona corporation, argued that Arizona had personal jurisdiction over a Florida corporation based solely upon its "electronic contacts" with Arizona. The Court found that Arizona lacked personal jurisdiction over the defendant. The Ninth Circuit defined the issue in the following terms:

> We are asked to hold that the allegedly infringing use of a service mark in a home page on the World Wide Web suffices for personal jurisdiction in the state where the holder of the mark has its principal place of business. Cybersell, Inc., an Arizona corporation that advertises for commercial services over the Internet, claims that Cybersell, Inc., a Florida corporation that offers web page construction services over the Internet, infringed its federally registered mark and should be amenable to suit in Arizona because cyberspace is without borders and a web site which advertises a product or service is necessarily intended for use on a world wide basis. The district court disagreed, and so do we. Instead, applying our normal "minimum contacts" analysis, we conclude that it would not comport with "traditional notions of fair play and substantial justice,". . . for Arizona to exercise personal jurisdiction over an allegedly infringing Florida web site advertiser who has no contacts with Arizona other than maintaining a home page that is accessible to Arizonans, and everyone else, over the Internet. We therefore affirm.

*Id*. at 415. (citation omitted)

This case poses a similar, yet slightly different, question: Would it comport with "traditional notions of fair play and substantial justice," for California to exercise personal jurisdiction over an allegedly infringing video placed on YouTube by the ORP, who has no contacts with California other than the "electronic" utilization of YouTube that is accessible to Californians, and everyone else, over the Internet? Under the *Cybersell* analysis, the answer is "no." There is no evidence that the ORP purposefully directed the Political Video "in a substantial way" to California.

*Cybersell* presented a case of first impression. It represented the first time that the Ninth Circuit had applied personal jurisdiction "in the context of cyberspace." *Id*.

at 417. The Court relied upon precedent from the Second and Sixth Circuits and noted that the cases reflected a "broad spectrum of Internet use on the one hand, and contacts with the forum on the other." *Id*. The Ninth Circuit rejected the theory that an Internet advertisement by itself provided sufficient minimum contacts and noted that no other case had previously held that an internet advertisement alone could support personal jurisdiction. *Id*. at 418. "Rather, in each, there has been 'something more' to indicate that the defendant purposefully (albeit electronically) directed his activity in a *substantial* way to the forum state." *Id*. (emphasis added). Here, as demonstrated below, Browne has not and cannot establish that the ORP has directed its activities in a substantial way to California.

### IV. Browne Has Not and Cannot Present Evidence that the ORP Expressly Aimed the Political Video at California as the ORP's Organizational Purpose is Focused on Ohio

In sharp contrast to the typical jurisdictional contacts of commercial companies, the ORP is not engaged in commerce and has not sought to avail itself of the privilege of doing business in California. *See* Mauk Decl. ¶¶ 3-15. As a non-profit political organization, it is unquestionably Ohio-centric. Browne does not dispute that the organizational purpose of the ORP is to further Republican political goals in Ohio. *See* Mauk Decl. ¶¶3-15. One cannot imagine an organization with a more exclusive platform than a state based, non-profit political organization, like the ORP. Browne does not present any evidence to dispute these jurisdictional facts set forth in the Mauk Declaration.

Instead, Browne argues that by sending the OhioGOPtv link to 25 national media representatives, the ORP intended "to reach beyond Ohio's borders." *See* Opposition at 9:11-15 (incorrectly citing 225 instead of 25). Sending the Political Video to 25 members of the national media does not establish that the ORP intended to target a California audience. In fact, Browne concedes this point and merely argues that the ORP "undoubtedly knew" that the Political Video would reach viewers

outside Ohio "including California". According to Browne, a California audience was not the focus, but merely a possible byproduct.

The fact that others outside Ohio could also view the OhioGOPtv content does not provide the necessary jurisdictional facts to confer jurisdiction. This identical argument was rejected in *Cybersell*:

> Here, Cybersell FL has conducted no commercial activity over the Internet in Arizona. All that it did was post an essentially passive home page on the web, using the name "CyberSell," which Cybersell AZ was in the process of registering as a federal service mark. While there is no question that anyone, anywhere could access that home page and thereby learn about the services offered, we cannot see how from that fact alone it can be inferred that Cybersell FL deliberately directed its merchandising efforts toward Arizona residents.
> Cybersell FL did nothing to encourage people in Arizona to access its site, and there is no evidence that any part of its business (let alone a continuous part of its business) was sought or achieved in Arizona. To the contrary, it appears to be an operation where business was primarily generated by the personal contacts of one of its founders. While those contacts are not entirely local, they aren't in Arizona either.

*Id*. at 419.

Here, Browne tries to bolster his argument that the ORP purposefully availed itself of California law by arguing that the ORP posted at least 130 other videos through OhioGOPtv. *See* Opp. at 8:3-5 & n.5. These video clips, support, rather than refute, that Ohio is the focus. Each of the video clips identified in Exhibit E to the Noyes Declaration have a connection to Ohio and are about a campaign rally in an Ohio city, an Ohio sporting event, an Ohio politician, a candidate on the Ohio ballot, or the ORP itself. *See* McClelland Reply Decl. ¶ 5(a)-(r). Even the Los Angeles Video Blog demonstrates that Ohio is the intended audience. *See* McClelland Reply Decl. ¶ 7 & 8; Noyes Decl. Exhibit D. McClelland reported on the former Ohio Attorney General Marc Dann's excessive use of the official airplane for the State of Ohio. *Id*. at ¶ 7. The video concludes with "breaking news" that the ORP planned to partner with CNN to stage a Republican Presidential Debate in Ohio. *Id*. at ¶ 8. Thus, rather than establishing that the ORP seeks to target an audience in California, the

**ORP's Reply in Support of Motion to Dismiss or Transfer**

content of these videos provides further evidence that the target audience of OhioGOPtv is Ohio.

### V. Browne's Attempt to Distinguish this Case from *Schwarzenegger* is Unavailing

Browne attempts to distinguish *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) on two grounds: (1) the existence of the YouTube terms of service agreement; and, (2) the fact that the work in *Schwarzenegger* was distributed by an Ohio newspaper. *See* Opp. at 9:3-8. Browne's first argument regarding the YouTube forum selection clause in its Terms of Use agreement has been disposed of previously.

Browne's second argument, that the Political Video was "intentionally distributed in California" is without any factual support. *See* Opp. at 9:9-11. Browne has chosen to rely simply upon the fact that YouTube is a California company and argues that YouTube "distributed" the Political Video in the same manner as the Ohio newspaper in *Schwarzenegger.*

There is little similarity between a newspaper and YouTube. YouTube was described by the district court in *Doe v. Geller*, 533 F. Supp. 2d 996 (N.D. Cal. 2008) as user-driven and free. "The YouTube internet video website is an entirely user-driven medium. Anyone with access to the internet can sign up for a YouTube account and upload any video file to YouTube's servers so that the file may be accessed and view anywhere in the world, all for free." *Id*. at 1000. A newspaper independently makes decisions about what it wants to publish and accepts money for paid advertisement. Posting the Political Video on YouTube does not create forum contacts with California comparable to paying for an advertisement in a newspaper distributed in California.

Next, Browne asserts the same foreseeability argument rejected by the Court in *Schwarzenegger*. *See* Opp. at 9:21-10:18. Browne argues that his status as a famous person from Southern California is enough to establish jurisdiction and relies upon

-7-

*Sinatra v. National Enquirer*, 854 F.2d 1191 (9th Cir. 1988). In *Schwarzenegger*, the Ninth Circuit, after reviewing the controlling United States Supreme Court and Ninth Circuit case law, found that Schwarzenegger's celebrity status in California was simply not enough to establish that the defendant expressly aimed his conduct at California.

> It may be true that Fred Martin's intentional act eventually caused harm to Swarzenegger in California, *see infra*, and Fred Martin may have known that Schwarzeneggerlived in California. But this does not confer jurisdiction, for Fred Martin's express aim was local. We therefore conclude that the Advertisement was not expressly aimed at California.

*Schwarzenegger,* 374 F.3d at 807. The Court further distinguished *Sinatra's* finding of "expressly aiming":

> In *Sinatra*, the court found that the clinic's intentional act – the uttering of false statements about Sinatra in Switzerland – was expressly aimed at California because making the statements was "an event within a sequence of activities designed to use California markets for the defendant's benefit." 845 F.2d at 1197.

*Schwarzenegger,* 374 F.3d at 807. In contrast to the "express aiming" in *Sinatra*, the Court found that Fred Martin's intentional act "was expressly aimed at Ohio rather than California." *Id*. Similarly, here, the Political Video was trying to persuade voters in Ohio to vote for John McCain by criticizing Barak Obama's energy policies. Unlike *Sinatra*, there is no evidence that the ORP was trying to use "California markets" for its benefit. Instead, the only evidence Browne has is "foreseeability" because of Browne's celebrity status. The holding in *Schwarzenegger* makes clear that the Ninth Circuit "require[s] 'something more' than mere foreseeability in order to justify the assertion of personal jurisdiction in California" over an Ohio defendant. *Id*. at 805.

A similar result was reached in *Cybersell*. The Court specifically distinguished the plaintiff's cyberspace trademark infringement allegations from *Calder v. Jones*, 465 U.S. 783 (1984). *Cybersell*, 130 F.3d at 420. "[W]e don't see this as a *Calder* case." *Id*. After distinguishing *Calder*, the Court held that "Cybersell Fl's web page

-8-

simply was not aimed intentionally at Arizona knowing that the harm was likely to be caused there to Cybersell AZ." *Id*. This is significant because *Cybersell* involved a trademark infringement allegation similar to that raised by Browne in the instant Complaint. Jackson's residence in California does not create a prima facie case that the ORP intentionally aimed the Political Video at California. On the contrary, the focal point of the Political Video was a criticism of Barak Obama's energy policy. The Political Video was not aimed intentionally at California knowing that harm was likely to be caused there. And thus, jurisdiction cannot be established under the *Calder* effects test.

### VI. Browne's Argument Would Unreasonably Extend Personal Jurisdiction in California Over Every Complaint Arising Out of Infringement Based on a YouTube Posting

The mischief caused by Browne's argument extending personal jurisdiction based upon a YouTube posting should not be underestimated. Browne's theory would literally open the floodgates of litigation in California. The district court in *Geller* recognized the "unreasonable consequences" of adopting a jurisdictional framework like that proposed by Browne*:*

> Plaintiff's case for jurisdiction leads to unreasonable (even if unintended) consequences. If plaintiff's theory of jurisdiction were upheld, then the Northern District of California could assert jurisdiction over every single takedown notice ever sent to YouTube or any other company in Silicon Valley. . . . Such broad jurisdiction, *premised solely on the happenstance that many internet companies that are not even parties to § 512(f) litigation have offices in Silicon Valley, is unreasonable*. The Northern District of California is not an international court of internet law.

533 F. Supp. 2d at 1009 (emphasis added).

Again, the Ninth Circuit decision in *Cybersell* is also instructive:

> We therefore hold that Cybersell FL's contacts are insufficient to establish "purposeful availment." Cybersell AZ has thus failed to satisfy the first prong of our three-part test for specific jurisdiction. We decline to go further solely on the footing that Cybersell AZ has alleged trademark infringement over the Internet by Cybersell FL's use of the registered name "Cybersell" on an essentially passive web page advertisement. *Otherwise, every complaint arising out of alleged trademark infringement on the Internet would automatically result in personal jurisdiction wherever the plaintiff's principal place of*

-9-

**ORP's Reply in Support of Motion to Dismiss or Transfer**

*business is located.* That would not comport with traditional notions of what qualifies as purposeful activity invoking the benefits and protections of the forum state.

*Cybersell*, 130 F.3d at 419-420 (emphasis added).

## VII. The Central District of California Is Not a Proper Venue

Because California does not have personal jurisdiction over the ORP, venue in California is improper and transfer or dismissal of this action is mandatory. *See* 28 U.S.C. § 1406(a). Even if the Court were to find that the ORP's use of YouTube established sufficient minimum contacts, which it does not, the case would be properly venued in the Northern District of California. *Airola v. King*, 505 F. Supp. 30, 31 (D. Ariz. 1980). The Terms of Use agreement states that venue is based in "a court of competent jurisdiction located in San Mateo County, California." *See* Opp. at 5:4-11. Thus, at best, Browne has established that the Northern District of California might serve as a proper venue, not the Central District.

Personal jurisdiction and venue in the Southern District of Ohio are proper as to all defendants. If the Court is not inclined to dismiss the action against the ORP, the ORP requests that the Court transfer the action to the Southern District of Ohio, Eastern Division where the action should have originally been brought.

## VIII. Conclusion

Browne concedes that general jurisdiction over the ORP in California does not exist. Browne's theory of personal jurisdiction would expand personal jurisdiction beyond the limits of due process and should be rejected. Accordingly, the ORP's motion to dismiss should be granted.

DATED: January 21, 2009          GRUNSKY, EBEY, FARRAR & HOWELL

By    *Rebecca Connolly*
     Rebecca Connolly, Attorneys for Defendant
     The Ohio Republican Party